# EXHIBIT C

## ADJUSTABLE RATE RENEWABLE
## TERM LOAN AGREEMENT

TERM LOAN AGREEMENT (this "Agreement")
dated NOVEMBER 21, 2013

between

BRACHA CAB CORP.
a New York corporation having offices at
42-42 27TH STREET, LONG ISLAND CITY, NEW YORK 11101
(the "Borrower"), and

JACOB ELBERG
an individual residing at
1281 CARROL STREET, BROOKLYN, NEW YORK 11213
(the "Guarantor"), and

CAPITAL ONE TAXI MEDALLION FINANCE,
a trade name for CAPITAL ONE EQUIPMENT FINANCE CORP.
(hereinafter referred to as "Capital One" or "Lender")
having offices at
275 Broad Hollow Road
Melville, New York 11747

## RECITALS

WHEREAS, Borrower is the owner of or is simultaneously herewith acquiring two New York City taxicabs and appurtenant taxi meters and roof lights, and has two issued New York City Taxicab Licenses and Medallion Nos. 2L35 and 2L36 (the "Medallions"), licensed to operate within the City of New York; and

WHEREAS, Borrower has requested a loan from the Lender in the principal amount of $250,000.00 to be secured by all assets of the Borrower, including, but not limited to, the Licenses and Medallions described above;

WHEREAS, the Lender is willing to make the Loan on the terms and conditions set forth herein;

NOW, THEREFORE, IT IS HEREBY AGREED by the parties hereto in consideration of the terms, covenants and conditions hereinafter set forth as follows:

## ARTICLE I
## DEFINITIONS AND ACCOUNTING TERMS

Section 1.01. Defined Terms. As used in this Agreement, all capitalized terms shall have the meanings set forth herein (except where the context otherwise requires, terms defined in the singular to have the same meaning when used in the plural and vice versa).

Section 1.02. Accounting Terms. All accounting terms not specifically defined herein shall be construed in accordance with GAAP consistent with that applied in the preparation of the financial statements referred to herein, and all financial data submitted pursuant to this Agreement shall be prepared in accordance with such principles.

## ARTICLE II
## AMOUNT AND TERMS OF THE TERM LOAN

Section 2.01. <u>Term Loan</u>.   The Lender agrees on the terms and conditions hereinafter set forth, to make a loan (the "Term Loan" or "Loan") in the principal amount of $<u>250,000.00</u> .

Section 2.02. <u>Term Loan Note, Term and Adjustable Interest Rate</u>. The Term Loan made by the Lender under this Agreement shall be evidenced by, and repaid with interest in accordance with, a promissory note of the Borrower as amended, supplemented or otherwise modified from time to time in the principal amount of TWO HUNDRED FIFTY THOUSAND AND 00/100 Dollars ($250,000.00), dated the date of this Agreement, payable to the Lender ("Term Loan Note"). The "Initial Term" of this Loan shall be from the date hereof to January 1, 2014, and shall be automatically extended for successive periods of one (1) year (each, a "Renewal Term"), but in no event shall the Loan be extended beyond <u>August 1, 2017</u>. Notwithstanding the foregoing, this Loan may be terminated by either party at the end of any Renewal Term, by one party providing the other party with written notice of such termination at least 60 days prior to the last day of any Renewal Term. Borrower may also prepay this Loan pursuant to the terms of the section of this Agreement and the Term Loan Note entitled <u>PREPAYMENT</u>. (The dates upon which the Loan may terminate are identical to the dates upon which a prior loan from Lender to Borrower dated August 1, 2012 may terminate.)

The unpaid principal balance hereof shall bear interest from the date hereof to <u>AUGUST 1, 2014</u> at the **rate of** two hundred thirty five (235) basis points in excess of the One Year LIBOR Rate in effect on the date hereof. The Effective LIBOR Rate, as utilized herein, shall be the rate for deposits in U.S. Dollars for a period of one (1) year, as reported by Rueters as of 11:00 A.M. London time on the day that is one (1) London Banking Day proceeding the date hereof and the first day of each Renewal Term. If such rate is not reported by or available from Rueters, the interest rate to be reset on the first day of each Renewal Term shall be the one (1) year LIBOR Rate provided by such other service or vendor as may be designated by the Lender on the date that is one (1) business day preceding the first day of each Renewal Term Date

In the event the Loan is automatically renewed for any Renewal Term, the interest rate shall adjust on the first (1st) day of August during each such Renewal Term (each, a "Reset Date") to two hundred thirty five (235) basis points in excess of the One Year LIBOR Rate in effect on such Reset Date, to be applied for the ensuing one (1) year period.

Any principal amount not paid within ten (10) days of when due (at maturity, by acceleration, or otherwise) shall bear interest thereafter until paid at a rate which shall be five percent (5%) above the rate which would otherwise be applicable whether or not the Lender has declared a default (but in no event higher than the maximum legal interest rate), and shall be payable on demand.

The Loan has a per annum interest rate floor of 3.50%. **This means that the per annum interest rate of the Loan shall <u>never</u> be less than 3.50%.** Interest shall be calculated on the basis of a 30 day month/360 day year.

Section 2.03. <u>Repayment</u>.  Repayment shall be made as follows: From the date hereof through the first Reset Date of August 1, 2014, the Borrower will pay the Lender monthly payments consisting of INTEREST ONLY at the rate set forth above). The Borrower's monthly payment of INTEREST ONLY may change after the first Reset Date of August 1, 2014, and after each Reset Date thereafter.

