# EXHIBIT F

FORBEARANCE AGREEMENT, (this "Forbearance Agreement") dated as of February 1, 2016 and is entered into by and among BRACHA CAB CORP., a New York corporation ("Bracha"), DABRI TRANS CORP., a New York corporation ("Dabri"), DOVBER CAB CORP., a New York corporation ("Dovber"), FIT TAXI CORP., a New York corporation ("Fit"), JACKHEL CAB CORP., a New York corporation ("Jackhel"), LECHAIM CAB CORP., a New York corporation ("Lechaim"), MERAB CAB CORP., a New York corporation ("Merab"), N.Y. ENERGY TAXI CORP., a New York corporation ("NY Energy"), N.Y. CANTEEN TAXI CORP., a New York corporation ("NY Canteen"), N.Y. GENESIS TAXI CORP., a New York corporation ("NY Genesis"), N.Y. STANCE TAXI CORP., a New York corporation ("NY Stance"), NY TINT TAXI CORP., a New York corporation ("NY Tint"), SOMYASH TAXI INC., a New York corporation ("Somyash"), TAMAR CAB CORP., a New York corporation ("Tamar"; Tamar, Bracha, Dabri, Dovber, Fit, Jackhel, Lechaim, Merab, NY Energy, NY Canteen, NY Genesis, NY Stance, NY Tint, Somyash, are each a "Borrower" and collectively, the "Borrowers"), CAPITAL ONE, N.A., a New York corporation with its principal office located at 265 Broadhollow Road, Melville, New York 11747 (the "Bank") and Tamara Pewzner (the "Executor"), as Executor of the Estate of Jacob Elberg ("Elberg"), JEB Management Corp. a New York corporation ("JEB" and together with Elberg, the "Guarantors" and each a Guarantor, and together with the Borrowers and the Executor, collectively the "Credit Parties", and each a "Credit Party").

The parties hereto are parties to those Term Loan Agreements described on Schedule A hereto, and related agreements, documents and instruments (such loan agreements, the "Existing Loan Agreements," and such related agreements, documents and instruments, together with such Existing Loan Agreements, the "Existing Loan Documents").

WHEREAS, the Bank has agreed to forbear from exercising remedies with respect to certain Events of Default that have arisen under the Existing Loan Agreements and to waive the obligation to pay default interest under the Existing Loan Agreements during the continuance of such Events of Default.

NOW THEREFORE, the parties hereto hereby agree as follows:

**SECTION 1.** *Defined Terms; References.* Unless otherwise specifically defined herein, each term used herein that is defined in the Existing Loan Agreements has the meaning assigned to such term in the Existing Loan Agreements.

**SECTION 2.** *Forbearance.*

(a) During the period (the "Forbearance Period") from and after the Effective Date through and including August 1, 2016 (the "Forbearance Period End Date") (subject to Sections 2(b) and 8), the Bank as of the Effective Date will temporarily forbear (subject to the terms hereof) from the exercise of its default-related remedies under the Existing Loan Agreement and the other Existing Loan Documents, applicable law or otherwise or directing, in each case, solely to the extent the availability of such remedies arises exclusively from the occurrence and continuance of any Event of Default as specifically delineated on Exhibit A (each, a "Specified Default"); provided that each Credit Party shall, except as otherwise

(f) Commencing February 1, 2016, and on the first day of each succeeding month during the Forbearance Period, the Bank is authorized to debit the Borrower's deposit accounts maintained at the Bank or the Bank's affiliates ("Borrower Deposit Accounts"), in the aggregate amount of $50,243.75 (the "Forbearance Interest Payments") and apply such amounts to the accrued unpaid interest balance of the Loans; provided that (i) all Forbearance Interest Payments accruing from the commencement of the Forbearance Period up to and including the Effective Date (the "Accrued Forbearance Interest Payments") shall be due and payable in full in cash on the first business day of the month immediately succeeding the Effective Date (the "Accrued Forbearance Interest Payment Date") and (ii) the Bank is authorized to debit the Borrower Deposit Accounts in the amount of such Accrued Forbearance Interest Payments on the Accrued Forbearance Interest Payment Date. The Credit Parties agree and covenant that the Borrower Deposit Accounts shall contain sufficient funds to pay the Forbearance Interest Payments or shall otherwise cause such amount to be paid to Lender.

(g) The Executor shall use best efforts to obtain, prior to the Forbearance Period End Date, authority to cause the Borrowers to execute modifications to the Existing Loan Documents, including but not limited to, continued prosecution of the pending application to remove Ruben Elberg as co-executor of the estate of Elberg and, if necessary, an application to Surrogate's Court of Kings County to authorize and approve the modification of the Existing Loan Documents.

