**Hearing Date and Time:  March 7, 2018 at 2:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline Date and Time:  February 28, 2018 at 4:00 p.m. (Prevailing Eastern Time)**

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY  10022
Tel: (212) 704-6000
Jonathan D. Forstot
David A. Pisciotta
Alissa K. Piccione

*Attorneys for Capital One Equipment Finance*
*Corp., f/k/a All Points Capital Corp., d/b/a*
*Capital One Taxi Medallion Finance*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
In re:                                                                      :    Chapter 11
                                                                               :
BRACHA CAB CORP., *et al.*,                              :    Case No. 1-17-46613 (NHL)
                                                                               :
                                                                               :    *Jointly Administered*
                                   Debtors.                            :
--------------------------------------------------------- x


# MEMORANDUM OF LAW IN SUPPORT OF CAPITAL ONE EQUIPMENT FINANCE CORP.'S MOTION TO VACATE THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, DISMISS OR CONVERT THE DEBTORS' CASES OR APPOINT A <u>CHAPTER 11 TRUSTEE</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 3

    COTMF Has a Secured Claim Against Each Debtor......................................................... 4

    The Debtors Admit that the Value of COTMF's Claims Exceeds the Value of the
        Medallions.......................................................................................................... 5

    The Debtors Admit That They Have No Cash Flow, No Assets Other Than the
        Medallions, and No Employees and that Any Chapter 11 Plan Would be
        Entirely Dependent Upon Proceeds from Non-Debtor Litigation ......................... 5

    Esma Elberg Understands Little About the Debtors' Affairs Despite Being Their
        Sole Fiduciary, and She Received a Substantial Distribution from Each
        Debtor Shortly Before the Petition Dates ............................................................ 7

ARGUMENT .................................................................................................................... 8

    I.     The Court Should Vacate the Automatic Stay Pursuant to § 362(d) of the
          Bankruptcy Code ............................................................................................... 8

          A.     Stay Relief under § 362(d)(2) of the Bankruptcy Code is
                Warranted Because the Debtors' Have no Equity in the Medallions
                or Realistic Possibility of Reorganization.................................................. 8

                1.     The Debtors Admittedly Have No Equity in the Medallions ........ 8

                2.     The Medallions are not necessary for any Effective
                      Reorganization that is in Prospect................................................. 10

          B.     Cause Exists to Vacate the Stay Pursuant to § 362(d)(1) ........................ 11

                1.     COTMF is Not Adequately Protected.......................................... 11

                  2.     There is Substantial and Continuing Diminution to the
                      Estate and the Absence of a Reasonable Likelihood of
                      Rehabilitation ............................................................................... 12

    II.    In the alternative, the Court Should Dismiss or Convert these Cases
          Pursuant to § 1112(b) of the Bankruptcy Code or Appoint a Chapter 11
          Trustee Pursuant to § 1104(a)(2) ...................................................................... 14

          A.     COTMF Satisfies the Standard for Dismissal or Conversion Under
                 § 1112(b) of the Bankruptcy Code.......................................................... 14

i

## TABLE OF CONTENTS
(continued)

Page

    1.    Cause Exists for Dismissal or Conversion Because of Continuing Diminution of the Estate and the Absence of Reasonable Likelihood of Rehabilitation..................................... 15

    2.    The *C-TC* Factors Weigh in Favor of Dismissal or Conversion for Cause.................................................................. 15

    3.    Dismissal is the Appropriate Remedy......................................... 17

B.    In the Absence of Conversion or Dismissal, Appointment of a Chapter 11 Trustee Pursuant to § 1104(a)(2) of the Bankruptcy Code Would be in the Best Interests of the Debtors' Estates ................. 18

**CONCLUSION** ................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>In re 51-53 W.129th St. HDFC, Inc.</u>,
   475 B.R. 391 (Bankr. S.D.N.Y. 2012) ........................................................................ 10, 12-13

<u>In re Adelphia Commc'n Corp.</u>,
   336 B.R. 610 (Bankr. S.D.N.Y. 2006) .................................................................................19

<u>In re AMC Realty Corp.</u>,
   270 B.R. 132 (Bankr. S.D.N.Y. 2001) .................................................................................15

<u>In re Ashley River Consulting, LLC</u>,
   Case No. 14-13406 (MG), 2015 Bankr. LEXIS 1008 (Bankr. S.D.N.Y. March
   31, 2015) ...............................................................................................................................19

<u>B.N. Realty Assocs. v. Lichtenstein</u>,
   238 B.R. 249 (S.D.N.Y. 1999).............................................................................................8

<u>In re Balco Equities Ltd., Inc.</u>,
   312 B.R. 734 (Bankr. S.D.N.Y. 2004) ............................................................................11, 12

<u>In re Beautiful View Realty, Inc.</u>,
   546 B.R. 507 (Bankr. E.D.N.Y. 2016)..................................................................................10

<u>In re BH S&B Holdings, LLC</u>,
   439 B.R. 342 (Bankr. S.D.N.Y. 2010) ..................................................................................17

<u>C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)</u>,
   113 F.3d 1304 (2d Cir. 1997).......................................................................................14, 15, 16

<u>Canal Place Ltd. P'ship v. Aetna Life Insur. Co. (In re Canal Place Ltd. P'ship)</u>,
   921 F.2d 569 (5th Cir. 1991) ...............................................................................................13

<u>In re Diplomat Elecs. Corp.</u>,
   82 B.R. 688 (Bankr. S.D.N.Y. 1988)...............................................................................10, 18

<u>In re East 81st, LLC</u>,
   Case No. 13-13685 (SMB), 2014 Bankr. LEXIS 1024 (Bankr. S.D.N.Y.
   March 17, 2014).................................................................................................................17, 18

<u>In re Elmira Litho, Inc.</u>,
   174 B.R. 892 (Bankr. S.D.N.Y. 1994) ..................................................................................11

