UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

Bracha Cab Corp. et. al.,                                   Chapter 11

                    Debtors.                                Case No. 17-46613-nhl
                                                            Jointly Administered
------------------------------------------------------------X

**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY
OR, IN THE ALTERNATIVE DISMISS OR CONVERT
THE DEBTORS' CASES OR APPOINT A CHAPTER 11 TRUSTEE**

Bracha Cab Corp., Dovber Cab Corp., Dabri Trans Corp., Merab Cab Corp., Fit Taxi Corp., Jarub Trans Corp., Somyash Taxi Corp., NY Canteen Taxi Corp., Lechaim Cab Corp., Tamar Cab Corp., NY Genesis Taxi Corp., NY Tint Taxi Corp., NY Stance Taxi Corp., NY Energy Taxi Corp., Jackhel Cab Corp.,  debtors and debtors and debtor-in-possession, ("Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases, as its opposition to the motion of Capital One Equipment Finance Corp. ("Capital"), respectfully represents:

1.       On December 8, 2017, Bracha Cab Corp., Dovber Cab Corp., Dabri Trans Corp., Merab Cab Corp., Fit Taxi Corp., Tamar Cab Corp., and NY Genesis Taxi Corp. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On December 11, 2017, Jarub Trans Corp., Somyash Taxi Corp., NY Canteen Taxi Corp., Lechaim Cab Corp., Tamar Cab Corp., NY Genesis Taxi Corp., NY Tint Taxi Corp., NY Stance Taxi Corp., NY Energy Taxi Corp., Jackhel Cab Corp. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.       On January 19, 2018, this Court entered an order procedurally consolidating the cases filed by the Debtors and directing that they be jointly administered by the Court.

3.    The Debtors have continued to manage and operate their businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No committees, trustees, or examiners have been appointed.

4.    The Debtors operate 15 related businesses at 1281 Carroll Street, Brooklyn, New York that together own 35 taxi medallions. Each of the medallions is used by a New York City taxi cab and each generates income for the Debtors. Capital holds the security interest in the medallions and the revenue generated by the medallions.

5.    The Debtors file this opposition to Capital's motion for relief from the automatic stay, or in the alternative, dismissal or conversion of the Debtors' chapter 11 cases, or appointment of a chapter 11 trustee. For the substantive reasons set forth below in this response, the Debtors submit that Capital's motion should be denied, but before the Debtors set forth their substantive response they need to inform the Court that Capital's motion is not properly before the Court because Capital did not serve its motion in accordance with the Federal Rules of Bankruptcy Procedure. Bankruptcy Rule 4001(a)(1) states that a motion for relief from the stay must be served in accordance with Bankruptcy Rule 9014. Bankruptcy Rule 9014 states that service of a contested matter, which this is, must be made as provided in Bankruptcy Rule 7004. Bankruptcy Rule 7004(b)(9) states that after a petition is filed, service must be made on the debtor at the address shown on the petition. Bankruptcy Rule 2002(a) requires that a motion to dismiss or convert be served on the debtor. Although there appears to be no specific rule for service of a motion to appoint a chapter 11 trustee, Bankruptcy Rules 9014 and 7004 apply because such a motion is a contested matter. Annexed hereto as Exhibit A is the affidavit of service of John C. Murphy, a paralegal at Troutman Sanders, the attorneys for Capital, setting forth who was served with Capital's motion. An examination of the affidavit shows that Capital's attorneys failed to

2

Exhibit D, are the notices of claim served by the Debtors on the Elberg Estate dated March 29,

2016, almost two years ago. The notices include pages from the Debtors' tax returns that show

that the Debtors have carried the loans on their books and records for many years. Of the money

owed to the Debtors, more than $5 million came from monies borrowed by the Debtors from

Capital and its predecessor, North Fork Bank, between 2004 and 2012. Jacob Elberg used much

of the money to purchase and renovate real estate in Queens and some of the checks from the

monies borrowed went directly to the entities that owed the real estate. Others went to Jacob

Elberg, who then used it for the real estate. The properties in Queens were sold, and more than

$20 million is being held pending resolution of the dispute among the members of the Elberg

family. The Debtors intend to file adversary proceedings in this Court by the end of March 2018

to collect on the claims. This Court could at some point determine that the Debtors cannot obtain

and use the money from the sales of the real estate, but the Debtors believe that they will be able

to obtain the money and that this Court should not find that the Debtors cannot at this early stage

of the cases.

### Relief from the Automatic Stay

8.        Capital moved for relief from the stay under both section 362(d)(2) and (d)(1).

Section 362(d)(2) states that a secured creditor is entitled to relief from the stay when there is no

equity in the property securing its loan and the property is not necessary for an effective

reorganization. The 35 medallions are worth approximately $7 million in Capital's estimation

and approximately $13 million according to the Debtors' schedules. Either figure is less than the

amount owed to Capital, so the Court's determination will be made on whether the 35 medallions

are necessary for the effective reorganization of the Debtors. The Debtors entire business is the

operation of the medallions, so that there can be no reorganization without the medallions, but

the relevant case law holds that the reorganization must be "in prospect." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-76 (1988).

