TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 704-6000
Jonathan D. Forstot
David A. Pisciotta
Alissa K. Piccione

*Attorneys for Capital One Equipment Finance
Corp., f/k/a All Points Capital Corp., d/b/a
Capital One Taxi Medallion Finance*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                                       : Chapter 11
                                                             :
BRACHA CAB CORP., *et al.*,                                  : Case No. 1-17-46613 (NHL)
                                                             :
                                                             : *Jointly Administered*
                      Debtors.                               x
------------------------------------------------------------

**REPLY MEMORANDUM OF LAW OF CAPITAL ONE EQUIPMENT FINANCE
CORP. IN FURTHER SUPPORT OF MOTION TO VACATE THE AUTOMATIC STAY
OR, IN THE ALTERNATIVE, DISMISS OR CONVERT THE DEBTORS' CASES OR
APPOINT A CHAPTER 11 TRUSTEE**

Capital One Equipment Finance Corp. f/k/a All Points Capital Corp., d/b/a Capital One Taxi Medallion Finance ("COTMF") respectfully submits this reply memorandum of law (the "Reply") in further support of its Motion to Vacate the Automatic Stay or, in the Alternative, Dismiss or Convert the Debtors' Cases or Appoint a Chapter 11 Trustee [ECF Nos. 23-26] (the "Motion")[1] and in response to the Debtors' Opposition to the Motion [ECF No. 34] (the "Opposition").

## PRELIMINARY STATEMENT

Since Jacob Elberg passed away in 2013, his children have fought tooth and nail over his assets, principally proceeds following the sale of real estate. That fight has spanned three courts, involved numerous attorneys, and shows no sign of abating. Yet in these bankruptcies, the sole argument advanced by the Debtors in opposition to COTMF's lift stay motion is that a plan of reorganization would be based on a lawsuit to be filed by the Debtors against Mr. Elberg's estate. That lawsuit would presumably be to collect on debts about which the Debtors' principal, Esma Elberg, knows nothing—there are apparently no loan documents much less any known terms of these supposed debts. And even if the suit were somehow speedy and successful, the funds to pay those debts are the very funds mired in the years-long family dispute.

---

[1] COTMF served the Motion on, among others, the Debtors by service on their counsel of record. COTMF also served Esma Elberg, the Debtors' principal, by service on her counsel of record in these bankruptcies. Despite having an opposition filed on their behalf and without requesting additional time to submit such opposition, the Debtors assert that the Court should deny the Motion because the Debtors were not served directly. *See* Opposition ¶ 5. This alleged defect in service, however, amounts to nothing more than, at most, harmless error because the Debtors clearly were not prejudiced. *See In re Kramer*, 492 B.R. 366, 371 (Bankr. E.D.N.Y. 2013). The Debtors raise this hyper technical procedural point to distract the Court from their lack of any substantive legal argument. This is particularly telling in light of the fact that the Debtors failed to comply with the requirements of Local Bankruptcy Rule 9006-1 and General Order No. 559 when serving their Opposition. As set forth in the Affidavit of Service annexed to the Opposition, the Debtors served COTMF by mail on February 28, 2018, the objection deadline, without adding the additional three days to the minimum service requirement. *See* E.D.N.Y. LBR 9006-1(a)(ii),(c). Further, COTMF was not properly served electronically because the Debtors failed to serve the "Notice of Electronic Filing" that ECF generated by hand, fax, or email. *See* General Order No. 559. In any event, COTMF respectfully submits that the Court should focus on the merits of this Motion.

Because the Debtors admit they have no equity in their only assets, COTMF's collateral, the Debtors have the burden of proving the likelihood of a successful reorganization in prospect. The hope of a successful lawsuit, yet to be filed and on an uncertain basis, seeking funds not even available does not come close to carrying that burden. In addition, the fact that Mrs. Elberg would be suing her daughter, Tamara Pewzner, as executor of the Jacob Elberg estate, raises a clear conflict of interest because her daughter is also running the Debtors.

