# EXHIBIT A

Case 1:17-cv-06131-PKC Document 36-1 Filed 03/01/18 Entered 03/01/18 18:58:00 Exhibit No. 653373/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RUBEN ELBERG, individually and derivatively on : behalf of ROYAL CP HOTEL HOLDINGS LP and : ROYAL HI HOTEL HOLDINGS LP, :
                      Plaintiff, :

           v. :

CRABAPPLE CORP. and TAMARA PEWZNER : individually, as co-executor and co-trustee of the Estate of : Jacob Elberg, and as court-designated Manager of ROYAL : ONE REAL ESTATE, LLC, ROYAL REAL ESTATE : MANAGEMENT LLC, ROYAL LIC REAL ESTATE : MANAGEMENT LLC, :
                    Defendants, :
                        :

          and :
                        :

ROYAL ONE REAL ESTATE, LLC, ROYAL REAL : ESTATE MANAGEMENT LLC, ROYAL LIC REAL : ESTATE MANAGEMENT LLC, ROYAL HOTEL & : RESORTS LLC, ROYAL CP HOTEL HOLDINGS : LP, ROYAL HI HOTEL HOLDINGS LP, ZHU QING, : FENG LI, MENGSHA CHEN, RUIZHEN WANG, : HONG GE, QIN SI, YANG ZHANG, ZHE FANG, and : XU NING, :

                Nominal Defendants.

Index No. 653373/2016
(Ramos, J.S.C.)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION BY ORDER TO SHOW CAUSE FOR A
HEARING ON REMOVAL OF CO-MANAGER RUBEN ELBERG**

## TABLE OF CONTENTS

                                                                        **Page**

PRELIMINARY STATEMENT…………………………………………………………1
STATEMENT OF FACTS……………………………………………………………..4
ARGUMENT……………………………………………………………………...9
   I.  PEWZNER'S "EMERGENCY" ORDER TO SHOW CAUSE WAS FILED IN THE
      WRONG ACTION………………………………………………….…....9
   II. THERE IS NO
      "EMERGENCY"………………………………………...…………………..10
   III. PEWZNER HAS FAILED TO MAKE A SHOWING THAT A PRELIMINARY
       INJUNCTION OR TEMPORARY RESTRAINING ORDER IS WARRANTED....11
      A. The Court Should Deny Pewzner's Application Because She has Failed to
        Demonstrate Irreparable Harm…………………………………………..12
      B. Pewzner has Failed to Demonstrate a Likelihood of Success on the Merits…….14
   IV. CONCLUSION……………………………………………………………..18

# **TABLE OF AUTHORITIES**

**Cases**

61 West 62 Owners Corp. v. CGM EMP LLC, 77 A.D.3d 330 (1st Dep't 2010) ................12

Access Point Med., LLC v. Mandell, 106 A.D.3d 40 (1st Dep't 2013)...............…......3, 12, 13

Birnbaum v. Birnbaum, 73 N.Y.2d. 461 (1989) ........................................................... 17

Bisca v. Bisca, 108 Misc.2d 227 (N.Y. Sup. Ct. Nass. Cty. 1981)..........….................12, 13

Burry v. Madison Park Owner LLC, 84 A.D.3d 699 (1st Dep't 2011)..........…........….........16

Crabapple Corp. v. Royal One Real Estate, et al., No. 650492/2015 (N.Y. Sup. Ct.

2015)..........…......................................................................................…......1, 2, 7, 8, 9

Ficus Investments, Inc. v. Private Capital Management, LLC, 61 A.D.3d 1 (1st Dep't 2009).... 11

Janklowicz v. Landa, 41 Misc. 3d 1220 (A) (N.Y. Sup. Ct., Kings Cty. 2013) ........................ 15

Kassover v. Prism Venture Partners, LLC, 53 A.D.3d 444 (1st Dep't 2008).............................. 18

Lehey v. Goldburt, 90 A.D.3d 410 (1st Dep't 2011)...............…..........................…..15, 16

Man Choi Chiu v. Chiu, 71 A.D.3d 646 (2d Dep't 2010) ..................................... 14, 15

Matter of Levandusky v. One Fifth Ave. Apt. Corp., 75 N.Y.2d 530 (1990) .............................. 16

Meissner v. Yun, 126 A.D.2d 565 (1st Dep't 2015)...............…..........................…..13

Monarch Condominium v. Raskin, 37 A.D.3d 288 (1st Dep't 2007)..........…........…......…..18

New Fund, LP &Westlead Bridge, LLC v. Royal One Real Estate, LLC et al., No. 709631/2014

(N.Y. Sup. Ct. Queens Cty. 2014)........................................................... 2, 7, 8

Pokoik v. Pokoik, 115 A.D.3d 428 (1st Dep't 2014)................................................... 17

R&L Realty Assoc. v. 205 West 103 Owners Corp., 98 A.D.3d 421 (1st Dep't 2011) ............... 18

Putter v. City of New York, 27 A.D.3d 250 (1st Dep't 2006)..........…..........................…..18

Ross v. Nelson, 54 A.D.3d 258 (1st Dep't 2008) ......................................................... 14

