UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In Re:                                                            :
                                                                  :  Chapter 11
BRACHA CAB CORP., et al.                                          :
                                                                  :  Case No.
                                                                  :  1-17-46613 (NHL)
                                                                  :
                                                                  :  **RESPONSE TO**
                                                                  :  **NOTICE OF MOTION**
                                                                  :
                                                                  :  Jointly Administered
                                                                  :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    Brian Thomas McCarthy, an attorney duly admitted to practice law in this Court, hereby declares the following to be true and correct under the penalties of perjury:

    1.  I am an Associate with the law firm of Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, attorneys for Creditor, Co-Owner of Jarub Trans. Corp. ("Jarub") and nominated Co-Executor of the Estate of Jacob Elberg, Ruben Elberg, and, as such, I am fully familiar with the facts and circumstances set forth herein.

    2.  I make this Declaration in Response to the Notice of Motion for Relief from Stay or, in the Alternative Dismiss or Convert the Debtor's Case or Appoint a Chapter 11 Trustee.

    3.  This Response is also filed to alert this Court that the Debtor has failed to identify Ruben Elberg as a person interested in this action, despite knowing that Ruben Elberg is 50% Co-Owner of Debtor, Jarub, is the sole owner of non-parties Merill Transit Inc. ("Merill") and Spindle Cab Corp. ("Spindle"), and currently has a judgment against him, in excess of $4.8 million dollars, arising from an action brought by Capital One Taxi Medallion Finance for personal guarantees signed by Ruben Elberg for debts owed to Capital One by these three corporations (i.e., Debtor

1

Jarub and non-parties Merill and Spindle). See Capital One Taxi Medallion Finance v. JEB Management Corp. and Ruben Elberg, Index No. 60814/2015 (Sup. Ct. N.Y. Cnty. 2015).

4. With regard to Ruben's ownership interests in Debtor, Jarub and non-parties, Spindle and Merill, attached herewith are true and accurate records from the New York City Taxi and Limousine Commission ("TLC") that unequivocally establish that Ruben Elberg is the sole registered owner of Merill and Spindle and that he is the 50% owner of Debtor, Jarub. See **Exhibit "1"**, TLC Records for Merill, Spindle and Debtor, Jarub.

5. In addition to the ownership records maintained by TLC, attached herewith are true and accurate copies of Stock Certificates for each of these three corporations, which confirm Ruben Elberg is 50% owner of Jarub and 100% owner of Spindle and Merill. See **Exhibit "2"**, Stock Certificates for Merill, Spindle and Debtor, Jarub.

6. Given Ruben Elberg's ownership interests, it is respectfully submitted that as a matter of fundamental Due Process, Ruben Elberg was required to be provided with notice and an opportunity to be heard, from the commencement of this action.

7. That did not occur in this action.

8. In this regard, the fundamental requisite of Due Process of Law is the opportunity to be heard. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), quoting, Grannis v. Ordean, 234 U.S. 385, 394 (1914).

9. The means to that end is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." Mullane, 339 U.S. at 314.

10. Ruben Elberg did not receive reasonably calculated notice at the commencement of this Action and Ruben Elberg's counsel only became aware of this action after receiving a copy

of the transcript of the Meeting of Creditors. <u>See</u> Docket Entry No. 25, at Exhibit A (attached herewith as **Exhibit "3"**).

11.     Because no notice was provided, Ruben Elberg could not and did not attend the Meeting of Creditors ("Creditors' Meeting").

12.     The attendance of Ruben Elberg would have provided him with an opportunity to question the Debtor and ensure the information provided to the Trustee and the Court during this meeting and in the prior submissions of the Debtor was accurate and true.

13.     For example, reference was made during the Creditors' Meeting that certain debts would be repaid from funds held by the Estate of Jacob Elberg. <u>See</u> **Exhibit "3"**, at p. 30 ("But there is a large amount of money sitting in an escrow account from the sale of the buildings that her husband owned in Queens. And that money is tied up in the litigation . . .").

