UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:

Bracha Cab Corp. et. al.,                                              Chapter 11

        Debtors.                                                              Case No. 17-46613-nhl
                                                         Jointly Administered
-----------------------------------------------------x

## DEBTORS REPLY TO OPPOSITION TO ENTRY OF AN ORDER
## FOR AUTHORIZING USE OF CASH COLLATERAL

Bracha Cab Corp. et. al. ("Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 case, as its response to the opposition of Capital One Equipment Finance Corp.("Capital") to the Debtors's motion for authorization to use Capital's cash collateral, respectfully represents:

1. On December 8, 2017, Bracha Cab Corp., Dovber Cab Corp., Dabri Trans Corp., Merab Cab Corp., Fit Taxi Corp., Tamar Cab Corp., and NY Genesis Taxi Corp. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On December 11, 2017, Jarub Trans Corp., Somyash Taxi Corp., NY Canteen Taxi Corp., Lechaim Cab Corp., Tamar Cab Corp., NY Genesis Taxi Corp., NY Tint Taxi Corp., NY Stance Taxi Corp., NY Energy Taxi Corp., Jackhel Cab Corp. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. On January 19, 2018, this Court entered an order procedurally consolidating the cases filed by the Debtors and directing that they be jointly administered by the Court.

3. Since the Filing Date, the Debtors have deposited all the Net Income that they received into the Debtor in Possession bank account. The Debtors filed monthly operating reports for each month since they filed the petitions and will continue to file reports each month.

4. Capital opposes the Debtors' use of its cash collateral, alleging that the Debtors do not operate real businesses, but instead have only passive income, thereby making business

expenditures unnecessary. Capital is wrong. For years Capital loaned money to the Debtors and extended the Debtors' notes. Capital would not have done that if it believed that the Debtors did not operate real businesses that generate money. Capital's refusal to extend the notes after the death of Jacob Elberg is one of the events that caused the Debtors to end up in this Court.

4. The Debtors operate real businesses at the property owned by Esma Elberg. Although Mrs. Elberg does live in the property, one floor of the property is dedicated for the offices of the Debtors. That space has computers and other furniture and equipment used by the Debtors in their operations. Since their inception, the Debtors have always maintained offices for the operation of their businesses. Not only is it necessary for the Debtors to continue to maintain offices, the presence of the office in Mrs. Elberg's home has increased expenses for utilities making it appropriate for the Debtors to bear some of those costs. Mrs. Elberg is present in the offices every day and performs management duties for the Debtors. The Debtors request that they be authorized to pay her a salary in an amount that the Court deems appropriate.

5. Brenda K. Whitacre ("Whitacre") acts as bookkeeper for the Debtors. Whitacre has worked for the Debtors and related companies since 2012. Annexed hereto as Exhibit A is her resume, which shows that she has extensive skills in bookkeeping and office management. Her services are essential to the Debtors and since the filing, they have included preparation of the schedules, preparation of the operating reports, managing the bank accounts, setting up and maintaining QuickBooks online, and working with the Debtors' accountant. Without Whitacre, the Debtors would need more accounting services which would come at a higher expense. Currently, she is being paid by Esma Management because the Debtors are not using any of the money generated by the 35 medallions that they own. Almost all of the work that she does is on behalf of the Debtors, with a very small part of her time assisting Mrs. Elberg on personal matters. The Debtors will not pay for those services. Because Whitacre is performing valuable

and necessary services for the Debtors, the Debtor submits that it is more transparent and correct to pay Whitacre directly by the Debtors. She will not be compensated for any work done for any other person or entity. Alternatively, the Debtor could pay Esma Management a management fee in a reasonable amount, with the money earmarked for Whitacre. The use of the money would be documented on operating reports. Contrary to the statements of Capital One, the Debtors operate real businesses that generate $500,000 a year and need Whitacre. The amount proposed to pay Whitacre is modest and necessary and this Court should authorize payment of that expense from the cash collateral.

6. The Debtor proposes to pay all of its excess income to Capital. With the proposed up front payment and the proposed monthly payments, Capital would receive 5.1% interest during 2018 on its secured claim of $7 million. If this Court reduces or does not permit the Debtors to pay a salary to Mrs. Elberg, that percentage will increase. The Debtors submit that such payments will provide Capital with adequate protection of its secured claim and will insure that Capital's position will not deteriorate during 2018. Capital alleges that the value of its collateral is declining, but gives no evidence to support that belief. The Debtors believe that the opposite is true. Within the last week Crain's New York and the New York Post reported that there is a bill pending in the New York City Council that will require Uber and Lyft meet environmental standards aimed at reducing congestion, pay significant fees to the City per car, limit the amount of cars per base, and other regulations that would bring Uber and Lyft cars in line with regulations on medallion cabs. A copy of the articles is annexed as Exhibit B. The effect of this legislation would be to make medallion cabs more competitive thereby increasing both the income that the Debtors would receive and the value of the Debtors' medallions. The Debtors and Capital would benefit by the proposed legislation. The taxi industry is strongly pushing for this legislation and believes that momentum is building in favor of it both in the City and in

Albany.

Wherefore, it is respectfully requested that this Court overrule Capital's opposition to the Debtors 's motion for authorization to use Capital's cash collateral, grant the Debtors's motion and grant such other relief as is just and proper.

Dated: Brooklyn, New York
March 8, 2018

ROSENBERG, MUSSO & WEINER, LLP
Attorneys for Debtors

By:___/s/_____
Bruce Weiner
26 Court Street, Suite 2211
Brooklyn, New York 11242
(718) 855-6840