2

The Borrower's monthly payments shall commence on January 1, 2014 and continue on the same day of each month thereafter until this loan either terminates at the end of one of the Renewal Terms or on August 1, 2017, whichever is earlier, at which time all unpaid principal and interest shall be due and payable. In addition, the sum representing interest from the date hereof through November 30, 2013 shall be due and payable on December 1, 2013.

Monthly payments shall be made at the Lender's address listed above or at any other place or via any method that the Lender requires. All payments, including insufficient payments, shall be credited, regardless of their designation by Borrower, first to outstanding late charges, fees or expenses then to interest on unpaid principal balances to the date payment is received by the Lender and then to principal.

The Lender may charge any account of the Borrower for any payment to the Lender hereunder.

Section 2.04. Prepayments. During the first ninety (90) days of each "Renewal Term", prepayment in whole or in part may be made at any time by paying all accrued interest on the outstanding principal balance to the date of prepayment, and a sum equal to an additional ninety (90) days of interest on the amount being prepaid. At all other times, this loan may be prepaid in whole or in part, together with the interest then accrued, without a prepayment fee. All prepayments shall be applied to payments due in inverse order of maturity and shall not defer the payment schedule.

Section 2.05. Method of Payment. All payments due hereunder shall be made in immediately available funds, at the office of the Lender prior to 3:00 p.m. on the date due.

Section 2.06. Use of Proceeds. The proceeds of the Term Loans hereunder shall be used by the Borrower for business purposes. The Borrower will not, directly or indirectly, use any part of such proceeds for the purpose of purchasing or carrying any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or to extend credit to any person for the purpose of purchasing or carrying any such margin stock.

Section 2.07. Late Fee. The Borrower shall pay to the Lender a late fee of **4%** of the amount of any payment which is not made within ten (10) days of its due date.

## ARTICLE III
## CONDITIONS PRECEDENT

Section 3.01. Conditions Precedent to Initial Term Loan. The obligation of the Lender to make the Term Loan to the Borrower is subject to the following conditions precedent:

(a)    The truth and correctness of the representations and covenants contained in Article IV hereof;

(b) There shall have occurred no Event of Default as set forth in Article VIII hereof; and

(c)    The Lender shall have received on or before the day of such Term Loan each of the following, in form and substance satisfactory to Lender and its counsel:

(1)    Execution and delivery by Borrower to the Lender of a duly completed and executed Term Loan Note.

3

(2)     Evidence of all corporate action by the Borrower consisting of certified (as of the date of this Agreement) copies of all corporate action taken by the Borrower, including certificate of incorporation and all amendments thereto and corporate resolutions authorizing the execution, delivery, and performance of the Term Loan Note, and all other instruments and documents executed and delivered in connection herewith (the "Loan Documents") to which it is a party and each other document to be delivered pursuant to this Agreement, in form and substance satisfactory to Lender and its counsel.

(3)     The guaranty of JACOB ELBERG and JEB MANAGEMENT CORP. (each a "Guarantor", collectively the "Guarantors") of all obligations of Borrower to the Lender.

(4)     Execution and delivery by the Borrower of the security agreement executed in connection herewith (the "Security Agreement"), UCC Financing Statements, and MV 900 with respect to the collateral given as security herewith (the "Collateral"), and evidence of the Lender's priority of lien with respect thereto showing no other financing statements or other Liens, other than a prior lien filed in connection with a loan from Lender to Borrower dated August 1, 2012.

(5)     Certificate of good standing with respect to Borrower.

(6)     Evidence of no material adverse change to the financial condition or performance of the Borrower and Guarantors, or to the nature or value of the Collateral.

(7)     If required by Lender, satisfactory evidence that the Lender has been named additional insured and loss payee with respect to the Collateral with respect to insurance policies required by the Security Agreement.

(8)     Satisfactory evidence of liability insurance on Borrower's taxicabs (the "Taxicabs") as required by the Security Agreement.

(9)     Evidence there has been no pending or threatened litigation against the Borrower or the Guarantors which would, in the Lender's judgment, have a material adverse effect on the Borrower's or Guarantors' ability to perform the obligations hereunder.

(10)     Certificate of the New York City Taxi and Limousine Commission as to Borrower's ownership of the Medallions and the Taxicabs.

(11)     Bills of sale for the Medallions and the Taxicabs.

(12)     Proof of registration of the Taxicabs.

(13)     Pledge Agreement with respect to the corporate stock of Borrower, together with stock powers.

(14)     Payment by the Borrower of the fees and expenses of counsel to the Lender.

(15)     Such other certificate, opinions, documents and instruments confirming or otherwise relating to the transactions contemplated hereby as may reasonably be requested by the Lender.

4

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES
The Borrower and Guarantors represent and warrant to the Lender as follows:

Section 4.01. <u>Corporate Existence and Standing</u>. Borrower is a corporation duly formed, and validly existing under the laws of the State of New York; has the corporate power and authority to own its assets and to transact business in which it is now engaged or proposed to be engaged; and is duly qualified as a foreign corporation and in good standing under the laws of each other jurisdiction in which failure to so qualify would have a material adverse effect upon its business, operation property or other condition.