(h) The Executor shall use best efforts to consummate, prior to the Forbearance Period End Date, a sale of the real properties located in Queens, New York, including but not limited to, the real properties commonly known as 42-37 Crescent Street, Queens, New York and 42-31 Crescent Street, Queens, New York (collectively, the "LIC Real Properties") for fair market value, including, to the extent necessary, an application to the Surrogate's Court of Kings County in the matter of the estate of Jacob Elberg and/or to the Queens County Supreme Court in the pending matter of New Fund, LP vs Royal One Real Estate, LLC and any other application necessary to obtain authority to consummate the sale.

(i) On or before March 31, 2016, the Credit Parties shall cause counsel for JEB to execute a stipulation substantially in the form of Exhibit B.

**SECTION 3.** *Default Rate.* If any Credit Party shall fail to comply, or fail to remain in compliance with, any of the covenants set forth above, or any other term or condition of this Forbearance Agreement shall fail to be complied with, such failure shall constitute an Event of Default under the Existing Loan Documents. If at any time after the date of this Forbearance Agreement, either (i) an Event of Default, other than the Specified Defaults, occurs, or (ii) any Credit Party fails to comply or remain in compliance with any terms, covenants or conditions set forth in this Forbearance Agreement or any other documents or agreements to be entered into or delivered in connection with this Forbearance Agreement, but in any event, on the Forbearance Period End Date, the Bank, in its sole and absolute discretion, may elect to exercise the default-related remedies under the Existing Loan Agreements, or any portions thereof. Each Credit Party acknowledges that the default-related remedies under the Existing Loan Agreements upon the occurrence of an Event of Default, other than a Specified Default, include the right to increase the then-applicable rate of interest by an additional 5% (the "Forbearance Default Rate"). The Bank agrees not to impose the Forbearance Default Rate during the Forbearance

period, provided, however, if any event described in the preceding clauses (i) or (ii) of this Section 3 shall have occurred, the Bank, in its sole and absolute discretion, may elect to impose the Forbearance Default Rate effective as of the date of the occurrence of an event described in clauses (i) or (ii) of this Section 3.

**SECTION 4.** *Representations and Warranties; No Default.* Each Credit Party represents and warrants that:

(a) this Forbearance Agreement has been duly authorized, executed and delivered by each Credit Party and constitutes an enforceable agreement against such Credit Party in accordance to its terms;

(b) there is owing by the Borrower under the Existing Loan Agreements as of the Effective Date without offset, counterclaim, recoupment or defenses of any kind, the principal amount as set forth on Schedule B, plus accrued and unpaid interest, together with such other fees, expenses and other amounts which are chargeable or otherwise reimbursable under the Existing Loan Agreements, and the other Existing Loan Documents;

(c) the representations and warranties of the Credit Parties set forth in the Existing Loan Agreements and in the other Existing Loan Documents are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of the Effective Date, as though made on and as of such date (except to the extent that such representations and warranties relate solely to an earlier date, in which case such representations and warranties are true and correct in all material respects (or true and correct, as the case may be) as of such earlier date);

(d) no Default or Event of Default (other than a Specified Default) has occurred and is continuing on the Effective Date.

**SECTION 5.** *Conditions Precedent to Effectiveness of the Forbearance.* This Forbearance Agreement shall become effective on the date on which each of the following conditions is satisfied (the "Effective Date"):

(a) execution of a counterpart hereof by each of the parties hereto and the delivery thereof to the Parties;

(b) the Borrowers shall pay and reimburse the Bank the sum of Three Hundred Sixty Five Thousand Dollars ($365,000.00) which the Bank is authorized to debit from Borrower Deposit Accounts; which shall be applied and credited to the amounts due under the Loans.

**SECTION 6.** *Acknowledgement and Consent.*

(a) The Executor and JEB each hereby acknowledge that each has read this Forbearance Agreement and consents to the terms hereof and further hereby confirms and agrees that, notwithstanding the effectiveness of this Forbearance Agreement, each Guarantor's obligations pursuant to the Existing Loan Documents to which it is a party shall not be impaired

or affected and all such Existing Loan Documents are, and shall continue to be, in full force and effect and are hereby confirmed and ratified in all respects, subject however, to the Bank's agreement to forbear from exercising default-related remedies under the Existing Loan Agreements against the Credit Parties, including, without limitation, each Guarantor, in accordance with the terms and conditions set forth herein.