<u>In re Inwood Heights Hous. Dev. Fund Corp.</u>,
   No. 11-13322 MG, 2011 WL 3793324 (Bankr. S.D.N.Y. Aug. 25, 2011) ...........................13

iii

In re Ionosphere Clubs, Inc.,
        113 B.R. 164 (Bankr. S.D.N.Y. 1990) ..............................................................18, 19

In re Jude Thaddeus Partners 1, Inc.,
        No. 10-73014-AST, 2010 WL 4496836 (Bankr. E.D.N.Y. Nov. 1, 2010) ............................18

In re Kaplan Breslaw Ash, LLC,
        264 B.R. 309 (Bankr. S.D.N.Y. 2001) ..........................................................8, 10, 15

In re M.J. & K. Co., Inc.,
        161 B.R. 586 (Bankr. S.D.N.Y. 1993) ..................................................................11

Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.),
        374 B.R. 556 (Bankr. M.D. Pa. 2007) ............................................................13, 14

Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.,
        139 B.R. 828 (W.D. Ky. 1992) ............................................................................16

In re Red Bull Taxi Inc.,
        No. 16-13153 (MKV), 2017 Bankr. LEXIS 1209 (Bankr. S.D.N.Y. May 3,
        2017) ..............................................................................................................14, 16

In re Ridge View Farm, LLC,
        No. 11-30463, 2012 WL 6137690 (Bankr. N.D.N.Y. Dec. 10, 2012) ..............................15, 16

In re Roxrun Estates, Inc.,
        74 B.R. 997 (Bankr. S.D.N.Y. 1987) ............................................................... 17-18

Sonnax Indus., Inc. v. Tri Component Products (In re Sonnax Indus., Inc.),
        907 F.2d 1280 (2d Cir. 1990) ..............................................................................11

In re Soundview Elite, Ltd.,
        503 B.R. 571 (Bankr. S.D.N.Y. 2014) ..................................................................19

Taub v. Adams,
        No. 10-CV-02600(CBA), 2010 U.S. Dist. LEXIS 104805 (E.D.N.Y. Aug. 31,
        2010) ..............................................................................................................19

Tennessee Pub. Co. v. Am. Nat. Bank,
        299 U.S. 18 (1936) ............................................................................................14

In re Touloumis,
        170 B.R. 825 (Bankr. S.D.N.Y. 1994) ....................................................................8

United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,
        484 U.S. 365 (1988) ....................................................................................10, 13

In re Wings Digital Corp.,
No. 05-12117(ALG), 2005 Bankr. LEXIS 3476 (Bankr. S.D.N.Y. May 16,
2005) .................................................................................................................19

**Statutes**

11 U.S.C. § 362(d) ..............................................................1, 8, 10-12, 14-15, 17, 20

11 U.S.C. § 362(g) ...............................................................................................8, 9

11 U.S.C. § 1112(b) ..................................................................... 1, 2, 12-17

11 U.S.C. § 1104(a) ..................................................................... 1, 14, 18-20

N.Y. Bus. Corp. Law § 510(a) ..................................................................20

**Other Authorities**

Fed. R. Bankr. P. 4001 ...........................................................................................1

E.D.N.Y. Local Bankr. R. 4001-1..........................................................................1

Auctioneer's Report, In re Hypnotic Taxi LLC, et al., No. 15-43300 (CEC)
(Oct.10, 2017) [Dkt. No. 668] ..................................................... 9, 11-12

Matthew Flamm, The new normal for taxi medallion prices: less than $200,000, CRAIN'S NEW
YORK BUSINESS (Jan. 16, 2018),
http://www.crainsnewyork.com/article/20180116/TRANSPORTATION/180119915/nyc-
taxi-medallion-auction-by-aspire-federal-credit-union-windels-marx ....................................12

Capital One Equipment Finance Corp. f/k/a All Points Capital Corp., d/b/a Capital One Taxi Medallion Finance ("COTMF"), by and through its counsel, hereby submits this memorandum of law in support of the motion (the "Motion") for entry of an order vacating the automatic stay pursuant to § 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules") or, in the alternative, dismissing the above-captioned chapter 11 cases pursuant to § 1112(b) of the Bankruptcy Code, converting the cases to ones under chapter 7, or appointing a chapter 11 trustee pursuant to § 1104(a)(2) of the Bankruptcy Code.

## PRELIMINARY STATEMENT

The debtors in these jointly administered chapter 11 cases are not operating businesses at all. Instead, they are mere holding companies that do no more than receive passive income under leases with third parties for the use of their New York City taxi medallions (to the extent that lease payments are being made). The debtors have no employees, and their only significant assets are two or three taxi medallions each.

Based on the debtors' own admissions, COTMF is undeniably entitled to relief from the automatic stay. The debtors have no equity in the medallions. It is undisputed that COTMF's claim against each debtor far exceeds the value of the assets securing the claim—the debtors' taxi medallions, the value of which has been steadily declining for years. And, according to the debtors' counsel, the only hope for these companies to emerge from chapter 11 successfully is for Esma Elberg, the debtors' sole shareholder, to fund a plan with certain disputed proceeds from the sale of real estate not owned by and unrelated to the debtors. These proceeds, however, are the subject of acrimonious and protracted litigation pending in New York State Supreme Court and

Surrogate's Court.  When—if ever—these funds will be available to satisfy the debt owed to COTMF is unknown.  It is likewise undeniable that the debtors simply lack sufficient income from their "operations" to reorganize within a reasonable time.  Therefore, the debtors lack equity in their only assets, which are not necessary for an effective reorganization, and the Court should lift the automatic stay to permit COTMF to exercise its state law rights and remedies.

The debtors' cases also fit the paradigm for dismissal or conversion pursuant to §1112(b) of the Bankruptcy Code.  The debtors have no income to cover the costs of administering these cases.  And there is no reasonable possibility of rehabilitation.  The debtors have admittedly sought chapter 11 relief solely to resolve their outstanding, secured debt to COTMF and, therefore, these bankruptcies amount to nothing more than a two-party dispute.