9.      An examination of Exhibits C and D shows the substantial sums owed to the Debtors from the Elberg Estate and the real estate owned by entities that were owned by Jacob Elberg. As stated above, the Debtors are preparing to commence adversary proceedings to obtain the monies owed to the Debtors. The recovery of the money is not speculative, the money owed by Jacob Elberg has been on the Debtors' books for many years and has always been reflected in the Debtors' tax returns. The adversary proceedings will bring all the parties to the Elberg Estate and the real estate owned by Jacob Elberg before this Court and the Debtors believe that resolution of those matters can and will happen in a reasonable time. The Debtors submit that an effective reorganization is "in prospect" and that the Debtors can meet their burden of proving that the 35 medallions are necessary for an effective reorganization.

10.      Capital also moved under section 362(d)(1) for relief from the stay for cause claiming that it is not adequately protected. Capital claims that the value of the Debtors' 35 medallions is declining, but not only do the examples given by Capital not show a decline, Capital relies on articles and speculation, all of which is hearsay and not evidence of declining value. Further, the Debtors can adequately protect Capital. The Debtor can pay immediately to Capital $132,000. If the Debtors' proposed cash collateral budget is approved by this Court, Exhibit A, the Debtors will pay Capital $27,075 per month, which results in $324,900 per year. Based on Capital's belief that the 35 medallions are worth approximately $7 million, Capital would be receiving more than 4.5% interest on its secured claim. The non-default interest rate in the notes signed by the Debtors is 3.5%.

11.      The Debtors believe that the market for medallions has stabilized and will not

send a copy of the motion to the Debtors at the address shown on the petition. The Debtors'
principal, Esme Elberg, told Debtors' counsel that neither she nor the Debtors received the
motion. Because service of the motion did not comply with the Federal Rules of Bankruptcy
Procedure, Capital's motion should be either denied without prejudice to renew with proper
service or adjourned so that Capital can serve its motion in accordance with the Bankruptcy
Rules.

6.    Turning to the substance of Capital's motion, the Debtors submit that they have
ongoing business with substantial cash flow that can provide adequate protection for Capital's
secured claim and significant additional assets that will result in money for the Debtors to
reorganize and to pay unsecured creditors, including Capital's large unsecured claim. Annexed
hereto as Exhibit B is a statement of the monthly and annual income generated by the Debtors. It
shows that the Debtors generate $489,600 per year, or $40,800 per month. All of the money
received by the Debtors since the Filing Dates was deposited into the Debtor in Possession
accounts and as of the date of this response, the amount in the accounts totals $157,978.47 and it
is likely that the amount will increase by the return date of this motion. The Debtors are prepared
to pay $132,000.00 to Capital immediately, and have proposed in the Debtors' motion to use
cash collateral to pay Capital $27,075.00 per month going forward. Those payments will provide
adequate protection to Capital and will insure that Capital's interests will not diminish or
deteriorate during the life of this case.

7.    The Debtors have significant assets in addition to the 35 medallions and those are
the monies owed to the Debtors by the estate of Jacob Elberg (the "Elberg Estate"), who was the
principal of the Debtors until his death in 2013. Annexed as Exhibit C is a schedule of the claims
that the Debtors have against the Elberg Estate. The claims total $23,323,728. Annexed as

3

further decline during the pendency of this case. Capital has the burden of showing, through actual evidence, that the market is continuing to decline. The Debtors making adequate protection payments to Capital shows that Capital will not be worse off over at least the next several months and that it is adequately protected. Capital's motion for relief from the stay should be denied.

## Dismissal or Conversion

12.     Capital, in the alternative, also requests dismissal of this case or conversion of the Debtors' chapter 11 cases to ones under chapter 7 of the Bankruptcy Code. For the same reasons set forth above in response to Capital's request for relief from the stay, Capital's motion to dismiss or convert these cases should be denied.