Moreover, each of the *C-TC* Factors for dismissal or conversion are present. These shell companies, each with no employees, no creditors, and de minimis monthly cash flows were filed solely to prevent COTMF from repossessing its collateral.

As further set forth below, the Motion should be granted.

## ARGUMENT

### I. The Debtors Failed to Satisfy Their Burden Under § 362(g) of the Bankruptcy Code to Show that the Medallions are Necessary to an Effective Reorganization *That is in Prospect* Under § 362(d)(2) of the Bankruptcy Code

Pursuant to § 362(g) of the Bankruptcy Code, the party moving for relief from the automatic stay "has the burden of proof on the issue of the debtor's equity in property; and the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g); *see In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 322 (Bankr. S.D.N.Y. 2001). The Debtors admit that COTMF met its burden to show lack of equity in the Medallions[2] by stating as follows in the Opposition:

> The 35 medallions are worth approximately $7 million in Capital's estimation and approximately $13 million according to the Debtors' schedules. Either figure is less than the amount owed to Capital, so the Court's determination will be made on whether the 35 medallions are necessary for the effective reorganization of the Debtors.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Opposition ¶ 8. Because COTMF satisfied its burden, the burden shifted to the Debtors to show the Medallions' necessity by a preponderance of the evidence, *see In re Kent Terminal Corp.*, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994), i.e., "'that the property is essential for an effective reorganization *that is in prospect*' and that there is a 'reasonable possibility of a successful reorganization within a reasonable time,'" *see Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.),* 101 F.3d 882, 886 (2d Cir. 1996) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76 (1988)); *see also In re Beautiful View Realty, Inc.,* 546 B.R. 507, 516 (Bankr. E.D.N.Y. 2016) (same). The Debtors were required to provide the Court with "tangible proof" that there is a "reasonable likelihood of a timely and successful reorganization." *See In re Mount Moriah Baptist Church, Inc.*, No. 10-11199 (SCC), 2010 WL 1930937, at *4 (Bankr. S.D.N.Y. May 12, 2010). "Unrealistic hypotheticals" and a debtor's "pipe dreams" for reorganization are insufficient to satisfy this standard. *See In re New Era Co.*, 125 B.R. 725, 730 (S.D.N.Y. 1991).

The Debtors have not met their burden under § 362(g) and § 362(d)(2) of the Bankruptcy Code. According to the Debtors, they intend to commence an adversary proceeding to recover debts owed to them by the estate of Jacob Elberg and, because the debt "has been on the Debtors' books for many years", this somehow means that recovery is not speculative and will occur within a reasonable time. *See* Opposition ¶ 9.[3] The mere fact that counsel asserts that there is a long-standing debt, however, is evidence of nothing and says nothing about its collectability. Counsel has likewise failed to point out in the Opposition—but did so at the § 341(a) meeting of creditors—

---

[3] To the extent that an adversary proceeding is in the best interests of the Debtors' estates, an independent chapter 11 trustee is required to prosecute the claims. Esma Elberg is the Debtors' sole shareholder and primary beneficiary of the estate of Jacob Elberg. Further, her daughter—who seems to be "operating" the Debtors and maintaining their bankruptcies despite lacking any official role or title—is executor Jacob Elberg's estate. Accordingly, there is a serious and clear conflict of interest, and the Debtors lack the independence to prosecute any alleged claims.

3

that the only hope for recovery against the estate of Jacob Elberg is if certain proceeds, currently in escrow allegedly, are adjudicated as belonging to Jacob Elberg's estate rather than belonging to Ruben Elberg, a third party who has argued vigorously that he is entitled to such funds. *See* 341(a) Hr'g Tr. 30:15-25; 31:1-2.[4]  The dispute regarding the sale proceeds has been ongoing for over four years, and the Debtors have failed to provide evidence that it is likely to be resolved soon. *See* Memorandum of Law in Opposition to Defendant's Motion by Order to Show Cause For a Hearing on Removal of Co-Manager Ruben Elberg at pp. 4-9, *Elberg v. Crabapple Corp. et al.,* Index No. 653373/2016 (Sup. Ct. N.Y. Cnty.) [NYSCEF Doc #100] (the "Crabapple MOL").[5] Because any plan is necessarily contingent on recovery of a presently non-collectable debt, the Debtors fail to submit any fact, much less prove that there is a realistic possibility of reorganization within a reasonable time.