U.S. Re Companies, Inc. v. Scheerer, 41 A.D.3d 152 (1st Dep't 2007) ………..…………..…3, 13

Waxman Real Estate LLC v. Sacks, 32 Misc. 3 1241(A) (N.Y. Sup. Ct. N.Y. Cty. 2011).......... 15

Zodkevitch v. Feibush, 49 A.D.3d 424 (1st Dep't 2008)…………..……………………….....13

**Statutes**

Business Corporation Law § 720 ................................................................................................ 15

N.Y. CPLR § 6301…………………………………………………………………….................12

N.Y. Limit. Liab. Co. § 414…………………………………………………………………....14

Plaintiff, Ruben Elberg (hereinafter referred to as "Elberg" or "Plaintiff") submits this memorandum of law in opposition to defendant Tamara Pewzner's (hereinafter referred to as "Pewzner") "emergency" application for an order to show cause for a hearing on removal of Elberg as co-manager of Royal One Real Estate, LLC (hereinafter referred to as "RORE"), Royal Real Estate Management LLC (hereinafter referred to as "RREM,") and Royal LIC Real Estate Management LLC, (hereinafter collectively referred to as the "defendant-LLCs") and co-manager of the general partners of Royal HI LP and Royal CP LP (hereinafter collectively referred to as the "defendant-entities").[1]

## PRELIMINARY STATEMENT

There is no basis for this Court to remove Elberg as co-manager of the defendant-LLCs. As a threshold matter, the First Department reversed the Court's removal of Elberg as co-manager of the defendant-LLCs in the matter of Crabapple Corp., et al., v. Ruben Elberg, Royal One Real Estate, LLC, et al., Index No. 650492/2015, (hereinafter referred to as the "Crabapple Action"), finding that before Elberg was removed, the Court should have *at least* held an evidentiary hearing on the issue.  See NYSCEF Doc. # 38 at 3 (First Department Decision and Order dated August 15, 2017).   Pewzner then inexplicably filed this "emergency" order to show cause *in the wrong action*.  This action is the declaratory judgment action whereby Plaintiff seeks an order declaring the validity of certain partnership agreements—the management of the LLCs is an entirely separate issue that has no bearing on the matters *sub judice*.  See NYSCEF Doc. # 34 (Proposed Order to Show Cause).  Additionally, certain parties to the Crabapple Action have not appeared in this declaratory judgment action and therefore have not received notice of the

---

[1] This memorandum is supported by the Affirmation of James M. Catterson dated February 20, 2018, and the exhibits attached thereto.

1

"emergency" order to show cause. See NYSCEF Doc. # 52 (Pewzner's Affirmation of Service, citing no order directing alternative process). The Court should deny Pewzner's application because those individuals are entitled to be heard.

Equally fatal to Pewzner's "emergency" order to show cause, which essentially requests that the Court grant injunctive relief, is that she has failed to demonstrate that any such emergency exists. See Mem. in Support of Application for Hearing at 5-6 (citing Elberg's alleged misconduct). First, the events alleged in Pewzner's "Affidavit of Emergency" all occurred more than a year ago, mostly, in 2015. See Affidavit of Emergency at ¶¶ 6, 8, 9, 10, 11. The King's County Surrogate Court's temporary restraining order dated August 28, 2014, procured by Pewzner, barred Elberg from acting as a co-executor of the estate. See Exhibit 1 (King's County Surrogate's Court Order to Show Cause). Regardless of whether or not Elberg had any ability to act on behalf of the LLCs and could have consented to an adjournment in the matter of New Fund, LP &Westlead Bridge, LLC v. Royal One Real Estate, LLC et al., No. 709631/2014 (N.Y. Sup. Ct. Queens Cty. 2014) (hereinafter referred to as the "Foreclosure Action"), it is undisputed that the property was not foreclosed upon in the Foreclosure Action. See New Fund, LP &Westlead Bridge, LLC v. Royal One Real Estate, LLC et al., No. 709631/2014 (N.Y. Sup. Ct. Queens Cty. 2014). With respect to Pewzner's claim that Elberg subjected the LLCs to the liquidated damages provision of a licensing agreement, it is also undisputed that the other party to the licensing agreement never demanded liquidated damages. See Mem. in Support of Application for Hearing at 7. Pewzner cannot base her emergency application on Elberg's refusal to enter into the settlement agreement in the Crabapple Action because she successfully entered into that agreement and liquidated the defendant-entities' underlying assets. The lack of "emergency" here is even more apparent by virtue of the fact that

2

Pewzner filed a motion to quash Plaintiff's subpoenas which seek information necessary to

prepare for an evidentiary hearing.   See NYSCEF Doc. # 65 (Notice of Motion, Sequence # 4).