14.     However, at that time, the Estate of Jacob Elberg was not named as an interested party in this Action, despite the fact that the Debtor was indicating her intention to pay some portion of the debts owed with funds obtained from the Estate of Jacob Elberg. <u>Id.</u>

15.     This sale of the interest of certain LLCs and LPs, which had ownership interests in a two hotel development project in Long Island City, Queens, New York, provides the overwhelming source of assets for the Estate of Jacob Elberg that the Debtor is asserting could be utilized to repay Capital One.

16. However, the Estate of Jacob Elberg is only entitled to 60% of the net proceeds[1] of this $27 million dollar sale, with Ruben Elberg, individually, receiving 40% of the net proceeds.[2]

17. While reference was made during the Creditors' Meeting to the ongoing disputes and litigations pending in the Surrogate's Court, Kings County and Supreme Court, New York County,[3] no reference was made to the fact that the Appellate Division of the Supreme Court, Appellate Division, First Judicial Department, held that Ruben Elberg was a 40% owner of the LLCs that received loans from the Taxi Medallion corporations (i.e., the Debtors, Spindle and Merill). See Crabapple Corp. v. Elberg, 153 A.D.3d 434 (1st Dep't 2017) (holding, "[t]he record demonstrates that he was a 40% minority member [of the LLCs], . . .").

18. Furthermore, this First Department decision also reversed an Order that provided the sole basis for the sale of the hotel projects by Tamara Pewzner ("Pewzner"), as Co-Executor of the Estate of Jacob Elberg. See Crabapple Corp. v. Elberg, 153 A.D.3d 434, 435 (1st Dep't 2017) ("Order, Supreme Court, New York County (Charles E. Ramos, J.S.C.), entered January 21, 2016, which, to the extent appealed from as limited by the briefs, granted defendants-respondents' (the LLCs) motion to remove defendant Ruben Elberg (Elberg) as their co-manager and fiduciary,

---

[1] It is respectfully submitted that one of the largest expenses to be paid from the gross proceeds of this is the repayment of $11,800,000.00, which was obtained from the corporations that owned thirty-five (35) taxi medallions, thirty (30) of which were owned by corporations that were owned, in whole or in part, by Jacob Elberg, and five of which that are owned by corporations that are owned, in whole or in part, Ruben Elberg. Accordingly, there is approximately $9,800,000.00 that should be repaid to the corporations that are debtors in this action, with the remaining approximately $2,000,000.00 repaid to the corporations that are owned by Ruben Elberg., for which he signed personal guarantees. See **Exhibit "4"**, Deposition of Ruben Elberg Transcript, at p. 114, 118 ("the yellow cabs [i.e., the Debtors, Merill and Spindle] that took the loans to RORE, capital contributions or loans to RORE, RORE and RREM are the sole owners of everything." "moneys were borrowed from taxi corporations. It was put in the capital contributions into these companies [i.e., the LLCs (RORE and RREM0], and it has to be paid back to these taxi corporations.").

[2] Counsel for Capital One Equipment Finance Corp. is aware of this 40% interest, in the LLCs and Ruben Elberg's interest as a Class D shareholder in the two Limited Partnerships that were sold, and had an opportunity to depose Ruben Elberg on this very topic during a June 22, 2017 deposition of Ruben Elberg as a Judgment Debtor of Capital One Equipment Finance Corp. See **Exhibit "4"**, Deposition of Ruben Elberg Transcript, at p. 112-114 (questioning Ruben Elberg on his 40% interest in the LLCs and LPs that sold their interest in the hotel project pursuant to the Order of Justice Ramos, which was subsequently reversed by the Supreme Court, Appellate Division, First Department).

[3] See **Exhibit "3"**, at p. 24-25, 30-32.

unanimously reversed, without costs, the motion denied, and the matter remanded to Supreme Court for further proceedings in accordance with this decision.").

19. This was not disclosed at the Creditors' Meeting, concealing the impact the potential reversal of sale would have on the Estate of Jacob Elberg and its ability to contribute any funds to pay the debts currently owned by the Debtors in this action.