Section 4.02.   <u>Corporate Power and Authority</u>.   The execution, delivery, and performance by Borrower of the Loan Documents has been duly authorized by all necessary corporate action and do not and will not:

        (1)      require any consent or approval of any third party;

        (2)      contravene the Borrower's Certificate of Incorporation or By-Laws;

        (3)      violate in any material respect any provision of any law, rule, regulation (including, without limitation, Regulation U of the Board of Governors of the Federal Reserve System), order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to such corporation;

        (4)      result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which Borrower is a party or by which it or its properties may be bound or affected if such default would have a material adverse affect on the business, financial or other condition of Borrower on the ability of the Borrower to perform its obligations hereunder;

        (5)      result in, or require, the creation or imposition of any Lien upon or with respect to any of the properties now owned or hereafter acquired by Borrower other than the liens created by the Loan Documents; and

        (6)      cause the Borrower to be in default in any material respect under any such law, rule, regulation, order, writ, judgment, injunction, decree, determination, or award or any such indenture, agreement, lease or instrument.

Section 4.03. <u>Legally Enforceable Agreement</u>. Each of this Agreement and the Term Loan Note is, and each of the other Loan Documents when delivered under this Agreement will be, legal, valid, and binding obligations of the Borrower and Guarantors enforceable against the Borrower and Guarantors in accordance with its respective terms.

Section 4.04. <u>Other Agreements</u>. Neither the Borrower nor the Guarantors is a party to any indenture, loan, or credit agreement, or to any lease or other agreement or instrument, or subject to any restriction which could have a material adverse effect on the ability of Borrower or Guarantors to carry out its obligations under the Loan Documents. Borrower and Guarantors are not in default in any material respect in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions contained in any agreement or instrument material to its business to which it is a party.

Section 4.05. <u>Litigation</u>. There is no pending or, to the Borrower's or Guarantors' knowledge, threatened action or proceeding against or affecting Borrower or Guarantors or its properties before any court, governmental agency, or arbitrator which, if adversely determined, would, in any case or in the aggregate, materially adversely affect the financial

condition, operations, properties, or business of Borrower or Guarantors or the ability of Borrower or Guarantors to perform its obligations under the Loan Documents.

Section 4.06. <u>No Defaults on Outstanding Judgments or Orders</u>. The Borrower and Guarantors have satisfied all judgments and the Borrower and Guarantors are not in default with respect to any judgment, writ, injunction, decree, rule, or regulation of any court, arbitrator, or federal, state, municipal, or other governmental authority, commission, board, bureau, agency or instrumentality, domestic or foreign having jurisdiction over Borrower or Guarantors or its assets, which, if adversely determined, would in any case or in the aggregate materially adversely affect the financial condition, operations, properties or business of Borrower or Guarantors or the ability of Borrower or Guarantors to perform their obligations under the Loan Documents.

Section 4.07. <u>Ownership and Liens</u>. Borrower and Guarantors have good and marketable title to, or valid leasehold interests in, all of his properties and assets, real and personal, and none of the properties and assets owned by Borrower or Guarantors and none of its interests is subject to any Lien, except as disclosed to the Lender in the financial statements provided to the Lender.

Section 4.08. <u>Financial Statements</u>. All balance sheets, profit and loss statements and other financial information heretofore furnished to the Lender by the Borrower and Guarantors are true, correct and complete and present fairly the financial condition of the Borrower and Guarantors at the dates thereof and for the periods covered thereby, including contingent liabilities of every kind, and such financial conditions have not materially adversely changed since the date of the most recently dated balance sheet of the Borrower and Guarantors heretofore furnished to the Lender.

Section 4.09. <u>Operation of Business</u>. Borrower and Guarantors possess all licenses, permits, franchises, patents, copyrights, trademarks, and trade name, or rights thereto, necessary or desirable to conduct its business substantially as now conducted and as presently proposed to be conducted, and, the Borrower and Guarantors are not in violation of any valid rights of others with respect to any of the foregoing.

Section 4.10. <u>Taxes</u>. Borrower and Guarantors have filed or caused to be filed all tax returns (federal, state and local) required to be filed and has paid all taxes, assessments, and governmental charges and levies thereon to be due, including interest and penalties, are due and owing except those being contested in good faith by appropriate proceedings for which the Borrower and Guarantors have set aside adequate reserves in conformity with GAAP on the books of the Borrower and Guarantors.

Section 4.11. <u>Insurance</u>. The Borrower and Guarantors have in full force and effect fire, liability and other forms of insurance policies which are valid, outstanding, and enforceable policies, as to which premiums have been paid currently, are with reputable insurers believed by the Borrower and each Guarantor to be financially sound and are, to the Borrower's and each Guarantor's knowledge, consistent with the practices of similar concerns engaged in substantially similar operations as those currently conducted by the Borrower and Guarantors and in compliance with the requirements of the Loan Documents. There exists no state of facts, and no event has occurred, which might reasonably (i) form the basis for any claim against the Borrower and Guarantors not fully covered by insurance for liability, or (ii) result in any material increase in insurance premiums.