(b)    The Executor and JEB each hereby confirms and acknowledges that each Guarantor is validly and justly indebted to the Bank for the payment of all of the obligations which it has guaranteed, without offset, defense, cause of action or counterclaim of any kind or nature whatsoever under the Existing Loan Documents pursuant to the terms thereof.

(c)    The Executor and JEB each hereby reaffirms and admits the validity and enforceability of the Existing Loan Documents to which each Guarantor is a party and the liens on the Collateral which were granted by the Credit Parties, as applicable, pursuant to any of the Existing Loan Documents or otherwise.

(d)    To the extent that notice of any Specified Default and acceleration of all indebtedness under the Existing Loan Documents is required, the Credit Parties hereby acknowledge and agree that such notice has been timely and duly given or deemed given with their express consent and no further notice of such Specified Defaults shall be required and each Credit Party hereby waives any defenses with respect to such Specified Defaults.

**SECTION 7.** *Reimbursement of Expenses.* All costs or out-of-pocket expenses incurred by the Bank, including, without limitation, reasonable legal fees and expenses, in connection with the preparation and negotiation of this Forbearance Agreement, or relating to any of the events or actions described in this Forbearance Agreement, shall constitute reimbursable expenses under the Existing Loan Documents, shall be payable in accordance with this Forbearance Agreement by the Credit Parties to the Bank and shall constitute Liabilities secured by the Collateral until paid in full. In regard to the foregoing, each Credit Party acknowledges that the Bank, at its option, if such expenses are not fully paid when payment thereof is due as set forth herein, set off funds of such Credit Party on deposit with the Bank, and apply the proceeds derived therefrom to the payment of such then unpaid reimbursable expenses. The Credit Parties acknowledge that the Bank's legal fees and costs incurred in respect of the Loans as of January 13, 2016 totaled approximately $157,000.

**SECTION 8.** *Reservation of Rights Against Ruben Elberg.* Notwithstanding anything to the contrary herein, the Bank does not agree to forbear from, and expressly reserves the right to pursue litigation or other enforcement against, Ruben Elberg, personally, Merrill Transit Inc., Spindle Cab Corp and Jarub Trans Corp. Furthermore, any voluntary forbearance or modification to the terms of the Existing Loan Documents with respect to any Credit Party shall not apply to Ruben Elberg in his personal capacity, Merrill Transit Inc., Spindle Cab Corp and Jarub Trans Corp., unless explicitly agreed to by the Bank, and the Bank expressly reserves the right to pursue all amounts due for which each is personally liable under the current terms of the Existing Loan Documents.

**SECTION 9.** *Governing Law.* THIS FORBEARANCE AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE

STATE OF NEW YORK AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.

**SECTION 10.** *Counterparts.* This Forbearance Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery by facsimile or other electronic imaging means of an executed counterpart of a signature page to this Forbearance Agreement shall be effective as delivery of an original executed counterpart of this Forbearance Agreement.

**SECTION 11.** *Headings.* Section headings herein are included for convenience of reference only and shall not affect the interpretation of this Forbearance Agreement.

*[Remainder of page intentionally blank]*

**IN WITNESS WHEREOF**, this Agreement has been duly executed by the Parties as of the date first written above.

Bank:

**CAPITAL ONE, N.A.**

By: *[signature]*
Name: MICHAEL P. ROBINSON
Title: VICE PRESIDENT

Borrowers:

**BRACHA CAB CORP.**

By: *[signature]*
Name: Esma Elberg
Title: President

**DABRI TRANS CORP.**

By: *[signature]*
Name: Esma Elberg
Title: President

**DOVBER CAB CORP.**

By: *[signature]*
Name: Esma Elberg
Title: President

**FIT TAXI CORP.**

By: *[signature]*
Name: Esma Elberg
Title: President

**JACKHEL CAB CORP.**

By: _/s/ Esma Elberg_
Name: Esma Elberg
Title: President

**LECHAIM CAB CORP.**

By: _/s/ Esma Elberg_
Name: Esma Elberg
Title: President

**MERAB CAB CORP.**

By: _/s/ Esma Elberg_
Name: Esma Elberg
Title: President

**N.Y. ENERGY TAXI CORP.**

By: _/s/ Esma Elberg_
Name: Esma Elberg
Title: President

**N.Y. CANTEEN TAXI CORP.**

By: _/s/ Esma Elberg_
Name: Esma Elberg
Title: President

**N.Y. GENESIS TAXI CORP.**

By: _/s/ Esma Elberg_
Name: Esma Elberg
Title: President

**N.Y. STANCE TAXI CORP.**

By: /s/ Esma Elberg
Name: Esma Elberg
Title: President

**NY TINT TAXI CORP.**

By: /s/ Esma Elberg
Name: Esma Elberg
Title: President

**SOMYASH TAXI INC.**

By: /s/ Esma Elberg
Name: Esma Elberg
Title: President

**TAMAR CAB CORP.**

By: /s/ Esma Elberg
Name: Esma Elberg
Title: President

Guarantors:

**JEB MANAGEMENT CORP.**

By: /s/ Esma Elberg
Name: Esma Elberg
Title: President

Executor:

/s/ Tamara Pewzner
**Tamara Pewzner**

## **Exhibit A**

1.     Failure to repay all outstanding principal, interest and other costs, fees and expenses due under the Existing Loan Agreements on or before January 1, 2015.

## Exhibit B

## Stipulation

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CAPITAL ONE TAXI MEDALLION FINANCE, :
                                       Plaintiff,         : Index No. 608014/2015

                             - against -          : Assigned to:
                                                   : Hon. Jerry Garguilo
JEB MANAGEMENT CORP. and RUBEN ELBERG, : Motion Seq. #001

                                    Defendants.      : **STIPULATION OF DISCONTINUANCE**
                                                           : **WITHOUT PREJUDICE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    IT IS HEREBY STIPULATED AND AGREED by the undersigned parties, through their respective counsel of record, that Plaintiff Capital One Taxi Medallion Finance ("Capital One") is voluntarily discontinuing the above-captioned matter solely against Defendant JEB Management Corp. ("JEB"), without prejudice to re-file the matter against JEB.

    IT IS FURTHER STIPULATED AND AGREED THAT the matter is not discontinued against Defendant Ruben Elberg.

    No party to this matter is an infant, incompetent person for whom a committee has been appointed or conservatee, and no person not a party has an interest in the subject matter of this action.

    IT IS FURTHER STIPULATED AND AGREED THAT this Stipulation may be executed in counterparts and when such counterparts are taken together, shall constitute a fully executed Stipulation. A facsimile or electronic copy of this Stipulation may be used as if it were the original executed copy.

Dated: New York, New York
            _____, 2016

## Schedule A

## Term Loan Agreements

| |
|---|
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Bracha Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated November 21, 2013 between Bracha Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Dabri Trans Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated November 21, 2013 between Dabri Trans Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Dovber Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated November 21, 2013 between Dovber Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Fit Taxi Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Jackhel Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated November 21, 2013 between Jackhel Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Lechaim Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Merab Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between N.Y. Canteen Taxi Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between N.Y. Energy |

| |
|---|
| Taxi Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between N.Y. Genesis Taxi Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between N.Y. Stance Taxi Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between N.Y. Tint Taxi Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Somyash Taxi Inc., a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |
| Adjustable Rate Renewable Term Loan Agreement, dated August 1, 2012 between Tamar Cab Corp, a New York corporation, as the borrower, Jacob Elberg, as guarantor and Capital One Taxi Medallion Finance, as lender. |

## Schedule B

## Amount Owing

| Borrower | Loan Number | Total Outstanding Principal |
|---|---|---|
| Bracha Cab Corp | ███ | $1,210,000.00 |
| Bracha Cab Corp | ███ | $250,000.00 |
| Dabri Trans Corp | ███ | $1,210,000.00 |
| Dabri Trans Corp | ███ | $250,000.00 |
| Dovber Cab Corp | ███ | $1,210,000.00 |
| Dovber Cab Corp | ███ | $250,000.00 |
| Fit Taxi Corp | ███ | $1,525,000.00 |
| Jackhel Cab Corp | ███ | $1,210,000.00 |
| Jackhel Cab Corp | ███ | $250,000.00 |
| Lechaim Cab Corp | ███ | $1,210,000.00 |
| Merab Cab Corp | ███ | $1,210,000.00 |
| N.Y. Canteen Taxi Corp | ███ | $1,210,000.00 |
| N.Y. Energy Taxi Corp | ███ | $1,210,000.00 |
| N.Y. Genesis Taxi Corp | ███ | $1,210,000.00 |
| N.Y. Stance Taxi Corp | ███ | $1,210,000.00 |
| N.Y. Tint Taxi Corp | ███ | $1,210,000.00 |
| Somyash Taxi Inc. | ███ | $1,210,000.00 |
| Tamar Cab Corp | ███ | $1,210,000.00 |