In the unlikely event that the Court finds that stay relief, dismissal, or conversion are inappropriate, COTMF respectfully submits that a chapter 11 trustee should be appointed.  Esma Elberg is the president and sole shareholder of each of the debtors, and she is the only person legally responsible for managing and controlling them.  As Esma Elberg testified at the § 341(a) meeting of creditors, she was ignorant of the debtors' affairs and operations until she inherited the companies from her husband.  Now it seems that her daughter has been playing a major role in guiding the debtors, but Esma's daughter has no managerial position with the debtors and owes no fiduciary duties to them.  The fact that Esma Elberg received a substantial distribution from each of these debtors while they were insolvent exemplifies the need for an impartial fiduciary in these cases.  Therefore, if these cases are to remain in chapter 11, a chapter 11 trustee is necessary to competently and fairly administer the estates.

## BACKGROUND

On December 8, 2017, Bracha Cab Corp., Dovber Cab Corp., Dabri Trans Corp., Merab Cab Corp., Fit Taxi Corp., Tamar Cab Corp., and NY Genesis Taxi Corp. each filed petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").   On December 11, 2017, Jarub Trans Corp., Somyash Taxi Corp., NY Tint Taxi Corp., NY Stance Taxi Corp., NY Canteen Taxi Corp., NY Energy Taxi Corp., Jackhel Cab Corp., and Lechaim Cab Corp. commenced their cases by filing chapter 11 petitions with the Bankruptcy Court.

The above-captioned debtors (the "Debtors") are debtors in possession operating pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  The Bankruptcy Court entered an order on January 19, 2018 consolidating the Debtors' cases for procedural purposes only and directing that they be jointly administered by the Court.  As of the date of this Motion, the Debtors have not filed a chapter 11 plan.

On January 10, 2018, the Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules").  The Debtors each amended their respective Schedule D ("Amended Schedules D") on January 12, 2018. [1] COTMF is the only scheduled creditor except for: (i) Courtney Congjuico, whom the Debtor Jarub Trans Corp. scheduled as holding an unsecured, unliquidated, contingent, and disputed claim for an "unknown" amount; (ii) N.Y. O'Hare Corp., which the Debtor NY Energy Taxi Corp. scheduled as holding an unsecured, unliquidated, contingent and disputed claim for an "unknown" amount; and (iii) Lancer

---

[1] Certain of the Debtors also amended their Schedules E/F on or about January 24, 2018. The Amended Schedule D filed to the NY Energy Taxi Corp docket names Somyash Taxi Corp. as the Debtor. Presumably, this was an error.

Insurance Co. A/S/O Limo and Livery Services, which the Debtor Jackhel Cab Corp. scheduled as holding an unsecured, unliquidated, contingent and disputed claim for an "unknown" amount.[2] See Schedules D, E/F.    The only creditors to date to have filed proofs of claim are the New York State Department of Taxation and Finance and the NYC Department of Finance.[3]

On January 12, 2018, the attorney for the U.S. Trustee convened a meeting of creditors pursuant to § 341(a) of the Bankruptcy Code.  Esma Elberg appeared on behalf of the Debtors.[4]

### COTMF Has a Secured Claim Against Each Debtor

As set forth in the accompanying declaration of Michael P. Robinson in support of the Motion (the "Robinson Declr."), COTMF has a secured claim against each Debtor that arises from their respective defaults on loans (each a "Loan" and collectively, the "Loans") that COTMF made on or about August 1, 2012 and November 21, 2013.  Robinson Declr. ¶¶ 3-19.

Pursuant to the security agreements (collectively, the "Security Agreements") executed in connection with the Loans, the Loans are secured by first-priority security interests in substantially all the Debtors' assets, including all of their New York City taxi medallions (collectively, the "Medallions" and each a "Medallion").  Id. ¶¶ 15-16, Ex. G.  COTMF perfected its security interests by filing UCC Financing Statements with the New York Department of State.  Id. ¶ 17, Ex. H.

---

[2] As COTMF was about to file this Motion, certain of the Debtors amended their Schedules E/F to add a few more unsecured, unliquidated, contingent and disputed claims for unknown amounts.  This, however, does not change the arguments asserted herein.

[3] The New York State Department of Taxation and Finance filed a claim against the Debtor NY Tint Taxi Corp. in the total amount of $2,473.67, of which $2,000.97 is claimed to have priority.  It also filed claims against the following Debtors in the following amounts: (i) Merab Cab Corp., $24.80 (unsecured); (ii) Jarub Trans Corp., $1,197.50 (secured); (iii) NY Stance Taxi Corp., $2,182.98 (priority) & $515.70 (unsecured); and (iv) NY Energy Taxi Corp., $2,633.64 (priority) & $625.50 (unsecured). The NYC Department of Finance filed a claim against the Debtor NY Tint Taxi Corp. in the amount of $5,553.62, the entirety of which is claimed to have priority.

[4] A copy of the transcript of the 341(a) meeting of creditors is attached to the Declaration of Jonathan D. Forstot. References to the transcript are cited as follows "341(a) Hr'g Tr. __:__".