13.     Capital in its motion to dismiss or convert again cites the continuing loss or diminution of the Debtors' estates, but again does not present any evidence that there is continuing loss or diminution. Capital alleges that the Debtors' income will continue to decline, but again the statement is based on belief and hearsay. The Debtors do derive income from the 35 medallions, see Exhibit B. The income has been steady for at least the last several months and the Debtors believe that the income will not decline in the near future. There are still yellow cabs on the streets of New York City and they generate income every day. Capital relies on the factors sometimes used by courts in deciding motions to dismiss as set forth in the case, *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997)*, alleging that all or most of the factors are present in this case. The Debtors submit that few of the C-TC factors are present here and that therefore Capital has not met its burden of showing why this case should be dismissed. The first factor is that the Debtors have only one asset, the medallions. As seen by Exhibits C and D and as discussed above, the Debtors have more than one asset, the

35 medallions and the monies due from the Elberg Estate. The Debtors believe that they can

collect of those debts for the benefit of the Debtors' estate. The second factor is that the Debtors

have few unsecured creditors whose claims are small in relation to secured creditors. This is also

not correct. Capital has both a secured and unsecured claim and depending on whose value is

accepted for the 35 medallions, its unsecured claim is either equal to or greater than its secured

claim. The third and fourth factors discuss a foreclosure action which is essentially a two party

dispute. In this case, there is no pending foreclosure action and this case is not simply a two party

dispute between the Debtors and Capital. It is also a dispute between the Debtors and the Elberg

Estate. Although the timing of the filing did prevent Capital from enforcing its rights, the

Debtors did not file to delay or frustrate Capital, but instead to provide a mechanism by which

the Debtors can pay Capital on both its secured and unsecured claims. Had Capital repossessed

the medallions, only its secured claim would have been paid and Capital would have been

dependent on resolution of state court proceeding concerning the Elberg Estate and the real estate

owned by Jacob Elberg before it could see any money on its unsecured claim. The sixth factor is

little or no cash flow. A review of Exhibit B shows that the Debtors have a steady cash flow that

will continue during the case. Since the Filing Dates, the Debtors have received $157,978.47, all

of which is in the debtor in possession accounts and as can be seen from Exhibit B, the Debtors

will continue to have significant cash flow. The eight factor is that lack of employees. That also

does not apply to this case. The Debtors employ a bookkeeper and the Debtors' principal acts as

manager of the Debtors. Application of the C-TC factors to these cases shows that Capital has

not satisfied the standard for dismissal of these case so that the burden does not shift to the

Debtors to satisfy the requirements of Bankruptcy Code section 1112(b)(2), but even if it did

shift the burden, the Debtors have shown that dismissal of these cases is not in the best interests

of the estate, or even Capital for that matter. Resolution in this Court of the monies owed to the Debtors by the Elberg Estate offers the best hope for unsecured creditors, including Capital, to see money on their claims within a reasonable period of time. That will not happen if these cases are dismissed. As shown above, Capital is not at risk of further depreciation and presents no proof that it is. The Debtor can make adequate protection payments to Capital. This Court should not dismiss these cases.

14.     The same arguments show why this Court should not convert these cases to ones under chapter 7 of the Bankruptcy Code. Additionally, conversion to chapter 7 would add an unnecessary layer of expense to these cases for commissions due to a chapter 7 trustee. Capital in its motion requests dismissal rather than conversion, another reason not to convert these cases.

### Appointment of a Chapter 11 Trustee

15.     Capital also, in the alternative, request appointment of a chapter 11 trustee. Capital begins its motion by stating that the Debtors run passive businesses that simply collect a check each month from the management companies that operate the 35 medallions, but does not show why it thinks a trustee is necessary to operate a "passive" business. Capital does not allege fraud, dishonesty, or gross mismanagement. In fact the opposite is true. Every month the Debtors receive checks from the management companies, and since the Filing Dates, those checks have been deposited into the debtor in possession accounts. The Debtors have filed monthly operating reports and will continue to file reports. Those reports show the Court, creditors, and the Office of the United States Trustee where all of the money received by the Debtors goes and will go. The *Ionosphere* factors relied on by Capital do not show that a trustee is necessary. There is no proof that the Debtors are not trustworthy. The Debtors operate in a correct manner. As shown above, the Debtors have good prospects for rehabilitation. Esme Elberg is capable of managing

8

the Debtors' businesses, the impression of Capital's counsel from the 341 meeting notwithstanding. English is not her native language and she is not used to testifying in court. Her daughter does help her, particularly with language issues, but Mrs. Elberg is more than capable of operating these businesses, which Capital itself characterizes as "passive." The cost of a chapter 11 trustee is unnecessary and not in the best interests of the Debtors' estate, no matter how modest. Experience tells Debtors' counsel that the costs of a trustee are rarely "modest." Capital has not met its burden of showing that this Court should direct the appointment of a chapter 11 trustee.

16.    Capital states that it is owed $21,845,000.00, plus interest and late charges. The Debtors reserve all rights to contest the amount due when Capital files a claim in this case.

Wherefore, it is respectfully requested that this Court deny Capital's motion and grant such other relief as is just and proper.

Dated: Brooklyn, New York
February 28, 2018

ROSENBERG, MUSSO & WEINER, LLP
Attorneys for Debtor

By:___/s/_____
Bruce Weiner
26 Court Street, Suite 2211
Brooklyn, New York 11242
(718) 855-6840

9