Counsel's assertions aside, the only evidence that the Debtors have submitted purporting to show that an effective reorganization is in prospect are the notices of claim filed with the Surrogate's Court against the Estate of Jacob Elberg that include an affidavit in support and a copy of the Debtors' Schedules L from their 2015 tax returns. *See* Opposition ¶ 9, Ex. D.  This showing, however, is deficient.  Notably absent from the Surrogate's Court claims is any documentation evidencing the origination of the loan and its terms.  For example, the Debtors have not provided any loan documents, such as a loan agreement or promissory note, showing that a debt was created. In the affidavit in support of the claims, Esma Elberg says nothing about the loans' terms.  This is consistent with her inability to answer basic questions regarding these loans at the § 341(a) meeting

---

[4] A copy of the transcript of the § 341(a) meeting of creditors is attached to the Declaration of Jonathan D. Forstot in Support of the Motion [ECF No. 25]. References to the transcript are cited as follows "341(a) Hr'g Tr. __:__".

[5] A copy of Crabapple MOL is attached hereto as Exhibit A.  This Court may take judicial notice of the record of the state court proceedings.

of creditors.  *See* 341(a) Hr'g Tr. 43:11 – 45:15.  The Debtors' failure to show that these are legitimate loans with repayment obligations presently due and owing rather than disguised shareholder dividends undercuts the assertion that the Debtors will recover the alleged debt in an adversary proceeding.  Based on all the evidence in the record, the Debtors' hopes for reorganization within a reasonable time are merely "pipe dreams".

Further, the Debtors cannot confirm a plan absent COTMF's consent.  To the extent COTMF has a large deficiency claim, it would dominate the entire unsecured class.  As such, no impaired class will vote to accept the plan as required by § 1129(a)(10) of Bankruptcy Code.  Or, if COTMF elects to have its entire claim treated as secured for confirmation purposes pursuant to § 1111(b)(2) of the Bankruptcy Code, it would take the Debtors an unreasonable amount of time to pay COTMF's entire claim in deferred cash payments.  Simply put, COTMF has the power to veto any plan, and its lack of consent to these bankruptcies all but guarantees that the Debtors cannot successfully reorganize.  Therefore, this Court must vacate the stay pursuant to § 362(d)(2) of the Bankruptcy Code.

## II.    The Debtors Failed to Rebut COTMF's Prima Facie Case That COTMF is <u>Not Adequately Protected</u>

Lack of adequate protection is a cause for relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code.  11 U.S.C. § 362(d)(1).  Contrary to the Debtors' argument, there is more than sufficient evidence in the record from which the Court may infer that the value of the Medallions is declining, even if the Court declines to take judicial notice of the one news article COTMF cited. COTMF submitted the Declaration of Stephen P. Rochford, a Vice President of COTMF, who is personally familiar with the auctions that COTMF held on September 12, 2017 and December 5, 2017.  His declaration was made under penalties of perjury and, if necessary, he would testify at an evidentiary hearing that COTMF (i) credit bid in the amount of $335,000 per

medallion in September 2017; (ii) credit bid in the amount of $262,500 per medallion in December 2017; and (iii) did not receive any higher or better offers. Such in-person testimony, however, should be unnecessary because the Debtors do not seem to seriously dispute that the value of the Debtors' medallions are declining.[6] *See* 341(a) Hr'g Tr. 30: 10-14. While the Debtors "believe that the market for medallions has stabilized," it is unclear what basis there is for that belief—other than perhaps reading tea leaves or mere wishful thinking. They certainly have not submitted any evidence that contradicts or is inconsistent with COTMF's auction results. Because COTMF has shown that its collateral is at risk of depreciation, COTMF has made a prima facie case of lack of adequate protection.