        Even if Pewzner's "emergency" order to show cause were properly before this Court,

which is it not, Pewzner has not demonstrated a likelihood of success on the merits, as required

for injunctive relief.   See U.S. Re Companies, Inc. v. Scheerer, 41 A.D.3d 152, 155 (1st Dep't

2007).   Pewzner cannot overcome the hurdle that there is no authority, statutory or in the

common law, that would grant this Court power to remove a co-managing member of a Limited

Liability Company ("LLC").   It is not surprising, therefore, that Pewzner makes a last gasp effort

to argue that Plaintiff breached his fiduciary duties to the LLCs, and therefore removal is

warranted.   Even if Pewzner could make such a showing, which she cannot, the remedy would

be to bring a breach of fiduciary duty claim against Plaintiff for damages—there is no equitable

remedy available to Pewzner here, even if she could prove the elements of such breach.   See

Access Point Med., LLC v. Mandell, 106 A.D.3d 40, 43 (1st Dep't 2013).

        Nor could Pewzner succeed on claim for breach of fiduciary duty.   Pewzner claims that

Elberg's dual-role as co-manager of the defendant-entities and Plaintiff to this declaratory

judgment action inhibits the exercise of his fiduciary duties.   That claim ignores the fact that

Pewzner is the *only* interested party that disputes the validity of the agreements that Elberg

through this action seeks to enforce.   Pewzner also argues that Elberg breached his fiduciary

duties in the past and, if allowed to remain co-manager, will breach his duties once more.   That

claim is similarly without merit.   All of Elberg's decisions were in furtherance of the Hotel

Projects that the LLCs were established to carry out and no decision of his resulted in damages to

those entities.   Accordingly, Pewzner is unable to articulate a single imminent threat that Elberg

poses to the interests of the LLCs in his capacity as co-manager.

Alone, Pewzner's failure to establish either an "emergency" or any likelihood of success

on the merits would be fatal to her "emergency" application.  Together, these failures reveal a

sham application submitted in the *wrong action* by an individual whose only concern is the

furtherance of her financial interests as a beneficiary of an LLC member's estate.  We

respectfully urge the Court to deny Pewzner's motion made by emergency application in its

entirety.

## STATEMENT OF FACTS

Ruben Elberg, and his father Jacob Elberg, set out to develop a Crowne Plaza hotel and a

Hotel Indigo in Long Island City (hereinafter referred to as the "Hotel Projects").   Ruben and

Jacob were the sole members, 60 and 40 percent, respectively, of two limited liability companies

that held title (subject to mortgages) to the property to be developed, RREM and RORE.  Exhibit

2 at ¶3(b) (RREM Operating Agmt.); Exhibit 3 at 3 (RORE Operating Agmt.).

Under the RREM Operating Agreement, management was vested in Jacob, as the "sole

Manager of the Company."  Exhibit 2 at ¶4 (RREM Operating Agmt.).  Under the RORE

Operating Agreement, management is vested in its members, Jacob and Ruben, and "[a]ll

decisions relating to the management and business of the Company shall be made by a *majority*

of the Members, except as otherwise provided in this Agreement or in the Law."  Exhibit 3 at 3¶

4 (RORE Operating Agmt.) (emphasis added).   Both operating agreements permit members to

admit additional members to the LLC, "as may be mutually agreed," and "subject to the

discretion of the initial Member."  Exhibit 2 at ¶ 3(a) (RREM Operating Agmt.); Exhibit 3 at ¶

3(a) (RORE Operating Agmnt.).

 Jacob and Ruben decided to fund the Hotel Projects with foreign investments through the

Immigrant Investor Program ("EB-5 Program") administered by the United States Citizenship

and Immigration Services ("USCIS").[2]  The father and son established Royal CP Hotel Holdings

LP (hereinafter referred to as "Royal CP") for the development of the Crowne Plaza hotel, and

Royal HI Hotel Holdings LP (hereinafter referred to as "Royal HI") for the development of Hotel

Indigo.  RORE is the general partner of Royal CP and Royal LIC Real Estate (a third LLC of

which Elberg is the only surviving member) is the general partner of Royal HI.  Consequently,

the managing member of the LLCs is the manager of the general partners of each partnership.

The partnerships were initially governed by two Limited Partnership Agreements dated

August 2012 (hereinafter referred to as the "August Agreements").  See Exhibit 4 (Royal CP

Limited Partnership Agmnt. dated August 10, 2012); Exhibit 5 (Royal HI Limited Partnership

Agmnt. dated August 3, 2012).  Under the August Agreements Crabapple Corporation

(hereinafter referred to as "Crabapple") was required to raise $7,500,000 through EB-5 investors.

Crabapple did not meet the fundraising amount and the agreements expired by their own specific

terms.  Thereafter, the parties entered into new limited partnership agreements dated November

30, 2012 (hereinafter referred to as the "November Agreements").  See NYSCEF Doc. #3 (Royal

CP Limited Partnership Agmnt. dated November 30, 2012); NYSCEF Doc. # 4 (Royal HI

Limited Partnership Agmnt. dated November 30, 2012) .

The November Agreements extended Crabapple's time to raise funds, reduced the

amount to be raised, and structured each partnership with four classes of limited partners in order

of priority: Class A, approved EB-5 investors; Class B, Crabapple; Class C, the real estate LLC

owning the property to be developed (i.e., either RORE or RREM); and Class D, Ruben Elberg. [3]

---

[2] By investing $500,000, a foreign investor would become eligible to apply for U.S. residency
through the EB-5 Program.