20. The Supreme Court, Appellate Division, First Department also recognized that the sole basis for Pewzner to claim any ability to act on behalf of the LLCs was the authority granted by this Court to the fiduciaries of the Estate of Jacob Elberg. Id. ("Thus, Jacob's controlling interest in the LLCs passed to his estate upon his death, and Elberg and Pewzner, the co-executors of the estate, had the authority to act as co-managers of the LLCs").

21. Despite this fact, the Estate of Jacob Elberg was not noticed when this action was commenced.

22. Following the First Department decision, the action was remanded for an evidentiary hearing before Justice Ramos. Id.

23. This hearing commenced on February 20, 2018 and will continue on May 9-10, 2018.

24. It cannot be disputed that given their involvement in the underlying litigation, both the Debtor and counsel for Capital One Equipment Finance Corp. proceeded in this Action with full knowledge that Ruben Elberg had a 40% interest in the LLCs and an ownership interests in the Class C and Class D of the Limited Partnerships.

25. These corporate entities (i.e., the LPs and LLCs) whose interests in the Long Island City, Queens, New York hotel projects were sold, pursuant to authority purportedly obtained from

the now reversed Order of Justice Ramos, which the Debtor has alleged will provide the source of funds to repay, in part, the creditors in this action.

26. However, both the Debtor and Capital One proceeded in this action without notice to Ruben Elberg and without him appearing in this Action, despite knowing of his 40% interest in the funds currently held by the Estate of Jacob Elberg, an interest that is in excess of $11.8 million.

27. These are critical and material facts as these funds (i.e., the funds that are rightfully owned by Ruben Elberg), which are not owned by the Estate of Jacob Elberg, cannot be utilized to pay creditors of the Estate nor utilized to pay the creditors of the Debtor in this action, despite the claims of the Esma Elberg and Pewzner.

28. Furthermore, Ruben Elberg is a creditor in this action as debts owned by Debtor, Jarub, and non-parties, Merill and Spindle, to Capital One Equipment Finance Corp. were personally guaranteed by Ruben Elberg.

29. This status was only asserted by the Notice of Appearance filed by Ruben Elberg's counsel, as he was not named as creditor by the Debtor.

30. This is material to this action as Capital One eventually obtained a judgment against Ruben Elberg personally for an amount in excess of $4,804,628.68. See Capital One Taxi Medallion Finance v. JEB Management Corp. and Ruben Elberg, Index No. 608014/2015 (Sup. Ct. Suffolk Cnty. 2015).

31. It was pursuant to this judgment that Capital One's counsel, the same counsel in this action, deposed Ruben Elberg. See **Exhibit "4"**.

32. Accordingly, Ruben Elberg is a creditor of Debtor, Jarub, and non-parties, Merill and Spindle, as Capital One brought an action solely against Ruben Elberg's personal guarantee for loans that were taken from Capital One by these corporations.

6

33. Ruben Elberg respectfully submits this response to provide this Court and the Trustee with relevant and material information, which will significantly impact this Action.

34. Furthermore, Ruben Elberg respectfully requests that he be recognized as a Creditor in this Action and he further be recognized as a 50% Owner of Debtor Jarub, and the Court be made aware that he was not consulted regarding the decision to have Jarub file bankruptcy, nor did he consent to any such filing.

35. Accordingly, we respectfully request this Court exercise its considerable equitable powers and dismiss this bankruptcy proceeding as the Debtors failed to obtain consent from Ruben Elberg prior to filing, the Debtors failed to serve Ruben Elberg with process after commencing this action and the Debtors attempted to conceal relevant and material facts from this Court, all of which require this Action be immediately terminated.

Dated: March 7, 2018

    Yours etc.,

    ABRAMS, FENSTERMAN, FENSTERMAN,
    EISMAN, FORMATO, FERRARA, WOLF &
    CARONE, LLP
    By:____s/Brian Thomas McCarthy_____

    Brian Thomas McCarthy (BM-4808)
    630 Third Avenue, Fifth Floor
    New York, New York 10017
    (212) 279-9200

    bmccarthy@abramslaw.com
    *Attorneys for Ruben Elberg*