Section 4.12. <u>The Security Documents</u>. The provisions of the Security Agreement, when duly executed by the Borrower and UCC-1 financing statements are filed with/in the Secretary of State of the State of New York, are effective to create in favor of Lender, a legal, valid, perfected and enforceable security interest in all right, title, and interest of the Borrower in the Collateral described thereon. The provisions of the Pledge Agreement

6

when duly executed by the Borrower in conjunction with possession of stock certificates evidencing Borrower's stock are effective to create in favor of the Lender legal, valid, perfected, and enforceable security interest in all right, title, and interest of the any Guarantor in the stock of Borrower.

Section 4.13. Continuing Representations.   The representations and warranties contained in Article IV of this Agreement and in any Loan Document executed and delivered in connection herewith shall be deemed to be made by the Borrower and Guarantors on and as of the date of the request for the Term Loan under this Agreement.

Section 4.14.  Full Disclosure.  Neither the financial statements nor any of the Loan Documents or any certificate or written statement furnished by the Borrower or Guarantors to the Lender in connection with the Loan Documents contains any untrue statement of a material fact or omits to state any material fact necessary to make the statements contained therein and herein not misleading as of the date hereof.  There is no fact known to the Borrower or Guarantors which the Borrower or Guarantors have not disclosed to the Lender in writing prior to the date of this Agreement, with respect to the transactions contemplated by the Loan Documents, which materially and adversely affects the condition, financial or otherwise, results of operations, businesses, properties, assets or prospects of the Borrower or Guarantors.

Section 4.15. Solvency.  The Borrower and Guarantors are solvent, are able to pay their debts as they become due and has capital sufficient to carry on their business and all businesses in which they are about to engage, and now owns property having a value both at fair valuation and at present fair salable value greater than the amount required to pay their debts.  The Borrower and Guarantors will not be rendered insolvent by the execution and delivery of this agreement or any of the Loan Documents or by the transactions contemplated hereunder or thereunder.

Section 4.16.  No Defaults.  No Event of Default or default exists or would exist after giving effect to the transactions contemplated by this Agreement and the other Loan Documents.   The Borrower and Guarantors are not, and after giving effect to such transactions, will not be, in default under any indenture, agreement or other contractual provision.

Section 4.17. Compliance with Laws, Etc.  The Borrower and Guarantors are in compliance, in all material respects, with all applicable laws, rules, regulations and orders.

Section 4.18. Corporate Stock.  The individual Guarantor is the owner of all of the authorized stock of Borrower.

Section 4.19. Survival.  All of the foregoing representation and warrantys shall survive the making of the Term Loan and the termination of this Agreement.

## ARTICLE V
## AFFIRMATIVE COVENANTS

So long as the Term Loan Note or any other obligation hereunder or thereunder shall remain unpaid or the Lender shall have any commitment under this Agreement, Borrower and Guarantors will:

Section 5.01. Maintenance of Existence.  Preserve and maintain its corporate existence and good standing in the State of New York with all rights, privileges and franchises now enjoyed, and qualify and remain qualified, as a foreign corporation in other

jurisdictions in which the failure to so qualify would have a material adverse effect upon its business, operation, property or other condition.

Section 5.02. Maintenance of Records.  Keep adequate records and books of account, in which complete entries will be made in accordance with GAAP consistently applied, reflecting all financial transactions of the Borrower.

Section 5.03. Maintenance of Properties.  Maintain, keep and preserve all of its properties (tangible and intangible) necessary or useful in the proper conduct of its business in good working order and condition, ordinary wear and tear excepted, and make all reasonable repairs, replacements, additions, betterments and improvements thereto.

Section 5.04. Taxes, Etc.  Duly pay and discharge all taxes or other claims which might result in a lien upon any of its properties except to the extent such items are being appropriately contested in good faith by appropriate proceedings and Borrower have maintained adequate reserves, in accordance with GAAP with respect thereto.

Section 5.05. Conduct of Business.  Continue to engage in a business of the same general type as conducted by it on the date of this Agreement at the same location.

Section 5.06. Maintenance of Insurance.  With respect to its properties, assets and business, maintain and keep in force, insurance reasonably satisfactory to the Lender with financially sound and reputable insurance companies or associations in such amounts and covering such risks as are usually carried by companies engaged in the same or a similar business and similarly situated and operated similar properties, assets or businesses.

Section 5.07. Compliance with Laws.  Comply, in all material respects with all applicable laws, rules, regulations, and orders, such compliance to include, without limitation, paying before the same become delinquent all taxes, assessments, and governmental charges imposed upon it or upon its respective properties other than those being contested in good faith by appropriate proceedings, for which the Borrower and Guarantors have set aside adequate reserves or other security acceptable to the Lender.

Section 5.08. Right of Inspection.  At any reasonable time and from time to time after notice to an officer of the Borrower, permit the Lender or any agent or representative thereof to examine and make copies of and abstracts from the records and books of account of, and visit the properties of the Borrower and Guarantors, and to discuss the affairs, finances, and accounts of the Borrower and Guarantors with the Borrower's accountants.

Section 5.09. Reporting Requirements.  Furnish to the Lender:

(1)    Financial Statements.  Such financial statements and reports as the Lender may request from time to time. Additionally, Borrower or Guarantors must provide to Lender their respective annual tax returns no later than October 1 of each year during the term of the Loan, along with each Guarantor's financial statement, reasonably satisfactory to Lender,

(2)    No Default Certificates.  Upon request of the Lender at any time and from time to time, a certificate signed by Borrower and Guarantors, to the effect that no Event of Default hereunder or under any other agreement to which Borrower or Guarantors are a party or by which it is bound, or by which any of its properties or assets may be affected, and no event which, with the giving of notice of the lapse of time, or both, would constitute such an Event of Default, has occurred; and stating that Borrower and Guarantors are in compliance with all terms and conditions of this Agreement and the Loan Documents.