**The Debtors Admit that the Value of COTMF's Claims Exceeds the Value of the Medallions**

The Amended Schedules D confirm that COTMF holds a secured claim against each of the Debtors.  See Amended Schedules D.  The Debtors scheduled COTMF's claims, except for the claim against the Debtor Fit Taxi Corp., in the amount of $1,210,000 and as secured by two Medallions valued at $375,000 each.  See id.   The claim against the Debtor Fit Taxi Corp. is scheduled in the amount of $1,525,000 and as secured by three Medallions. [5]  Further, the Debtors that are obligated under the Second Loans[6] scheduled an additional claim held by COTMF in the amount of $250,000, with the value of the collateral securing the obligation listed as $0.00.[7]

**The Debtors Admit That They Have No Cash Flow, No Assets Other Than the Medallions, and No Employees and that Any Chapter 11 Plan Would be Entirely Dependent Upon Proceeds from Non-Debtor Litigation**

On January 24, 2018, the Debtors filed their monthly operating reports for the period from the petition date for each Debtor to December 31, 2017 (the "Dec. 2017 MORs" [Dkt. No. 20]).  The "Statement of Operations" for each Debtor indicates that gross revenues for December 2017 were $0.  To the extent that the management companies are making lease payments to the Debtors, those payments are only $1,200 per month per Medallion.   341(a) Hr'g Tr. 50:18-24.   The Statements of Financial Affairs likewise show a decline in yearly gross revenues over the last three

---

[5] COTMF is in the process of reviewing its books and records with respect to the Loans and its claims against the Debtors.  (Robinson Declr. ¶ 21.)   COTMF reserves the right to challenge the Debtors' valuation of its claims, introduce evidence supporting its claims and file proofs of claim with the Bankruptcy Court. In addition, COTMF relies on the Debtors' admissions as to medallion values as well as publicly available information for the purposes of this Motion.   COTMF agrees with the Debtors that the value of the Medallions is far below the amount of COTMF's claims, but COTMF does not, for the purposes of this motion, take a position with respect to actual medallion values. COTMF reserves the right to challenge any purported medallion valuation and to introduce evidence on medallion values at any point during these cases.

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Robinson Declaration.

[7] Pursuant to the second Security Agreements executed by Bracha Cap Corp., Dabri Trans. Corp., Dovber Cab Corp. and Jackhel Cab Corp., COTMF has a second lien on those Debtors' Medallions.  Robinson Declr. ¶ 15 n. 6.

years for most of the Debtors.  For example, gross revenues for Bracha Cab Corp. were $51,100 in 2015; $48,983 in 2016; and $29,100 in 2017.[8]  See Bracha Cab SOFA ¶ 1.

At the §341(a) meeting of creditors, the Debtors' counsel indicated that the Debtors "cannot generate enough money" to successfully emerge from chapter 11 "given the reduction both in the value of the medallions and the income that they generate[d] over the last two or three years, as everybody is aware of in this industry. . . ."  341(a) Hr'g Tr. 30: 10-14.  The Debtors' counsel further stated that the Debtors intended to use certain funds currently held in escrow to "pay [COTMF] down significantly", but that non-debtor parties are litigating their claims to those funds.  Id.  30:15-25; 31:1-2 ("[T]here is a large amount of money sitting in an escrow account from the sale of the buildings that [Esma Elberg's] husband owned in Queens.  And that money is tied up in the litigation. . . . pending both in State Supreme Court and the Surrogate's Court regarding this money.").

Esma Elberg, the Debtors' sole shareholder, testified on behalf of the Debtors at the §341(a) meeting of creditors that the Debtors do not have any employees.  Id. 15:13-16.

The Debtors' Schedules A/B show that the only major assets of the estates are two NYC taxi Medallions, per Debtor, with an alleged total value of $750,000 (except for Fit Taxi Corp., which has three Medallions with an alleged total value of $1,125,00).  See Schedules A/B.  Each Debtor also listed as an asset a note receivable made by Jacob Elberg, a former shareholder who is now deceased, payable to each Debtor in the average amount of approximately $1,000,000.  This "asset", however, is not collectible.  Esma Elberg could not provide any details regarding the alleged loan and was unaware whether there were loan documents and whether a claim had been filed with Jacob Elberg's estate.  341(a) Hr'g Tr. 43:11 – 45:15.

---

[8] This last figure is for the period 1/1/2017 to 12/8/2017 or 12/11/2017 depending on the Debtor.

**Esma Elberg Understands Little About the Debtors' Affairs Despite Being Their Sole Fiduciary, and She Received a Substantial Distribution from Each Debtor Shortly Before the Petition Dates**

Esma Elberg inherited a 100% equity interest in the Debtors in 2014. 341(a) Hr'g Tr. 8:1-9; see also Bracha Cab SOFA ¶ 28. Prior to that time, she was a homemaker with little involvement in the Debtors' operations. 341(a) Hr'g Tr. 24:14-16. Aside from Esma, there are no other controlling managers or shareholders. Bracha Cab SOFA ¶ 28.

There were several questions asked at the § 341(a) meeting of creditors that Esma could not answer. She did not know, for example,

- whether the Debtors were currently earning a profit or earned a profit in 2017, 341(a) Hr'g Tr. 22:10-13;

- any details regarding an approximately $1,000,000 loan from each of the Debtors to her late husband, id. 43:11 – 45:15; and

- what basis she had (other than hearing other medallion owners "talk") for valuing the Medallions at $375,000 each, id. 39:10 – 42:2.

Esma Elberg's daughter attended the § 341(a) meeting of creditors but did not testify under oath. Esma testified that her daughter helps her with the Debtors' businesses but is not an officer or holder of any position with the Debtors. Id. 38:3-11. Throughout Esma's testimony, however, Esma's daughter coached Esma on how to answer questions. Id. 38:12-18.

In May 2017, about seven months before the Debtors' cases were filed, Esma Elberg received a shareholder distribution of approximately $6,000 to $21,000 from each Debtor (except for Jarub Trans Corp).[9] She alleged that those distributions were used to pay attorneys but was unable to clearly articulate which attorneys received the funds. 341(a) Hr'g Tr. 47:14 – 49:14.

---

[9] The distributions to Esma Elberg averaged approximately $16,642 per Debtor.

## **ARGUMENT**

I.    **The Court Should Vacate the Automatic Stay Pursuant to § 362(d) of the Bankruptcy Code**

COTMF seeks relief from the automatic stay pursuant to §§ 362(d)(1) and (2) of the Bankruptcy Code. "The subsections of Section 362(d) are disjunctive, and the movant need satisfy only one of the two to obtain relief." B.N. Realty Assocs. v. Lichtenstein, 238 B.R. 249, 257 (S.D.N.Y. 1999) (quoting In re Touloumis, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994)) (internal quotation marks omitted).