The burden has now shifted to the Debtors to show that COTMF is otherwise adequately protected. *See In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 751 (Bankr. S.D.N.Y. 2004). While the Debtors have proposed adequate protection payments, such payments are insufficient to fully protect COTMF's interests in its collateral. Under the Debtors' proposed budget, the Debtors claim that "Capital would be receiving more than 4.5% interest on its secured claim." Opposition ¶ 10. Yet, the Loans at the heart of COTMF's claims have been in default for years, and default interest accrues at the rate of at least 8.5%—almost double the interest that the Debtors propose to pay as adequate protection. *See* Rochford Declr. Ex. B. Because the proposed adequate protection payments are substantially less than the monthly interest payments now due by agreement of the parties under the Loans, COTMF is not adequately protected. *See In re Ellis*, 478 B.R. 132, 141 (Bankr. N.D.N.Y. 2012) (holding that secured creditor was not adequately protected because

---

[6] This is a contested matter that is governed by Bankruptcy Rule 9014. *See* Fed. R. Bankr. P. 4001, 9014. "It is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record." *In re AMR Corp.*, 490 B.R. 470, 479 (S.D.N.Y. 2013).

6

monthly adequate protection payments were far below monthly interest due at rate proposed by debtor under plan).

### III.    The Debtors Misapplied the *C-TC* Factors, Which Militate in Favor of Dismissal for Cause Pursuant to § 1112(b) of the Bankruptcy Code

The Debtors' conclusion that few of the *C-TC* Factors are present is simply wrong. *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997). They misinterpret and misapply the factors without any case law in support of their strained analysis, which COTMF respectfully submits defies the facts and common sense.

With respect to the first factor, the Debtors have no real assets other than the Medallions. Each Debtor owns two or three Medallions, and those assets should not be aggregated as the Debtors do in the Opposition. *See* Opposition ¶ 13. The Debtors ignore that their chapter 11 cases are only administratively consolidated. Additionally, the alleged debt from the Elberg Estate, as previously stated, is presently uncollectible and likely illusory and should be discounted as an asset of the Debtors' estates.

The Debtors also twist the second factor, which is that "the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors." The Debtors argued that, because COTMF may have a large deficiency claim, the second factor is not satisfied. Clearly COTMF is a creditor. The problem is that there are few if any other legitimate creditors. Attached hereto as Exhibit B is a copy of a letter that the undersigned received from counsel for two alleged creditors stating that any claims against the Debtors had been settled and resolved years ago.

The Debtors' interpretation of the third and fourth factors is, at best, overly literal. Simply because there is no pending foreclosure action does not mean that (i) a two-party dispute (ii) over a defaulted debt (iii) that is secured by the only major asset that each Debtor owns should be resolved by a bankruptcy court. The issues between the parties here are based on relatively simple

loan documents and involve purely state law issues and can be most efficiently resolved outside of bankruptcy. The Debtors' assertion that the bankruptcies are really a dispute between the Debtors and the estate of Jacob Elberg is disingenuous. The Debtors first indicated that they would be filing an adversary proceeding only in response to COTMF's Motion. Further, this debt is clearly uncollectable currently and, in the event there was some hope for recovery, the debt could be recovered through the Surrogate's Court proceeding that is still pending. Because the Debtors and COTMF are the only real parties in these bankruptcies, these factors are satisfied.

The Debtors concede that the timing of the bankruptcy prevented COTMF from exercising its rights. Opposition ¶ 13. As such, the fifth factor should be considered undisputed.

The Debtors' own exhibit confirms that the sixth factor, little cash flow, is present here. As set forth on Exhibit B to the Debtors' Opposition, each Debtor has a monthly net income of between $1,285 and $2,385. *See* Opposition, Ex. B. These paltry sums are insufficient to pay COTMF's claims within a reasonable time under any plan and demonstrate that the Debtors' bankruptcies should be dismissed.