[3] NYSCEF Doc. # 3 at 14 (Royal CP Partnership Agmnt., Subsection 3.1.1); NYSCEF Doc. #4 at
14 (Royal HI Partnership Agmnt., Subsection 3.1.1)  "Profits for each fiscal year shall be
allocated among the Partners in the following order and priority: (a) First, to the Partners up to

As a Class D Limited Partner, Ruben Elberg is entitled to 40% net proceeds from a "Capital

Event" or dissolution consistent with Article 3.4 of the November Agreements.  NYSCEF Doc.

#3 at 18  18 (Royal CP Partnership Agmt., Subsection 3.4.2(f)); NYSCEF Doc. #4 at 18 (Royal

HI Partnership Agmt., Subsection 3.4.2(f)).

Jacob contracted with two additional companies to raise capital for the Hotel Projects, the

NYC Metro Regional Center, LLC (hereinafter referred to as "NYCMRC") and Westlead, Inc.

(hereinafter referred to as "Westlead").  See NYSCEF Doc. #2 at 6 ¶ 29 (Complaint).  Through

those relationships, the Hotel Projects raised upwards of $40,000,000.  Soon after breaking

ground on the Hotel Projects, in December 2013, Jacob passed away.  Ruben and Pewzner were

named co-executors and beneficiaries of Jacob's estate.  See id. at 6 ¶ 30 (Complaint).

Upon her father's passing, Pewzner immediately fired all the employees of the Hotel

Projects.  She ordered that all work on the projects be halted, and then told International Hotels

Group (hereinafter referred to as "IHG"), the licensing agent for both Crowne Plaza and the

Hotel Indigo, that the progress of the Hotel Projects had slowed.  See Exhibit 6 (Pewzner Email

re: Cease and Desist, dated February 5, 2014); Exhibit 7 (Pewzner Notice of Discontinuance to

IHG, dated May 20, 2014).  In response, IHG requested that Ruben surrender the LLCs'

licensing agreement, or risk liquidated damages.  See NYSCEF Doc. #46 (IHG Notice of Default

and Termination).  IHG had never made this threat before, and in the end it never acted on it.

Pewzner now claims that Ruben must be removed as co-manager because of the "emergency"

---

and in proportion to the amount of Losses previously allocated to each of the Partners until the
aggregate Profits allocated to each of the Partners are equal to the amount of Losses previously
allocated to each of the Partners; (b) Second, to the Class A Limited Partners, pro rata in
accordance with their Adjusted Capital Contributions, up to the amount of the Class A Preferred
Return; (c) Third, to the Class B Limited Partner, up to the Class B Preferred Return; (d) Fourth,
to the Class C Limited Partner, Class D Limited Partner and the General Partner."

posed by the remote possibility that IHG decides to act on the liquidated damages provision after

years of inaction.

Pewzner also brought proceedings in surrogate's court to prevent Elberg from

transferring title from the LLCs to the partnerships. Her application for a temporary restraining

order was granted and additional litigation ensued. See Exhibit 1 (King's County Surrogate's

Court Order to Show Cause, dated August 28, 2014). NYCMRC and Westlead purchased a

mortgage on one of the properties to be developed and then, through alter egos, commenced the

Foreclosure Action. See Exhibit 12 (Complaint in the matter of New Fund, LP &Westlead

Bridge, LLC v. Royal One Real Estate, LLC et al., No. 709631/2014 (N.Y. Sup. Ct. Queens Cty.

2014). Shortly thereafter, Crabapple and their EB-5 investors filed suit against Elberg, the

LLCs, and the limited partnerships claiming breach of contract and breach of fiduciary duty

under the terms of the November Agreements. See Crabapple Corp. v. Royal One Real Estate, et

al., No. 650492/2015, (N.Y. Sup. Ct. 2015). Pewzner, under the guise of managerial authority,

directed attorneys to appear on behalf of the entities in both actions.

The investor that brought the Foreclosure Action negotiated a stipulation of adjournment

with Pewzner. See Mem. in Support of Application for Hearing at 6. Elberg was excluded from

those discussions. However this is irrelevant, the properties subject to the Foreclosure Action

were never foreclosed upon. See New Fund, LP &Westlead Bridge, LLC v. Royal One Real

Estate, LLC et al., No. 709631/2014 (N.Y. Sup. Ct. Queens Cty. 2014).

Crabapple proposed to resolve the Crabapple Action (Index No. 650492/2015) through a

merger and sale of the Hotel Projects to a real estate investment fund (hereinafter referred to as

the "buyout/merger"). The terms of the buyout/merger allowed the LLCs and limited

partnerships to abandon their responsibilities to the Hotel Projects and to the EB-5 investors.