(3)    Notice of Litigation.  Promptly after the commencement thereof, notice of all actions, suits, and proceedings before any court or governmental department, commission, board, bureau, agency, or instrumentality, domestic or foreign, affecting Borrower or Guarantors, which, if determined adversely to Borrower or Guarantors could have a material adverse effect on the financial condition, properties, or operations of Borrower or Guarantors.

(4)    Notice of Defaults and Events of Default.  As soon as possible and in any event within three Business Days after the occurrence of each default hereunder or Event of Default, a written notice setting forth the details of such Default or Event of Default and the action which is proposed to be taken by the Borrower or Guarantors with respect thereto;

(5)    General Information.  Such other information respecting the conditions or operations, financial or otherwise, of Borrower and Guarantors as the Lender may from time to time reasonably request.

Section 5.10. <u>Subsidiaries</u>.  Not create or permit to exist any subsidiary corporation.

Section 5.11. <u>Management</u>.  Not change the management of the Borrower or Guarantors.

Section 5.12. <u>Corporate Stock</u>.  Not issue additional shares of Borrower's corporate stock or sell, assign, pledge, or hypothecate any of the capital stock of Borrower.

Section 5.13. <u>Financial Covenants</u>.  Maintain the following financial parameters at all times during this Agreement:

(a)    Maintain adequate working capital for its operations;

(b)    Not make any capital expenditures, except in the ordinary course of business.

Section 5.14. <u>Licenses</u>.    Obtain, renew, and maintain all licenses and permits necessary for operation of the Borrower's business, including, but not limited to, Licenses and Medallions and vehicle registrations.  Lender shall be given prompt notice of any replacement licenses or permits.

## ARTICLE VI
## NEGATIVE COVENANTS

So long as the Term Loan Note or any other obligation hereunder or thereunder shall remain unpaid, Borrower and Guarantors will not:

Section 6.01. <u>Dissolution</u>. Wind-up or dissolve itself or sell, transfer or lease (other than leases in the ordinary course of business) or otherwise dispose of all or a substantial part of its assets.

Section 6.02. <u>Indebtedness.</u>  As to the Borrower, create, incur, assume or suffer to exist or otherwise become or remain directly or indirectly obligated with respect to any Indebtedness, other than:

(1)    Indebtedness heretofore incurred, which shall not be renewed, extended or refinanced without the Lender's prior consent;

(2)    Indebtedness to the Lender incurred in connection with this Agreement;

9

Section 6.03. Line of Credit. Enter into or create, incur or otherwise become the beneficiary of, or obligated under, any other line of credit facility whether secured or unsecured.

Section 6.04. Nature Of Business. Materially change or alter the nature of its business from the nature of the business engaged in by it on the Closing Date.

Section 6.05. Federal Reserve Regulations. Permit any Term Loan or the proceeds of any Term Loan under this Agreement to be used for any purpose which violates or is inconsistent with the provisions of Regulations G, T, U or X of the Board of Governors of the Federal Reserve System.

## ARTICLE VII
## SECURITY

Section 7.01. Collateral Security. In order to secure the due payment and performance by the Borrower of all of the Indebtedness of the Borrower to the Lender hereunder and under the Term Loan Note, and all other instruments and documents executed and delivered in connection herewith and all other obligations of the Borrower to the Lender, whether now existing or hereafter incurred, the Borrower and Guarantors shall prior to or concurrently with the execution and delivery of this Agreement:

(1)    grant to the Lender a security interest in the Collateral by the execution and delivery to the Lender, of a Security Agreement or agreements in form and substance satisfactory to the Lender; and

(2)    deliver to the Lender the guaranty of Guarantors;

(3)    grant to the Lender a security interest in the stock of Borrower;

(4)    execute and deliver or cause to be executed and delivered such other agreements, instruments and documents as the Lender may reasonably require in order to effectuate the purposes of this Section 7.01 hereof.

Section 7.02 Further Assurances. At any time from time to time, upon the request of the Lender, the Borrower shall execute, deliver and acknowledge or cause to be executed, delivered and acknowledged such further documents and instruments and to do such other acts and things as the Lender may reasonably request in order to fully effect the purposes of this Agreement, the Term Loan Note, or any other agreements, instruments or documents delivered pursuant hereto or in connection herewith.