A.    **Stay Relief under § 362(d)(2) of the Bankruptcy Code is Warranted Because the Debtors' Have no Equity in the Medallions or Realistic Possibility of Reorganization**

Section 362(d)(2) of the Bankruptcy Code states, in relevant part, that "the court shall grant relief from the stay . . . if—(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization. . . ." 11 U.S.C. § 362(d)(2). COTMF bears the burden of proof on the issue of the Debtors' equity remaining in the property; after which, the Debtors bear the burden regarding its necessity for an effective reorganization. See In re Kaplan Breslaw Ash, LLC, 264 B.R. 309, 322 (Bankr. S.D.N.Y. 2001) (citing 11 U.S.C. § 362(g)). To meet this initial burden, a secured creditor must show "(1) the amount of its claim; (2) that its claim is secured by a valid, perfected lien in property of the estate; and (3) that the debtor lacks equity in the property." Id. (citation omitted). "'[E]quity' means the difference between the value of the property and the total amount of claims that it secures." Id.

1.    **The Debtors Admittedly Have No Equity in the Medallions**

COTMF easily meets its burden of showing lack of equity in the Medallions. The Debtors scheduled COTMF's claims corresponding to the First Loans in the amount of $1,210,000 each (except for the claim against Fit Taxi Corp., which was scheduled in the amount of $1,525,000).

The Debtors that received the Second Loans listed additional claims in the amount of $250,000 each. The First Loan claims are each shown as secured by two Medallions (except for the First Loan claim against Fit Taxi Corp., which is shown as secured by three Medallions) valued at $375,000 each. See Amended Schedule D.[10] According to the Debtors' Schedules, the Medallions are property of their estates, see Schedules A/B, in which COTMF has perfected liens, see Amended Schedules D; Robinson Declr. ¶¶ 15-17, Ex. G, H.

The Debtors' admission of lack of equity in the Medallions is supported by the results of recent public auctions of taxi medallions. On September 12, 2017, COTMF auctioned forty-nine (49) taxi medallions for $335,000 each. Robinson Declr. ¶ 18. On September 18, 2017, the chapter 7 trustee for the debtors' estates in In re Hypnotic Taxi LLC, et al., held a public auction of taxi medallions, at which forty-six (46) medallions were sold for $186,000 each.[11] On December 5, 2017, COTMF auctioned another fifty-one (51) medallions for $262,500 each. Robinson Declr. ¶ 18.

COTMF respectfully submits that the Debtors' admission that they have no equity in the Medallions is binding on them and is amply supported by the recent auction results, which produced values that are substantially lower than the Debtors' scheduled values. Accordingly, COTMF's burden under § 362(g) of the Bankruptcy Code is easily met.

---

[10] Although it is not indicated on the Amended Schedules D, the claims scheduled in the amount of $250,000 by Bracha Cap Corp., Dabri Trans. Corp., Dovber Cab Corp. and Jackhel Cab Corp. are also secured by the Medallions. Robinson Declr. ¶ 15 n. 6.

[11] COTMF respectfully requests that the Court take judicial notice of the Auctioneer's Report, which was filed with this District. See Auctioneer's Report, In re Hypnotic Taxi LLC, et al., No. 15-43300 (CEC) (Oct. 10, 2017) [Dkt. No. 668].

34019062v1

### 2. The Medallions are not necessary for any Effective Reorganization that is in Prospect

The Debtors have the burden to prove that the Medallions are necessary to an effective reorganization despite the Debtors' lack of equity in them. 11 U.S.C. § 362(d)(2); In re Kaplan Breslaw Ash, LLC, 264 B.R. at 322. As the Supreme Court explained, "[w]hat this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 375–76 (1988); see also In re Beautiful View Realty, Inc., 546 B.R. 507, 516 (Bankr. E.D.N.Y. 2016) (quoting Timbers of Inwood Forest Assocs. 484 U.S. at 375-76). This means that, "the Debtor must demonstrate not only that the Property is needed for any successful reorganization, but also 'must prove that there is a reasonable possibility of a successful reorganization within a reasonable time.'" In re 51-53 W.129th St. HDFC, Inc., 475 B.R. 391, 400 (Bankr. S.D.N.Y. 2012) (quoting In re Diplomat Elecs. Corp., 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988)).

The Debtors cannot meet this burden because the Debtors' only prospect for a successful reorganization is highly speculative and unlikely to occur in a reasonable time. The Debtors are not earning any income, see Dec. 2017 MORs, or, at most, are earning $2,400 per month ($3,600 for the Debtor Fit Taxi Corp.), see 341(a) Hr'g Tr. 50:18-24. According to the Debtors' counsel, the Debtors cannot fund a plan without certain proceeds that are currently "tied up in [  ] litigation". See 341(a) Hr'g Tr. 30:10-18. Non-debtor parties have asserted competing claims to the proceeds, and it is unclear when this litigation will end and whether it will result in the proceeds being paid to the estate of Jacob Elberg (and then voluntarily transferred to the Debtors' estates for making plan payments). Because any proposed plan of reorganization will necessarily depend on the outcome of protracted litigation involving non-debtor parties and property, there is no evidence

that these Debtors will be able to reorganize within a reasonable time.  Therefore, the Medallions cannot be necessary for any reorganization that is in prospect.

### B.  Cause Exists to Vacate the Stay Pursuant to § 362(d)(1)

Section 362(d)(1) of the Bankruptcy Code provides that the Court must vacate the automatic stay "for cause, including lack of adequate protection. . . ."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not define "cause"  and, therefore, "the facts of each request will determine whether relief is appropriate under the circumstances." Sonnax Indus., Inc. v. Tri Component Products (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285-86 (2d Cir. 1990) (quoting legislative history of section 362) (internal quotation marks omitted); see In re M.J. & K. Co., Inc., 161 B.R. 586, 590-91 (Bankr. S.D.N.Y. 1993) (noting "cause" is "a broad and flexible concept").