The Debtors do not have any employees, which is the eighth *C-TC* Factor. The Debtors' representative testified to that under oath. *See* 341(a) Hr'g Tr. 15:11-16. Contrary to what the Debtors allege, a bookkeeper who provides services to the Debtors and related non-debtor entities is not their employee. The Debtors have not shown that they control the manner and means of the bookkeeper's performance or that he or she is on their payroll. The Debtors further allege that Esma Elberg is an employee who "acts as manager of the Debtors." Opposition ¶ 13. The Debtors are mere holding companies that do nothing other than receive passive income from the taxi medallion leases. Therefore, the factor providing that the Debtors have no employees is also satisfied.

Because all the *C-TC* Factors are present, the Debtors' bankruptcies should be dismissed pursuant to § 1112(b) of the Bankruptcy Code, or converted.

**IV.  In the Absence of Dismissal or Conversion, a Chapter 11 Trustee Should be Appointed Because the Debtors' Principal is Incompetent, Took Substantial and Illegal Distributions, and is Leaving the Debtors in the Hands of Her Daughter, Who Owes No Fiduciary Duties to the Estate and May Become a <u>Defendant to an Adversary Proceeding Commenced by the Debtors' Estates</u>**

Pursuant to § 1104(a)(2) of the Bankruptcy Code, a court may appoint a trustee if doing so is in the best interests of creditors. 11 U.S.C. § 1104(a)(2). COTMF submits that appointment of an independent fiduciary is in the best interests of creditors, i.e., COTMF, because it has little confidence in the ability of Esma Elberg, the Debtors' principal, to direct the Debtors. She has demonstrated that she knows nothing about the Debtors over which she (legally) has sole control. For example, according to Debtors' counsel, these cases all depend on collecting on debts about which Mrs. Elberg knows nothing. *See* 341(a) Hr'g Tr. 43:11 - 45:15. Even though these Debtors are mere holding companies, it is entirely possible—and likely given Mrs. Elberg's prepetition acts—that she could perpetrate fraud or other misconduct to the detriment of COTMF. Most notably, Mrs. Elberg took large distributions shortly before the Debtors filed their chapter 11 cases and while they were indisputably insolvent, *id.* 47:14 - 49:14, which violated New York Law, *see* N.Y. Bus. Corp. Law § 510(a) (McKinney).[7] Therefore, COTMF doubts Mrs. Elberg's abilities and believes that she should not remain in charge of these Debtors without any oversight.

The Debtors allege that "the Debtors have good prospects for rehabilitation", but, as set forth above, that certainly is not true given the highly speculative proposal for reorganization the Debtors have outlined and COTMF's ability to block confirmation of any proposed plan.

---

[7] Mrs. Elberg's managerial incompetence and improper use of the Debtors' funds likewise satisfies the standard for appointment of a chapter 11 trustee for "cause" under § 1104(a)(1).

If the Debtors' estates do have legitimate claims against the estate of Jacob Elberg, COTMF submits that a chapter 11 trustee must be appointed because of the clear conflicts of interest that Esma Elberg and her daughter have. Esma Elberg is the sole beneficiary of the Jacob Elberg estate—the party against whom the Debtors would be litigating. Further, her daughter, who is "operating" these Debtors, is an executor of Jacob Elberg's estate, so she would be on both sides of the possible lawsuit. Therefore, an independent fiduciary is needed to bring these claims on behalf of the Debtors' estates.

## CONCLUSION

For the reasons stated herein, COTMF respectfully requests that the Court overrule the Debtors' Opposition in its entirety and vacate the automatic stay pursuant to § 362(d) of the Bankruptcy Code or, in the alternative, dismiss or convert these cases pursuant to § 1112(b) of the Bankruptcy Code or appoint a chapter 11 trustee pursuant to § 1104(a)(2) of the Bankruptcy Code.

Dated: New York, New York
      March 1, 2018             TROUTMAN SANDERS LLP

                                      By: *s/ Jonathan D. Forstot*
                                            Jonathan D. Forstot
                                            David A. Pisciotta
                                            Alissa K. Piccione
                                            875 Third Avenue
                                            New York, New York 10022
                                            Tel: (212) 704-6000

                                            *Attorneys for Capital One Equipment Finance*
                                            *Corp., f/k/a All Points Capital Corp. d/b/a*
                                            *Capital One Taxi Medallion Finance*