See Exhibit 8 at 3-4 (Letter of Intent).  The buyout/merger awarded the LLCs and Crabapple

amounts exceeding their capital investments to be paid before the prioritized Class A limited

partners (the EB-5 investors) were paid.  Id.  Elberg opposed the liquidation of the Hotel

Projects.  Pewzner moved on behalf of the defendant-entities to expel Elberg as manager of the

LLCs and to substitute Pewzner in his stead.  See Exhibit 9 (Order to Show Cause, dated January

7, 2016, Index No. 650492/2015, NYSCEF Doc. # 238).  Unhappy with the deadlock between

Pewzner and Elberg, plaintiff investors moved to compel the defendant-entities to agree to the

buyout settlement in the Crabapple Action.  This Court granted both motions.  See Exhibit 10

(Order of Discontinuance, dated September 30, 2016, Index No. 650492/2015, NYSCEF Doc. #

323).  Elberg appealed his expulsion to the First Department.  See NYSCEF Doc. # 38 at 3 (First

Department Decision and Order dated August 15, 2017).  During the pendency of that appeal,

Pewzner, as court-appointed manager, completed the merger/buyout and liquidated all of the

defendant-entities' assets.  See Mem. of Support of Application for Hearing at 8-9.[4]  Ultimately,

the First Department reversed, stating "the motion court acted prematurely when it granted the

motion to remove Elberg as co-manager without holding an evidentiary hearing."  NYSCEF

Doc. # 38 at 3.

    Elberg, individually and derivatively on behalf of Royal CP and Royal HI, instituted this

action seeking a judgment declaring that the limited partnerships are governed by the November

Agreements.  See NYSCEF Doc. # 2 (Complaint).  Rather than requesting that an evidentiary

hearing on Elberg's removal be held in the Crabapple Action, Crabapple Corp. v. Royal One

Real Estate, et al., No. 650492/2015 (N.Y. Sup. Ct. 2015), Pewzner filed an emergency order to

show cause requesting that an evidentiary hearing be held in this declaratory judgment action.

---

[4] Elberg has and continues to contest Pewzner's designation as co-manager of the LLCs.

See NYSCEF Doc. # 34 (Proposed Order to Show Cause).  The record is clear—Pewzner moved

by order to show cause for an evidentiary hearing on the removal of Elberg, *in the wrong action*.

In so doing, she failed to notice certain plaintiffs in the Crabapple Action.  Those plaintiffs,

although named as nominal defendants in the instant declaratory judgment action, never entered

an appearance in this action.

Additionally, Pewzner's demand for relief in the "emergency" order to show cause far

exceeds the scope of this declaratory judgment action.  In Pewzner's memorandum of law in

support of her "emergency" application for a hearing, she asks the Court to evaluate Elberg's

past conduct and determine whether Elberg poses a threat to the defendant-entities' interests in

the future.  See Mem. in Support of Application for Hearing.  This declaratory judgment action,

on the other hand, is much narrower in scope, it asks the Court to evaluate duly executed

partnership agreements.  See NYSCEF Doc. # 2 (Complaint).

## ARGUMENT

### I.

### PEWZNER'S "EMERGENCY" ORDER TO SHOW CAUSE WAS FILED IN THE WRONG ACTION

The First Department reversed this Court's removal of Elberg as co-manager of the

defendant-LLCs in the matter of Crabapple Corp., et al., v. Ruben Elberg, Royal One Real

Estate, LLC, et al., Index No. 650492/2015, stating that before Elberg was removed, the Court

should have at least held an evidentiary hearing on the issue.  See NYSCEF Doc. # 38 at 3 (First

Department Decision and Order dated August 15, 2017).  Pewzner then inexplicably filed this

emergency order to show cause *in the wrong action*.  This action is the declaratory judgment

action which seeks an order declaring the validity of certain partnership agreements—the

management of the LLCs is an entirely separate issue that has no bearing on the matters *sub

judice*.  See NYSCEF Doc. # 34 (Proposed Order to Show Cause).  Additionally, certain parties

9

to the Crabapple Action have not appeared in this declaratory judgment action—namely, Zhu

Qing, Feng Li, Mengsha Chen, Ruizhen Wang, Hong Ge, Qin Si, Zhe Fang, Yang Zhang, and

Xu Ning. <u>See</u> NYSCEF Doc. # 27 (Order Directing Alternative Service of Process of the

Summons and Complaint).[5]  Pewzner did not petition for, or receive, an order directing

alternative service of process of the "emergency" order to show cause.  As a result, those parties

were never notified about the removal hearing.  <u>See</u> NYSCEF Doc # 52 (Pewzner's Affirmation

of Service).  Those individuals are entitled to be heard.  On this basis alone, the Court should

deny Pewzner's application.

**II.**

**THERE IS NO "EMERGENCY"**

It is preposterous for Pewzner to label her request for Elberg's removal as an

"emergency."  After she completed the merger/buyout, all of the defendant-entities' assets were

liquidated, and according to her counsel, placed in escrow.  <u>See</u> Mem. in Support of Application

for Hearing at 8-9.  Apart from disbursing the corpus of the transaction according to the terms of

the controlling partnership agreement, there are few managerial actions, if any, remaining.  Of

whatever does remain, as a co-manager, neither Pewzner nor Elberg can act alone.  Therefore,

the only possible risk is the risk of a deadlock.  If that risk were to come to fruition, one manager

could sue the other for breach of fiduciary duty if they felt so compelled.  As the defendant-

entities now exist, without funds or any function whatsoever, there simply is no "emergency."