## ARTICLE VIII
## EVENTS OF DEFAULT

Section 8.01. Events of Default. If any of the following events ("Events of Default") shall occur:

(1)    The Borrower or Guarantors fails to pay the principal of, or interest on the Term Loans or the Term Loan Note when due, or any amount of any fee, or any other amount due and payable hereunder or under the Loan Documents or otherwise due to the Lender, as and when due and payable;

(2)    Any representation or warranty made or deemed made by or on behalf of Borrower or Guarantors in this Agreement or which is contained in any written instrument, including any certificate, documents, or financial or other statement furnished by or on

behalf of Borrower or Guarantors at any time under or in connection with any Loan Documents shall prove to have been false or misleading in any material respect on or as of the date made or deemed made;

(3)    Borrower or Guarantors shall fail to perform or observe any other term, covenant, or agreement contained in this Agreement or any Loan Document to which it is a party on its part to be performed or observed;

(4)    Borrower or Guarantors shall:

(a)    fail to perform any term, condition or covenant of any bond, note, debenture, loan agreement, indenture, guaranty, trust agreement, mortgage or other instrument or agreement in connection with the borrowing of money or the obtaining of advances or credit to which it is a party or by which it is bound, or by which any of its properties or assets may be affected (a "Debt Instrument"), or that, as a result of any such failure to perform (regardless of the satisfaction of any requirement for the giving of appropriate notice thereof or the lapse of time), the indebtedness included therein or secured or covered thereby may be declared due and payable prior to the date on which such indebtedness would otherwise become due and payable; or

(b)    any event or condition referred to any Debt Instrument shall occur or fail to occur, so that, as a result thereof (regardless of the satisfaction of any requirement for the giving of appropriate notice thereof or the lapse of time), the Indebtedness included therein or secured or covered thereby may be declared due and payable prior to the date on which such indebtedness would otherwise become due and payable; or

(c)    any Indebtedness included in any Debt Instrument or secured or covered thereby is not paid when due, after giving effect to any applicable grace period provided for in the documentation relating to such indebtedness.

(5)    The occurrence of an Event of Default as defined in any of the Loan Documents;

(6)    An order for relief under the United States Bankruptcy Code as now or hereafter in effect, shall be entered against Borrower or any Guarantor; or Borrower or any Guarantor shall become insolvent, generally fail to pay its debts as they become due, make an assignment for the benefit of creditors, file a petition in bankruptcy, be adjudicated insolvent or bankrupt, petition or apply to any tribunal for the appointment of a receiver or any trustee for it or a substantial part of its assets, or shall commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution, or liquidation law or statute of any jurisdiction, whether now or hereafter in effect; or if there shall have been filed any such petition or application, or any such proceeding shall have been commenced against Borrower or any Guarantor, which remains undismissed for a period of thirty days or more; or Borrower or any Guarantor by any act or omission shall indicate its consent to, approval of or acquiescence in any such petition, application or proceeding or the appointment of a receiver of or any trustee for it or any substantial part of any of its properties, or shall suffer any such receivership or trusteeship to continue undischarged for a period of forty-five days or more;

(7)    Any judgment, Federal, State or municipal tax lien entered exceeding $5,000.00 against Borrower or any Guarantor or any attachment, levy or execution exceeding $5,000.00 against any of its respective properties for any amount shall remain unpaid, unstayed on appeal, undischarged, unbonded or undismissed for a period of thirty (30) days or more;

(8)    The Lender shall have determined, that one or more conditions exist or events have occurred which has resulted in a material adverse change in the business, properties or financial condition of Borrower or any Guarantor;

(9)    The death of any individual Guarantor or the change in composition of a partnership Guarantor or the dissolution, merger or consolidation of a corporate Guarantor;

(10)    For any reason any Loan Document ceases to be in full force and effect or any lien or any collateral purported to be created by any Loan Document ceases to be or is not a valid and perfected lien to the extent and with the priority contemplated thereby;

(11)    Formal charges under Federal or State law shall be filed against Borrower or any Guarantor for which forfeiture is potential penalty;

(12)    Any default by any other corporate entity (which may or may not be owned, in whole or in part, by the Borrower's shareholder(s) or any Guarantor(s) hereunder) or other limited liability company (which may or may not be owned, in whole or in part, by the Borrower's member(s) or any Guarantor(s) hereunder) for which the Borrower's shareholder(s) or member(s) or any Guarantor(s) have guaranteed the due payment of any obligation owing to the Lender under any other promissory note, loan agreement or other instrument or agreement with or in favor of the Lender;

(13) in the event Borrower or any Guarantor fails to provide to Lender its annual tax return by October 1 of each year during the term of the Loan, along with each Guarantor's financial statement, reasonably satisfactory to Lender,

(14) upon the default by any borrower or guarantor under the terms of certain loans by and between Lender and the entities listed on Schedule "A" annexed hereto, then, and in any such event, the Lender may declare the Term Loan Note, all interest thereon, all other amounts payable under this Agreement and the other Loan Documents to be forthwith due and payable, whereupon the Term Loan Note, all such interest, and all such amounts payable hereunder or under the other Loan Documents shall become and be forthwith due and payable, without presentment, demand, protest, or further notice of any kind, all of which are hereby expressly waived by the Borrower.  Lender may exercise any and all remedies available whether under this Agreement, by law, or otherwise.
Notwithstanding the foregoing, upon the occurrence of an Event of Default as set forth in subsection (6) above, all interest thereon, all other amounts payable under this Agreement or under the Loan Documents shall automatically become due and payable. The provisions of this Article VIII are in addition to any provision in any Loan Document.  In the event of any conflict between the provisions of this Article VIII and any provision of any Loan Document, the provisions more restrictive to Borrower shall apply.