### 1.  COTMF is Not Adequately Protected

Although not the exclusive basis, a lack of adequate protection of the movant's interest in estate property is sufficient cause to vacate the stay.  11 U.S.C. § 362(d)(1).  COTMF is entitled to adequate protection for any decline or threat of decline in the value of its collateral during the imposition of the automatic stay.  See In re Balco Equities Ltd., Inc., 312 B.R. 734, 751 (Bankr. S.D.N.Y. 2004) (citation omitted).  A secured creditor need not always quantify the decline in value and may, under certain circumstances, "prove its *prima facie* case 'without quantifying the decline in value . . . by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments.'" Id. (quoting In re Elmira Litho, Inc., 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994)).  This approach "depends on the strength of the inference that the value of the debtor's property declines over time."  Id. (quoting In re Elmira Litho, Inc., 174 B.R. at 903).

There is a substantial risk that the value of the Medallions will continue to decline while the automatic stay remains in effect.  In September 2017, taxi medallions were sold at public auctions for $186,000 and $335,000 apiece.  See Auctioneer's Report, In re Hypnotic Taxi LLC,

11

et al., No. 15-43300 (CEC) (Oct. 10, 2017) [Dkt. No. 668]; Robinson Declr. ¶ 18. In December 2017 and January 2018, however, medallions were sold at $262,500 and $175,000 apiece. See Robinson Declr. ¶ 18; Matthew Flamm, The new normal for taxi medallion prices: less than $200,000, CRAIN'S NEW YORK BUSINESS (Jan. 16, 2018), http://www.crainsnewyork.com/article/20180116/TRANSPORTATION/180119915/nyc-taxi-medallion-auction-by-aspire-federal-credit-union-windels-marx.[12] The Debtors' counsel even acknowledged the decline in taxi medallion values during the 341(a) meeting. See 341(a) Hr'g Tr. 30:10-14.[13] Because it can be inferred that that the value of the Medallions will decline over time, COTMF has established its prima facie entitlement to adequate protection.

The Debtors now have the burden to show that COTMF is otherwise adequately protected. In re Balco Equities Ltd., Inc., 312 B.R at 751. There is no "equity cushion" to protect COTMF because COTMF is undersecured. While counsel for COTMF and the Debtors have discussed the possibility of adequate protection payments, no agreement has been reached. Therefore, the Debtors cannot establish that COTMF is adequately protected as of the filing of the Motion.

### 2.    There is Substantial and Continuing Diminution to the Estate and the Absence of a Reasonable Likelihood of Rehabilitation

A demonstration of cause to dismiss or convert a case under § 1112(b)(4)(A) because of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" is also a sufficient basis for the court to vacate the automatic stay pursuant to § 362(d)(1) for cause. In re 51-53 W. 129th St. HDFC, Inc., 475 B.R. at 399 (quoting

---

[12] COTMF respectfully requests that the Court take judicial notice of this news article.

[13] The Debtors' counsel also stated that "there's a belief that the taxi medallion business has sort of hit bottom and might start to improve in the near future." It is unclear what the basis for that belief was.

11 U.S.C. § 1112(b)(4)(A)) (citing In re Inwood Heights Hous. Dev. Fund Corp., No. 11-13322 MG, 2011 WL 3793324, at *6 (Bankr. S.D.N.Y. Aug. 25, 2011)).

Section 1112(b)(4)(A) requires a two-step inquiry. Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.), 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007). "First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented at hearing." Id.

On the first prong, there is no doubt that the Debtors will suffer losses. The Debtors currently have little to no revenue. See Dec. 2017 MORs [Dkt. No. 20]; 341(a) Hr'g Tr. 50:18-24. According to the Debtors' counsel, the Debtors "cannot generate enough money" to successfully emerge from chapter 11 "given the reduction both in the value of the medallions and the income that they generate[d] over the last two or three years, as everybody is aware of in this industry. . . ." 341(a) Hr'g Tr. 30: 10-14. It is nearly certain that diminution of the estate will occur if these cases remain in chapter 11 given the (i) decline in revenue for most of the Debtors over the last three years, (ii) decline in value of the Debtors' assets, and (iii) administrative expenses of maintaining these cases that the Debtors will start incurring shortly if they have not already.

Regarding the second prong, the Debtor must "do more than manifest unsubstantiated hopes for a successful reorganization." In re Gateway Access Sols., Inc., 374 B.R at 562 (quoting Canal Place Ltd. P'ship v. Aetna Life Insur. Co. (In re Canal Place Ltd. P'ship), 921 F.2d 569, 577 (5th Cir. 1991)). This means that "[t]here must be a reasonable possibility of a successful reorganization within a reasonable time" Id. (quoting Timbers of Inwood Forest Assocs., 484 U.S. at 376) (internal quotation marks omitted). The Court "is not bound to clog its docket with

visionary or impracticable schemes for resuscitation." Id. (quoting Tennessee Pub. Co. v. Am. Nat. Bank, 299 U.S. 18, 22 (1936)) (internal quotation marks omitted).

Courts have explained that "'rehabilitation' is not synonymous with the term 'reorganization'" because reorganization may include a chapter 11 liquidation, whereas "rehabilitation" requires the debtor to restore itself to good condition. In re Red Bull Taxi Inc., No. 16-13153 (MKV), 2017 Bankr. LEXIS 1209, at *6 (Bankr. S.D.N.Y. May 3, 2017). For the reasons set forth in section I.A.2 of this memorandum of law, the Debtors have neither a reasonable prospect of reorganization nor likelihood of rehabilitation. Accordingly, COTMF is entitled to relief from the automatic stay pursuant to § 362(d)(1).

## II.    In the alternative, the Court Should Dismiss or Convert these Cases Pursuant to § 1112(b) of the Bankruptcy Code or Appoint a Chapter 11 Trustee Pursuant to § 1104(a)(2)

If the Court declines to vacate the automatic stay, COTMF respectfully requests that the Court dismiss or convert the Debtors' cases or appoint a chapter 11 trustee.