The insufficiency of Pewzner's application is evident on the face of her emergency

affidavit.  Nearly every event alleged took place years ago.  <u>See</u> Affidavit of Emergency at ¶¶ 6

---

[5]  The Court granted Elberg's motion for an order directing alternative service of process of the
summons and complaint in this action on Zhu Qing, Feng Li, Mengsha Chen, Ruizhen Wang,
Hong Ge, Qin Si, Zhe Fang, Yang Zhang, and Xu Ning.  <u>See</u> NYSCEF Doc. # 27 (Order
Directing Alternative Service of Process).

10

(citing an email from Elberg's counsel dated December 2, 2015); 8 (citing adjournment in

foreclosure action from December 2015); 9 (citing email from IHG dated April 17 , 2015); 10

(citing Elberg's refusal to approve buyout/merger that subsequently occurred); 11(admitting that

the buyout/merger has already occurred).  And Pewzner does not allege that any of the events

actually injured the defendant-entities.

      Pewzner also claims, without citing any authority, that in his dual role as plaintiff to this

action and co-manager of the LLCs, Elberg is inherently conflicted and unable to act in the best

interest of the LLCs.  See Mem. in Support of Application for Hearing at 5.  Pewzner does not

claim that Elberg has already obstructed the litigation against the LLCs, or identified how he

could do so.  Elberg's status as plaintiff does not on its own justify his removal as co-manager.

See e.g., Ficus Investments, Inc. v. Private Capital Management, LLC, 61 A.D. 311 (1st Dep't

2009) (preserving an action brought by a manager against the LLC that he managed).

Additionally, this argument ignores the nature of relief that Elberg seeks, a declaratory judgment

enforcing partnership agreements that *only* Pewzner disputes.  Elberg is thus in conflict with the

LLCs only to the extent that Pewzner exercises her control over those entities for her benefit.

### III.
### PEWZNER HAS FAILED TO MAKE A SHOWING THAT A PRELIMINARY INJUCTION OR TEMPORARY RESTRAINING ORDER IS WARRANTED

      Pewzner obfuscates what form of relief she actually seeks from the Court; perhaps the

most telling sign that the relief sought is patently improper.  What is clear, however, is that

Pewzner seeks injunctive relief, apparently based on a vague breach of fiduciary duty claim.  See

Mem. in Support of Application for Hearing at 8 (asking the court to "conduct a hearing,

determine the fitness of Ruben Elberg for any fiduciary role in the LLCs" and to designate

Pewzner as sole Manager of the LLCs); id. at 9 (stating that the "fiduciary duty claim is based,

not on breaches of a particular agreement, but of the breach of Elberg's statutory duties under LLC Law § 409"). There is perhaps no better example of a fact pattern where injunctive relief is entirely improper. Setting aside the fact that Pewzner has never sued Plaintiff for breach of fiduciary duty, in this declaratory action or otherwise, such a claim would be compensable in money damages, not equitable relief. See Access Point Med., LLC v. Mandell, 106 A.D.3d 40, 43 (1st Dep't 2013).

Pewzner's application amounts to a request for a temporary restraining order or preliminary injunction. A party seeking a temporary restraining order "must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor." See CPLR § 6301; 61 West 62 Owners Corp. v. CGM EMP LLC, 77 A.D.3d 330, 337 (1st Dep't 2010) (internal citations omitted). Pewzner's application for a so-called "emergency" hearing fails to satisfy any of the elements of injunctive relief. Her failure to do so warrants denial of the motion, as the grant of a temporary restraining order is "a drastic remedy to be sparingly used." Bisca v. Bisca, 108 Misc.2d 227 (N.Y. Sup. Ct. Nass. Cty. 1981); see also 61West 62 Owners Corp., 906 77 A.D.3d 330 at 335 ("[A] preliminary injunction is a provisional remedy. Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits.").

### A. The Court Should Deny Pewzner's Application Because She has Failed to Demonstrate Irreparable Harm

Pewzner's claim for injunctive relief fails at the outset because she has made no showing that she would suffer irreparable harm if the Court fails to hold an "emergency" hearing to remove Elberg as co-manager of the LLCs and to install Pewzner as the sole member of the LLCs. See Affidavit of Emergency 11-12 ("It is to this point that I direct my Petition for a

hearing so that the Court may determine whether the present conflict of interest and prior actions

of Ruben Elberg require his removal as a fiduciary for the LLCs, Partnerships, or their

successors."). Irreparable injury is defined as "that which cannot be repaired, restored, or

adequately compensated in money." Bisca, 108 Misc. at 231. In other words, it is black letter

law that an injury that is compensable by money damages does not constitute irreparable harm.

U.S. Re Companies, Inc. v. Scheerer, 41 A.D.3d 152, 155 (1st Dep't 2007) ("This quantifiable

remedy precludes a finding of irreparable harm."); see also Meissner v. Yun, 126 A.D.2d 565,

566 (1st Dep't 2015) (plaintiff failed to demonstrate irreparable harm "since he failed to show

that an award of money damages would not be fair compensation."); Zodkevitch v. Feibush, 49

A.D.3d 424, 425 (1st Dep't 2008) (finding no irreparable injury where "plaintiffs failed to

demonstrate that an award of monetary damages would not adequately compensate them").