## ARTICLE IX
## MISCELLANEOUS

Section 9.01.  Entire Agreement; Amendments, etc.  This Agreement and the other Loan Documents constitute the entire agreement among the parties hereto and thereto as to the subject matter hereof and thereof and supersede any previous agreement, oral or written, as to such subject matter.  No amendment, modification, termination, or waiver of any Loan Document, nor shall in any event be effective unless the same shall be in writing and signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

Section 9.02.  Notices, etc.  All notices and other communications provided for under this Agreement and under the other Loan Documents shall be in writing (including telefax communication) and mailed, telefaxed or sent by recognized overnight delivery service, to

the address set forth above, or, at such other address as shall be designated by such party in a written notice to the other party complying as to deliver with the terms of this Section . All such notices and communications shall, if telefaxed or delivered by hand, be effective when received, or if mailed, three days after deposited in the mails addressed as aforesaid; provided, however that notices to the Lender shall not be effective until received by Lender.

Section 9.03.  <u>No Waiver; Remedies</u>.  No failure on the part of the Lender to exercise, no delay in exercising any right, power, or remedy under any right shall operate as a waiver thereof.  The remedies provided in the Loan Documents are cumulative of each other and not exclusive of any remedies provided by law.  No modification or waiver of any provision of this Agreement, or of any Term Loan Note, nor consent to departure by the Borrower from any provisions hereof or thereof, shall be effective unless the same shall be given in writing from the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it is given.  No notice to the Borrower or Guarantors shall entitle the Borrower or Guarantors to any other or further notice in other or similar circumstances unless expressly provided for herein.  No course of dealing between the Borrower or Guarantors and the Lender shall operate as a waiver of any of the rights of Lender under this Agreement.

Section 9.04.  <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the Borrower and Guarantors and the Lender and their respective successors and assigns, except that the Borrower and Guarantors may not assign or transfer any rights under any Loan Document without the prior written consent of the Lender.  The Lender reserves the right to sell participations in or to sell and assign the Term Loan Note and Agreements and all other Loan Documents to such Banks, lending institutions or other parties as it may choose without the consent of Borrower or Guarantors.

Section 9.05.  <u>Costs, Expenses, and Taxes</u>.  The Borrower and Guarantors agree to pay on demand all reasonable costs and expenses in connection with the preparation, execution, delivery, filing, recording, and administration of any of the Loan Documents, including, without limitation, the reasonable fees and out-of-pocket expenses of counsel for the Lender and all costs and expenses, if any, in connection with the enforcement of any of the Loan Documents.  In addition, the Borrower and Guarantors shall pay any and all stamp and other taxes and fees payable or determined to be payable in connection with the execution, delivery, filing and recording of any of the Loan Documents and other documents to be delivered under any such Loan Documents, and shall save the Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or the omission to pay such taxes and fees.

Section 9.06.  <u>Regulatory Changes; Additional Fees</u>.  If any Regulatory Change shall either (i) impose, modify or deem applicable or result in the application of, any reserve, special deposit, capital maintenance, capital ratio or similar requirement against loans or loan commitments made by the Lender or against any other extensions of credit or commitments to extend credit or other assets of or any deposits or other liabilities taken or entered into by the Lender or (ii) impose on the Lender any other condition regarding this Agreement or the Lender's commitment in connection herewith, and the result of any event referred to in clause (i) and (ii) above shall be to increase the cost to the Lender of making or maintaining, or to impose upon the Lender or increasing any capital requirement applicable as a result of the making or maintenance of, Lender's commitment or the obligation of the Borrower hereunder to reduce the amounts receivable by the Lender hereunder (which increase in cost or increase in (or imposition of) capital requirements or reduction in amounts receivable may be determined by the Lender's reasonable allocation of the aggregate of such cost increases, capital increases or impositions or reductions in amounts receivable resulting from such events) then, upon demand by the Lender, the Borrower shall within five (5) Business Days after notice pay to the Lender from the time as

13

specified by the Lender, additional fees which shall be sufficient to compensate the Lender for such increased costs or increase in (imposition of) capital requirements or reduction in amounts receivable by the Lender from the date of such change, together with interest on each such amount from the date demanded until payment in full thereof at the rate provided in this Agreement.

Upon the occurrence of any event referred to in clause (i) or (ii) above, a certificate setting forth in reasonable detail the increased cost, reduction in amounts receivable or amounts necessary to compensate the Lender as a result of an increase in (or imposition of) capital requirements shall be submitted by such Lender to the Borrower.

Determinations by the Lender for purposes of this Section 9.06 of the effect of any Regulatory Change on its costs of making or maintaining loans hereunder or on amounts receivable by it in respect of loans hereunder, and of the additional amounts required to compensate such Lender in respect of any additional costs, shall be deemed presumptive evidence of all such amounts absent manifest error.

Section 9.07.
(1) Right of Setoff. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, to set off and apply any and all deposits (general or special, time or demand, provisional or final) monies, securities or other properties of Borrower or Guarantors, and the proceeds thereof, now or hereafter held or received by or in transmit to the Lender from or for Borrower or Guarantors, whether for safekeeping, custody, pledge, transmission, collection or otherwise, and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower or Guarantors against any and all of the obligations of the Borrower or Guarantors now or hereafter existing under this Agreement or the Lender's Term Loan Note or any other Loan Document, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Term Loan Note or such other Loan Document and although such obligations may be unmatured. This provision is in addition to and not in limitation of any right of the Lender by statute or common law.