### A.    COTMF Satisfies the Standard for Dismissal or Conversion Under § 1112(b) of the Bankruptcy Code

Section 1112(b) of the Bankruptcy Code provides, in relevant part, that

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). Section 1112(b)(4) then sets forth a non-exclusive list of grounds that constitute "cause" under § 1112(b)(1), including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Id. § 1112(b)(4), (b)(4)(A). Courts may—and often do—find cause to dismiss a case under § 1112(b) for other reasons. See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304,

1313 (2d Cir. 1997);  In re AMC Realty Corp., 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001); In re

Kaplan Breslaw Ash, LLC, 264 B.R. at 334.

Here, there is ample cause to dismiss or convert the Debtors' cases because (i) there is

substantial or continuing loss to or diminution of the estate and the absence of a reasonable

likelihood of rehabilitation; and (ii) almost all the "C-TC Factors" as defined below are satisfied.

### 1. Cause Exists for Dismissal or Conversion Because of Continuing Diminution of the Estate and the Absence of Reasonable Likelihood of Rehabilitation

Pursuant to § 1112(b)(4)(A), cause for dismissal includes "substantial or continuing loss

to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11

U.S.C. § 1112(b)(4)(A).  For the reasons set forth in section I.B.2 of this memorandum, there is

cause to dismiss or convert the Debtors' cases.

### 2. The *C-TC* Factors Weigh in Favor of Dismissal or Conversion for Cause

When determining whether to dismiss or convert a bankruptcy case for cause, Courts in

the Second Circuit consider the following factors (the "C-TC Factors"):[14]

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of
the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or
default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor
and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate
efforts of the debtor's secured creditors to enforce their rights;

---

[14] Courts also consider these factors when resolving stay relief motions pursuant to §362(d)(1) of the Bankruptcy
Code.  As set forth herein, almost all the C-TC Factors are satisfied.  Therefore, COTMF has another basis for
obtaining stay relief for cause.  See In re Ridge View Farm, LLC, No. 11-30463, 2012 WL 6137690, at *7 (Bankr.
N.D.N.Y. Dec. 10, 2012) (dismissal or relief from stay may be based on application of C-TC Factors).

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

In re C-TC 9th Ave. P'ship, 113 F.3d at 1311 (quoting Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp., 139 B.R. 828, 832 (W.D. Ky. 1992)). "Neither malice nor actual fraud" is required for dismissal under this standard. In re Red Bull Taxi Inc., 2017 Bankr. LEXIS 1209, at *9.

Almost all the C-TC factors are present here. The only significant assets that each Debtor owns are the Medallions. See Schedules A/B. The Debtors collectively[15] have less than a handful of unsecured creditors, whose claims, while scheduled as unliquidated and contingent, are likely de minimis in relation to COTMF's claims for over $1,000,000 against each Debtor. See Schedules E/F. COTMF's claims comprise substantially all the Debtors' liabilities, are for defaults on secured obligations, and can be resolved best outside of the Bankruptcy Court. The Debtors admittedly have little to no cash flow. See Dec. 2017 MORs [Dkt. No. 20]; 341(a) Hr'g Tr. 50:18-24. When the Debtors begin incurring administrative and other expenses, it is unclear how the Debtors will pay them (especially considering that the Debtors have neither moved for authority to use cash collateral nor received COTMF's consent). The Debtors also have no employees. See 341(a) Hr'g Tr. 15:11-16.

The application of the C-TC Factors leaves no doubt that COTMF has satisfied the standard for dismissal or conversion for cause. The burden now shifts to the Debtors to satisfy the requirements of § 1112(b)(2). See In re Ridge View Farm, LLC, 2012 WL 6137690, at *9.

---

[15] These cases are only administratively consolidated. As a matter of substance, each Debtor is supposed to, therefore, stand on its own. This makes the picture even bleaker in these cases.

34019062v1

Clearly the Debtors cannot make the necessary showing because, <u>inter alia</u>, there are no "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate."  11 U.S.C. § 1112(b)(2).  Aside from a few unsecured creditors and the New York State and City tax authorities, COTMF is the only creditor in these cases.  Keeping the Debtors in chapter 11 offers no benefit to unsecured creditors because recovery on their claims is highly unlikely (absent a voluntary carveout from COTMF).  If these cases are dismissed, the other creditors may pursue their state law remedies and, given the small number of creditors, there is no risk of a race to the courthouse.  Each day that the Debtors remain in chapter 11, however, puts COTMF's collateral at risk of further depreciation.  Therefore, creditors' interests are best served by the Court dismissing the Debtors' cases.

Likewise, the primary ground for dismissal here is not "an act or omission of the debtor . . . for which there exists a reasonable justification. . . and . . . that will be cured within a reasonable period of time fixed by the court."  <u>Id.</u> § 1112(b)(2)(B).  Rather, these Debtors do not belong in chapter 11 because they have little to no revenue and no likelihood of generating sufficient income to fund a plan and pay administrative expenses.  Therefore, the cases must be dismissed or converted.

### 3.  <u>Dismissal is the Appropriate Remedy</u>

Where, as here, cause has been established under § 1112(b), "[t]he decision whether to convert or dismiss is committed to the Court's discretion." <u>In re East 81st, LLC</u>, Case No. 13-13685 (SMB), 2014 Bankr. LEXIS 1024, at *21 (Bankr. S.D.N.Y. March 17, 2014) (citations omitted); <u>see also</u> <u>In re BH S&B Holdings, LLC</u>, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

COTMF respectfully submits that dismissal is the appropriate remedy because, upon conversion to chapter 7, COTMF would be entitled to immediate stay relief pursuant to § 362(d)(2), and there would be no remaining assets for a chapter 7 trustee to administer.  <u>In re</u>

Roxrun Estates, Inc., 74 B.R. 997, 1003 (Bankr. S.D.N.Y. 1987) ("[I]n a chapter 7 case, where the debtor has no equity in the property, the automatic stay must be lifted."); In re Diplomat Electronics Corp., 82 B.R. at 693; In re East 81st, LLC, 2014 Bankr. LEXIS 1024 at *21–22; see also In re Jude Thaddeus Partners 1, Inc., No. 10-73014-AST, 2010 WL 4496836, at *11 (Bankr. E.D.N.Y. Nov. 1, 2010) ("There appears to be no legitimate purpose served in conversion, and no assets for a trustee to administer."). Therefore, dismissal rather than conversion of the Debtors' chapter 11 cases is the appropriate relief.