Even if Pewzer could demonstrate that Plaintiff breached his fiduciary duties to the

LLCs, which she cannot, such breach would be compensable in money damages. See Access

Point Med., LLC, 106 A.D.3d at 43 (rejecting argument that a claim for return of attorneys' fees

was properly characterized as equitable claim for disgorgement). Pewzner's claim that Plaintiff

breached his fiduciary duties, moreover, is based on actions that he has allegedly already taken.

See Mem. in Support of Application for Hearing at 3 (alleging Elberg's "documented history of

waste, mismanagement, misfeasance, malfeasance and his irreconcilable conflicts of interest").

It is nonsense to suggest that equitable relief is warranted to compensate for a breach of fiduciary

duty by preventing some unstated future risk of a breach of fiduciary duty.

Finally, and perhaps most obviously, Pewzner has failed to demonstrate how the status

quo would cause any harm to the LLCs or Pewzner. First, Elberg is unable to unilaterally act on

behalf of the LLCs, as Pewzner is still a co-manager. Second, all of the complained of conduct

occurred years ago.  See supra, at II.  Given the absence of any past showing of injury,

Pewzner's claim that the defendant-entities are currently at risk because of Elberg is entirely

unsupported.

   **B.**  **Pewzner has Failed to Demonstrate a Likelihood of Success on the Merits**

   The Court should deny Pewzner's application for "emergency" relief because she has

failed to demonstrate a likelihood of success on the merits of her claim that Plaintiff should be

removed as co-manager of the LLCs, or on any underlying claim for breach of fiduciary duty.  In

fact, she has failed to demonstrate any legal authority whatsoever for this Court to take the

extraordinary action of removing a co-member of an LLC, an action which the LLC Operating

Agreements and New York Limited Liability Company Law do not address.

   **1.**  **There is No Legal Authority for the Court to Remove Plaintiff as a Co-Manager of the LLCs**

   Pewzner concedes that the LLC operating agreements do not provide for the expulsion of

a managing member.  See Exhibit 2 (RREM Operating Agmnt.); Exhibit 3 (RORE Operating

Agmnt.).   Where LLC operating agreements are silent, the Limited Liability Company Law

(hereinafter referred to as the "LLC Law") controls.  See Ross v. Nelson, 54 A.D.3d 258, 258-59

(1st Dep't 2008).  Section 414 of the LLC Law does not permit court removal of a managing

member.  The section permits removal only upon a "vote of majority in interest of the members

entitled to vote thereon."  N.Y. Limit. Liab. Co. § 414.  See also Man Choi Chiu v. Chiu, 71

A.D.3d 646, 647 (2d Dep't 2010) (holding that despite references to expulsion of members in

sections of the LLC Law, "there is no statutory provision authorizing the courts to impose such a

remedy."); Waxman Real Estate LLC v. Sacks, 32 Misc. 3 1241(A), *4-5 (N.Y. Sup. Ct. N.Y.

Cty. 2011); Janklowicz v. Landa, 41 Misc. 3d 1220 (A), *6 (N.Y. Sup. Ct. Kings Cty. 2013)

(absent a vote of majority interests, "this court is unaware of a legal basis for directing, ordering or adjudging that an LLC member be removed from a management position.").

Tellingly, Pewzner fails to address this threshold dispositive issue. Instead, she relies on Business Corporation Law § 720 (a)(1)(A), which permits an officer or director of a corporation to institute an action against another officer or director for breach of fiduciary duty, but limits the relief available in such an action to an accounting of the financial damages flowing from the alleged breach. See N.Y. Bus. Corp. § 720 (a)(1)(A) ("An action may be brought against one or more directors or officers of a corporation to procure a judgment . . . to compel the defendant to account for his official conduct . . . ."). Not only does the Business Corporation Law not apply to the LLCs at issue here, it does not provide for the relief that Pewzner requests.

Finally, it is unlikely that the common law provides the court with the authority to remove Elberg as co-manager of the defendant-entities. The Second Department has explicitly held that absent a provision in the operating agreement setting forth a mechanism for the expulsion of members, the court has *no* authority to remove a managing member. Man Choi Chiu, 71 A.D.3d at 647. The First Department, on the other hand, has dealt with court removal of a manager of an LLC on very few occasions. In Lehey v. Goldburt, the First Department reviewed the trial court's provisional removal of a defendant-manager of an LLC and its appointment of the plaintiff in that position. 90 A.D.3d 410 (1st Dep't 2011). In reviewing this "extraordinary" provisional remedy, the First Department balanced the harm of removing the defendant against the court's interest in maintaining the status quo. See id. at 411. Even in Lehey, where the plaintiff was able to articulate some risk to the LLCs based on the defendant's conduct, the court was unconvinced that the removal was appropriate. See id. Pewzner has not and cannot make such a showing.