(2) Right of Offset. If any payment due hereunder is not made on time, or if the entire balance becomes due and payable and is not paid, all or part of the amount due may be offset out of any account or other property which Borrower or Guarantors have at Capital One Taxi Medallion Finance or deposited at Capital One Bank, without prior notice or demand. This right does not extend to any IRA, pension or other tax deferred deposit accounts maintained at Capital One Taxi Medallion Finance or Capital One Bank by Borrower. This provision is in addition to and not in limitation of any right of common law or by statute.

Section 9.08. Choice of Law; Construction. The Loan Documents (other than those containing a contrary express choice of law provision) shall be construed in accordance with the laws of the State of New York (without regard to its conflict of laws rules). If any provision of the Loan Documents shall be or become unenforceable or illegal under any law, the other provisions shall remain in full force and effect.

Section 9.09. Consent to Jurisdiction.

(1)    The Borrower and Guarantors hereby irrevocably submit to the exclusive jurisdiction of the  New York State court sitting in Suffolk County or the United States District Court  sitting in the Eastern District of New York or in any action or proceeding arising out of or relating to any Loan Documents and the Borrower and Guarantors hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in any such court and irrevocably waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such a court or the fact that such court is an inconvenient forum.

 

(2)    The Borrower and Guarantors irrevocably and unconditionally consents to the service of process in any such action or proceeding in any of the aforesaid courts by the mailing of copies of such process to it, by certified mail at its address shown above.

Section 9.10.  WAIVER OF JURY TRIAL.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWER AND GUARANTORS AND THE LENDER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH ANY LOAN DOCUMENT OR THE RELATIONSHIP ESTABLISHED THEREUNDER.

Section 9.11.  Limited Role of Lender.  The relationship between the Borrower and the Lender shall be solely that of Borrower and lender, respectively.  The Lender shall not have any fiduciary responsibilities to the Borrower and no joint venture exists between the Borrower and the Lender.  The Borrower and the Lender hereby severally acknowledge that there are no representations, warranties, covenants, undertakings or agreements by the parties hereto as to the Loan Documents except as specifically provided herein and therein.

Section 9.12.  Severability of Provisions.  Any provision of any Loan Document which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of such Loan Document or affecting the validity or enforceability of such provision in any other jurisdiction.

Section 9.13.  Interest.  Anything in this Agreement or in any Term Loan Note to the contrary notwithstanding, the Lender shall not charge, take or receive, and the Borrowers and Guarantors shall not be obligated to pay, interest in excess of the maximum rate from time to time permitted by applicable law.

Section 9.14.  Custodian.  Upon the occurrence of any Event of Default, the Lender may at any time and from time to time, employ and maintain a custodian selected by the Lender, who shall have authority to enter upon the premises of the Borrower for the purposes of protecting the Lender's interest in the Collateral and who shall have authority to take such steps as the Lender deems necessary to protect the Collateral, at the cost of the Borrower.

Section 9.15.  Attorney's Fees.  Borrower shall pay all costs and expenses of the Lender in connection with the enforcement of this Agreement or the collection of any amounts due to Lender hereunder or under the Loan Documents, including but not limited to the Lender's reasonable attorney's fees.  Borrower shall pay such amounts regardless of whether an action is commenced and whether or not in the Court of original jurisdiction, appellate court, bankruptcy court or otherwise.

Section 9.16.  Headings.  Article and Section headings in the Loan Documents are included in such Loan Documents or the convenience of reference only and shall not constitute a part of the applicable Loan Documents for any other purpose.

Section 9.17. Release.  Borrower and Guarantors acknowledge that they has no claims or causes of action against the Lender and hereby releases the Lender from any and all claims or causes of action which may exist as of the date hereof.

Section 9.18. <u>Representation.</u> In connection with the Loan made by the Lender to Borrower, the Lender has advised the Borrower and Guarantors to obtain independent legal counsel to review all legal documents in connection with the Loan. Accordingly, Borrower and Guarantors agree, represent, and warrant that the Lender, its agents, representatives, employees, and attorneys have not advised them as to the legal consequences of the Loan and they have relied on their own independent investigation and counsel in connection with the loan.

Section 9.19 **OTHER PROVISIONS: NONE**

Notwithstanding anything to the contrary set forth in this Agreement and/or the Term Loan Note, the Borrower and any other obligor(s) hereunder acknowledge and agree that, irregardless of the date set forth above, the effective date for the Loan shall be the date the Term Loan Note is funded by Lender to or on behalf of Borrower, on which date interest shall begin to accrue at the rate set forth herein and in the Term Loan Note.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date written above.

CAPITAL ONE TAXI MEDALLION FINANCE,
A TRADE NAME FOR CAPITAL ONE
EQUIPMENT FINANCE CORP.

By:_____
Name:
Title:

BRACHA CAB CORP.

By:_____
Jacob Elberg, President/Secretary

JEB MANAGEMENT CORP. - Guarantor

By:_____
Jacob Elberg, President/Secretary

_____
JACOB ELBERG - Guarantor

STATE OF NEW YORK,
COUNTY OF NEW YORK.

On the 21st day of November, 2013, before me, the undersigned, a Notary
Public in and for said State, personally appeared Jacob Elberg personally known to me
or proved to me on the basis of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that he executed the same
in his capacities, and that by his signature on the instrument, the individual, or the
person upon behalf of which the individual acted, executed the document.

Notary Public

MARK S. GALLAGHER
Notary Public, State of New York
No. 02GA4722968
Qualified in New York County
Commission Expires August 31, 2014

17