    **B.  In the Absence of Conversion or Dismissal, Appointment of a Chapter 11 Trustee Pursuant to § 1104(a)(2) of the Bankruptcy Code Would be in the Best Interests of the Debtors' Estates**

Section 1104(a) of the Bankruptcy Code sets forth two alternative standards for determining whether appointing a chapter 11 trustee is necessary. Section 1104(a) provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a). "[I]n considering a motion for the appointment of a trustee, a bankruptcy court is not required to conduct a full evidentiary hearing." In re Ionosphere Clubs, Inc., 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990). Nonetheless, the movant bears the burden of demonstrating cause or need to appoint a trustee by clear and convincing proof. Id. at 167-68.

34019062v1

Here, there is sufficient evidence for appointment of a trustee pursuant to § 1104(a)(2) of the Bankruptcy Code.

A court may appoint a trustee under § 1104(a)(2) without finding "cause" if doing so is in the best interest of creditors. See, e.g., In re Ashley River Consulting, LLC, Case No. 14-13406 (MG), 2015 Bankr. LEXIS 1008, *34 (Bankr. S.D.N.Y. March 31, 2015). The appointment of a trustee under § 1104(a)(2) of the Bankruptcy Code "is a lesser standard than under § 1104(a)(1)" and affords the court more discretion. In re Wings Digital Corp., No. 05-12117(ALG), 2005 Bankr. LEXIS 3476, at *14 (Bankr. S.D.N.Y. May 16, 2005); see Taub v. Adams, No. 10-CV-02600(CBA), 2010 U.S. Dist. LEXIS 104805, at *18 (E.D.N.Y. Aug. 31, 2010). This is a "fact-driven analysis, principally balancing the advantages and disadvantages of taking such a step." In re Soundview Elite, Ltd., 503 B.R. 571, 583 (Bankr. S.D.N.Y. 2014) (citing In re Adelphia Commc'n Corp., 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)).

Among the factors considered by the courts in assessing motions brought under § 1104(a)(2) are:

> (i) the trustworthiness of the debtor, (ii) the debtor in possession's past and present performance and prospects for rehabilitation, (iii) the confidence—or lack thereof—of the business community and of creditors in present management, and (iv) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment.

In re Ionosphere Clubs, Inc., 113 B.R. at 168 (citations omitted).

These considerations militate in favor of appointing a chapter 11 trustee to administer the Debtors' estates. The Debtors' prospects for rehabilitation are bleak; revenues for most of the Debtors have declined over the last few years, and the Debtors do not anticipate generating enough income from their operations to pay COTMF's claims. COTMF—the major creditor in these cases—seriously doubts Esma Elberg's ability to manage the Debtors. She lacks knowledge of

the most basic yet important information regarding the Debtors' operations, including the Debtors' current income and any details regarding the fifteen (15) "shareholder loans" allegedly made by the Debtors for approximately $1,000,000 each.  341(a) Hr'g Tr. 22:10-13; 43:11 – 45:15; 39:10 – 42:2. She also took large distributions on the proverbial eve of bankruptcy while the Debtors were indisputably insolvent, id.  47:14 - 49:14, which violated New York Law. See N.Y. Bus. Corp. Law § 510(a) (McKinney).[16]

Despite its lack of confidence in Esma's fitness to manage the Debtors, COTMF is equally concerned that Esma will or already has informally relinquished control of the Debtors to her daughter, who is not an officer or shareholder of any Debtor.  341(a) Hr'g Tr. 38:3-11.  Because Esma's daughter owes no fiduciary duties to the Debtors, she may not act in their best interests or the best interests of their creditors.

COTMF submits that the benefits of appointment of a trustee outweigh the costs. There is a real risk that, without a trustee, Esma Elberg with the aid of her daughter will manage the Debtors in a way that fails to maximize recoveries and is, at best, negligent.  The cost of appointing a chapter 11 trustee should be relatively modest because the Debtors are holding companies with no real operations to manage other than entering into and enforcing the Medallion leases. Accordingly, if this Court does not dismiss or convert the Debtors' cases, it would be in the best interest of creditors to appoint a chapter 11 trustee pursuant to § 1104(a)(2).

## CONCLUSION

For the reasons stated herein, COTMF respectfully requests that the Court vacate the automatic stay pursuant to § 362(d) of the Bankruptcy Code or, in the alternative, dismiss or

---

[16]  Esma's managerial incompetence and improper use of the Debtors' funds likewise satisfies the standard for appointment of a chapter 11 trustee for "cause" under § 1104(a)(1).

convert these cases pursuant to § 1112(b) of the Bankruptcy Code or appoint a chapter 11 trustee

pursuant to § 1104(a)(2) of the Bankruptcy Code.


Dated: New York, New York
      February 13, 2018               TROUTMAN SANDERS LLP


                        By: *s/ Jonathan D. Forstot*
                           Jonathan D. Forstot
                           David A. Pisciotta
                           Alissa K. Piccione
                           875 Third Avenue
                           New York, New York 10022
                           Tel: (212) 704-6000

                        *Attorneys for Capital One Equipment Finance*
                        *Corp., f/k/a All Points Capital Corp. d/b/a Capita*
                        *One Taxi Medallion Finance*