15

### 2. Pewzner has Failed to Demonstrate a Likelihood of Success on the Merits of a Breach of Fiduciary Duty Claim

Pewzner claims that this provisional remedy is appropriate because Elberg has breached his fiduciary duties to the LLCs in the past. Mem. in Support of Application for Hearing at 4-5. The alleged misconduct is Elberg's refusal to surrender lucrative license agreements, his refusal to enter into a stipulation of adjournment in the Foreclosure Action, and his refusal to enter into a stipulation of settlement in the Crabapple Action. See id. To establish a breach of fiduciary duty, the claimant must show (1) the existence of a fiduciary duty, (2) breach of that fiduciary duty, and (3) damages proximately caused by the breach of fiduciary duty. Burry v. Madison Park Owner LLC, 84 A.D.3d 699, 699-700 (1st Dep't 2011).

All of Elberg's challenged conduct was in furtherance of the Hotel Projects that the LLCs were created to carry out. Even if Pewzner was able to somehow establish that Elberg's decisions were not in furtherance of the Hotel Projects, she cannot point to damages proximately caused by any alleged breach of duty. The business judgment rule "prohibits judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." See Matter of Levandusky v. One Fifth Ave. Apt. Corp., 75 N.Y.2d 530, 537, 537-38 (1990). At the time that Pewzner pressured Elberg to surrender the IHG License Agreement, he was actively seeking out investors for the Hotel Projects to supplement Crabapple's shortfall in equity under the Partnership Agreements. Elberg's refusal was based on his legitimate judgment that seeing the Hotel Projects through would deliver a greater benefit to the defendant-entities than would a surrender of the franchise agreement. Pewzner refuses to acknowledge that as manager of the general partners, Elberg owed fiduciary duties not only to the LLCs, but also to the other classes of limited partners. See Pokoik v. Pokoik, 115 A.D.3d 428, 430 (1st Dep't 2014) (holding that "in choosing to burden

only [one LLC member] and not all the LLCs members, including himself" the fiduciary did not "show 'undivided and undiluted loyalty.'") (citing <u>Birnbaum v. Birnbaum</u>, 73 N.Y.2d. 461, 466 (1989)). Elberg had an obligation to the other limited partners, the EB-5 investors in particular, to see the projects through.[6]

As proposed (and as later effectuated), the buyout/merger benefited certain classes of limited partners to the detriment of others. <u>See</u> Exhibit 8 (Letter of Intent). The agreement provided for payments of $27,000,000 to the LLCs and $800,000 to Crabapple upon closing. <u>See</u> <u>id.</u> at 3-4. Both payments exceeded the parties' capital investments at the expense of the EB-5 investors, and ignored the EB-5 investors' priority to receive payments. Elberg offered to negotiate the problematic terms, but that offer fell on deaf ears. Meanwhile, rejecting the buyout/merger would have ultimately allowed the EB-5 investors and Crabapple to financially extricate themselves from the Hotel Projects through the eventual repayment of their investments. For the LLCs and Elberg, rejection of the agreement would have resulted in equity equal to the sum of their capital contribution and its increase in value. But Pewzner was against the Hotel Projects, regardless of their appreciating value. Elberg's decision made in good faith and in furtherance of the LLCs' corporate purpose, is protected by the business judgment rule. <u>See</u> <u>R&L Realty Assoc. v. 205 West 103 Owners Corp.</u>, 98 A.D.3d 421, 422 (1st Dep't 2011).

Even if those three decisions were not protected by the business judgment rule, Pewzner could not establish breach of fiduciary duty because not one of the decisions injured the defendant-entities. Pewzner does not even attempt to articulate any actual injury caused by Elberg's decisions. Such a general and speculative risk to the LLCs cannot form the basis for

---

[6] Under the terms of the USCIS EB-5 Program, the EB-5 investors were required to invest in projects that created a certain number of jobs. <u>See</u> Exhibit 11 at 3, 9, 15, 22, 29, 36. (USCIS Requests for Evidence).

relief. See Kassover v. Prism Venture Partners, LLC, 53 A.D.3d 444, 450 (1st Dep't 2008)

("mere speculation cannot support a cause of action for corporate waste or breach of fiduciary

duty"). Given that Pewzner can establish neither past breaches of fiduciary duty, nor a probable

future breach of fiduciary duty, and given the fact that the ability of the Court to remove Elberg

is tenuous at best, Pewzner has not shown a likelihood of success on the merits of her claims.[7]

## CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that the Court deny

Tamara Pewzner's motion made by emergency application in its entirety.

Dated:     February 20, 2018
           New York, New York

                                      Respectfully submitted,
                                      By:     /s/James M. Catterson
                                              James M. Catterson
                                              ARNOLD & PORTER KAYE SCHOLER
                                              250 West 55th Street
                                              New York, New York 10019–9710
                                              (212) 836-8000

                                              *Attorneys for Plaintiff*

_____

[7] To the extent that purpose of preliminary injunctive relief is "to maintain the status quo,"
Putter v. City of New York, 27 A.D.3d 250, 253 (1st Dep't 2006); accord Monarch
Condominium v. Raskin, 37 A.D.3d 288, 289 (1st Dep't 2007), Pewzner has failed to make such
a showing. Any prior complained of actions occurred over years ago, and in no way impact the
status quo as it exists today. It is unclear what kinds of actions Elberg could take to obstruct the
defendant-entities' defense in this straightforward declaratory judgment contract action. In any
event, preliminary injunctive relief is not designed to avoid litigation. Putter, 27 A.D.3d at 253.

18