TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY  10022
Tel: (212) 704-6000
Jonathan D. Forstot
David A. Pisciotta
Alissa K. Piccione

*Attorneys for Capital One Equipment Finance
Corp., f/k/a All Points Capital Corp., d/b/a
Capital One Taxi Medallion Finance*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                                                     :   Chapter 11
                                                                               :
BRACHA CAB CORP., *et al.*,                              :   Case No. 1-17-46613 (NHL)
                                                                               :
                                                                               :   *Jointly Administered*
                              Debtors.                              x
------------------------------------------------------------

### CAPITAL ONE EQUIPMENT FINANCE CORP.'S OBJECTION TO DEBTORS' MOTION TO INCREASE EXCLUSIVE PERIOD TO FILE PLAN

Capital One Equipment Finance Corp. f/k/a All Points Capital Corp., d/b/a Capital One Taxi Medallion Finance ("COTMF"), through its undersigned counsel, files this objection (the "Objection") to the *Debtors' Motion to Increase Exclusive Period to File Plan* [Doc. No. 51] (the "Exclusivity Motion").  In support of the Objection, COTMF states as follows:

### INTRODUCTION

The Debtors have failed to satisfy their burden of demonstrating cause to extend the exclusive periods during which only the Debtors may file chapter 11 plans.  The Debtors' cases have been pending for over four months, but the Debtors are no closer to proposing a viable chapter 11 exit strategy than they were as of the petition dates.  Indeed, rather than stating a basis for extending the Debtors' exclusivity periods, the Exclusivity Motion merely underscores that this

case is founded on mere speculative hopes and that the Debtors cannot accomplish an effective reorganization within a reasonable period of time. For these reasons, the Exclusivity Motion should be denied, and this case should be dismissed or the stay should be lifted with respect to COTMF's collateral.

The Debtors' cases are relatively simple. They have no employees, few assets, and no businesses to reorganize. They have only one secured creditor, COTMF. COTMF is a prepetition lender with perfected, first-priority security interests in substantially all the Debtors' assets, including all the Debtors' New York City taxicab medallions (collectively, the "Medallions").[1] The Debtors admit that COTMF holds substantial secured claims that greatly exceed the value of the Medallions. Therefore, the only issue, to the extent that these cases are not dismissed or converted, is how the Debtors will pay COTMF through a chapter 11 plan.

As this Court is aware, the Debtors have not filed a plan and have provided only an entirely speculative outline of a proposal. According to the Debtors, they intend to fund their plans with the proceeds from the sale of certain real estate owning entities (the "Real Estate Proceeds"). While the Debtors themselves have no direct claim to the Real Estate Proceeds, they intend to bring these funds into their estates by one of two ways—neither of which is feasible.

First, the Debtors have indicated that they would commence an adversary proceeding against the probate estate of Jacob Elberg (the "Elberg Estate") to recover on defaulted loan obligations, and the Elberg Estate would satisfy the resulting judgments with the Real Estate Proceeds.[2] This purported strategy is entirely illusory because the Elberg Estate already owes

---

[1] COTMF respectfully refers the Court to the *Motion of Capital One Equipment Finance Corp. to Vacate the Automatic Stay or, in the Alternative, Dismiss or Convert the Debtors' Cases or Appoint a Chapter 11 Trustee* and all supporting documents thereto [ECF. Nos. 23- 26] (the "Stay Relief Motion") for a complete factual background regarding COTMF's relationship with the Debtors and its secured claims.

[2] It also seems that the Debtors intend to assert claims against Ruben Elberg, Tamara Pewzner, and others.

COTMF the full amount of the claims against the Debtors because Jacob Elberg fully guaranteed COTMF's loans to the Debtors. Accordingly, if the Elberg Estate had the money to satisfy its obligations to COTMF, COTMF's claims could be fully satisfied without the time or expense of the Debtors suing the Elberg Estate. These funds, however, are the subject of protracted, acrimonious litigation that has been pending for years—with no indication that a resolution in favor of the Elberg Estate is likely or in prospect. Accordingly, this strategy is nothing more than a straw man concocted to create the illusion of a source of money to fund a plan.[3]

Second, upon the urging of this Court, the Debtors have said that they would try to reach a global resolution with the Elberg Estate and Ruben Elberg, who claims a 40% interest in the Real Estate Proceeds. This "strategy" is likewise nothing more than an unfounded hope. The relevant decision makers have spent years deadlocked in vitriolic litigation, and the Debtors' counsel recently admitted in Court that negotiations have stalled.

Because there is no reasonable likelihood that the Debtors will propose a plan to which COTMF will consent, their Exclusivity Motion should be denied.

## BACKGROUND

1. On December 8, 2017, Bracha Cab Corp., Dovber Cab Corp., Dabri Trans Corp., Merab Cab Corp., Fit Taxi Corp., Tamar Cab Corp., and NY Genesis Taxi Corp. each filed petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York.

2. On December 11, 2017, Jarub Trans Corp., Somyash Taxi Corp., NY Tint Taxi Corp., NY Stance Taxi Corp., NY Canteen Taxi Corp., NY Energy Taxi Corp., Jackhel Cab Corp.,

---

[3] Commencement of an adversary proceeding is also problematic because the Debtors' sole shareholder, Esma Elberg, would essentially being suing her daughter, Tamara Pewzner, as executor of the Elberg Estate. This would be a clear conflict of interest.

and Lechaim Cab Corp. commenced their cases by filing chapter 11 petitions with the Bankruptcy Court.

3. The Debtors are debtors in possession operating pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

4. The Bankruptcy Court entered an order on January 19, 2018 consolidating the Debtors' cases for procedural purposes only and directing that they be jointly administered by the Court.

5. On March 9, 2018, the parties appeared for a hearing on the Stay Relief Motion. The only substantive argument that the Debtors advanced in opposition to the Stay Relief Motion was that the Debtors hoped to fund a plan with proceeds of a yet-to-be-filed adversary proceeding against the Elberg Estate to collect on outstanding loan obligations.

6. Upon information and belief, however, the primary asset of the Elberg Estate is its purported share of the Real Estate Proceeds that were generated from the sale of interests in certain real estate owning entities. As recounted by counsel for Ruben Elberg at that hearing and in court filings, Ruben Elberg claims a 40% interest in the Real Estate Proceeds, which claim the Elberg Estate disputes. The disputes over the Real Estate Proceeds and related issues have been pending for years. *See* Memorandum of Law in Opposition to Defendant's Motion by Order to Show Cause For a Hearing on Removal of Co-Manager Ruben Elberg at pp. 4-9, *Elberg v. Crabapple Corp. et al.,* Index No. 653373/2016 (Sup. Ct. N.Y. Cnty.) [NYSCEF Doc #100]. Therefore, the Debtors' recovery, much less within a reasonable time frame, is fanciful.

7. As the Court noted, the Debtors, the Elberg Estate, and Ruben Elberg are all individually liable for unpaid debts to COTMF. The Court adjourned the Stay Relief Motion and directed those parties to meet and try to negotiate a resolution of their myriad issues.

8. On April 6, 2018, the Debtors filed the Exclusivity Motion. As set forth therein, the Debtors request a 90-day extension of the 120-day period during which the Debtors have the exclusive right to file their chapter 11 plans. The Debtors maintain that they will resolve their issues with the Elberg Estate and Ruben Elberg, and will submit with those parties a joint settlement proposal for COTMF's review. As of the date of this Objection, however, it seems that no progress has been made toward any global settlement.[4]

## OBJECTION

9. The Debtors' request to extend the exclusive period to file a chapter 11 plan should be denied. Pursuant to § 1121(d)(1), the court may extend the exclusive period "for cause". 11 U.S.C. § 1121(d)(1). The movant has the burden of demonstrating cause, "which requires [that] an affirmative showing . . . supported by evidence, be made by the party seeking the extension . . . ." *See In re R.G. Pharmacy, Inc.,* 374 B.R. 484, 487 (Bankr. D. Conn. 2007) (citation and internal quotation marks omitted)).

10. While the Debtors are correct that courts generally assess the *Adelphia* Factors set forth below when determining whether cause has been shown, an extension is warranted only "in unusual circumstances, involving very large or complex cases." *In re Sw. Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 452 (Bankr. W.D. Tex. 1987); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011) ("A court's decision to extend a debtor's exclusive periods is a serious matter; extensions are not granted routinely or cavalierly.").

---

[4] This does not surprise COTMF, as the litigation in Supreme and Surrogate's Court has remained pending for years without settlement and has been contentious.

5

11. Here, the *Adelphia* Factors weigh in favor of denying an extension of exclusivity, and there are no "unusual circumstances" justifying an extension. The Debtors are shell companies whose only function is to receive passive income from the leases of the Medallions. They have no employees and, excluding the "notes receivable" from the Elberg Estate—of which there is no evidence—the Medallions are their only assets. Likewise, COTMF is their only notable creditor. Therefore, these chapter 11 cases are a far cry from cases like *Adelphia*, which Judge Gerber described as "of unprecedented complexity and overwhelming size." *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).[5]

## Application of *Adelphia* Factors

### I. The size and complexity of the case

12. The Debtors have not shown that their cases are sufficiently large or complex to warrant an extension of exclusivity. In fact, they fail to even address this factor at all presumably because it weighs so heavily against them.

13. The only secured creditor in these cases is COTMF. Some Debtors scheduled a handful of unsecured claims, which COTMF believes are primarily held by personal injury claimants.[6] Further, the legitimacy of some of these scheduled claims is suspect. For example, counsel for COTMF received a letter from counsel for two alleged creditors stating that any claims against the Debtors had been settled or resolved years ago.[7]

---

[5] And, in any event, the Debtors will still have the ability to propose a plan concurrently even if their Exclusivity Motion is denied.

[6] These claims are scheduled mostly as contingent and unliquidated. COTMF suspects that these claims are covered by the Debtors' applicable insurance.

[7] A copy of the letter was attached as Exhibit B to the *Reply Memorandum of Law of Capital One Equipment Finance Corp. in Further Support of Motion to Vacate the Automatic Stay or, in the Alternative, Dismiss or Convert the Debtors' Cases or Appoint a Chapter 11 Trustee* [ECF No. 36].

6

14. Even if the Court were to assume that each of the $1,000,000.00 notes receivable are legitimate and collectible assets, each Debtor's estate, after liabilities, is worth on average less than $700,000.00. The Debtors do not employ anyone and, simply put, they are mere holding corporations.

15. Likewise, the dispute between COTMF and the Debtors, which is what these chapter 11 cases are about, is simple: The Debtors defaulted on their secured obligations to COTMF, and they have no defenses to COTMF's claims. Because the Debtors have failed to identify any complexities requiring an extension of exclusivity, this *Adelphia* Factor favors COTMF.

II. **The necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; the existence of good faith progress toward reorganization; and whether the debtor has made progress in <u>negotiations with its creditors</u>**

16. COTMF submits that the Debtors have had ample time to negotiate a plan of reorganization. The Debtors have known since before the petition dates that any plan will necessarily require resolution of the disputes with the Elberg Estate and Ruben Elberg. Yet, upon information and belief, the Debtors made no effort to negotiate with these parties until this Court directed them to do so. Even now, it seems that these discussions have stalled, which is not surprising considering that these parties have been mired in litigation for years.

17. Unlike most chapter 11 debtors, these Debtors have no businesses to restructure, few claims to reconcile, and no complicated financials to prepare in aid of plan negotiations. The Debtors' singular focus in these cases should have been working with the Elberg Estate and Ruben Elberg on a global settlement resolving COTMF's claims that would be incorporated into a chapter 11 plan. While the Debtors baldly assert that they are making good faith progress to reorganization, they have neither adduced any facts or evidence to back this up nor provided any

7

basis to conclude that negotiations will progress significantly within the next 90 days. Therefore, these *Adelphia* Factors likewise favor COTMF.

### III.   The fact that the debtor is paying its bills as they become due

18.   Even if the Debtors are timely paying their bills, this factor should be given little weight considering that the Debtors have few expenses. *See Debtors' Motion for Authorization to Use Cash Collateral* [ECF No. 29].

### IV.   Whether the debtor has demonstrated reasonable prospects of filing a viable plan

19.   As set forth more fully in the Stay Relief Motion, the Debtors have failed to demonstrate reasonable prospects of filing viable chapter 11 plans, confirmation of which would require COTMF's support. To date, no plans or even an outline of a term sheet have been proposed, and there is no evidence that necessary negotiations have progressed or even taken place (due to no fault on COTMF's part). What the Debtors have outlined thus far is a highly speculative proposal. Funding for the plans, according to the Debtors, hinges on (i) a presently hypothetical adversary proceeding that may or may not conclude with a collectible judgment against the Elberg Estate (which is already directly liable to COTMF for the debt); and (ii) a potential settlement with the Elberg Estate and Ruben Elberg—even though these parties have been embroiled in contentious litigation for years. This *Adelphia* Factor supports denial of the Exclusivity Motion and should be given considerable weight because extending exclusivity would be pointless and wasteful under the circumstances.

### V.    Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands

20. The Exclusivity Motion must be viewed as an attempt to pressure COTMF into some sort of concession by continuing to forestall its rightful collection efforts, as demonstrated by the complete lack of any progress toward a reorganization.

### VI.    Whether an unresolved contingency exists

21. There are no unresolved contingencies that require an extension of exclusivity. That the Debtors may file an adversary proceeding is not a compelling contingency because chapter 11 debtors often find themselves in litigation. "Only under extreme circumstances would the existence of litigation constitute cause for an extension, where the mass, weight, volume and complication of the litigation may justify a 'shakedown' period." *In re Sw. Oil Co. of Jourdanton, Inc.*, 84 B.R. at 452 (distinguishing *In re Manville Forest Prod. Corp.*, 31 B.R. 991, 995 (S.D.N.Y. 1983), in which debtors faced potential liability of $2 billion). Any litigation that the Debtors may commence against the Elberg Estate would be a straightforward action to enforce repayment of loans. Accordingly, this *Adelphia* Factor fails to support the Debtors' request to extend the exclusive period.

22. Because the *Adelphia* Factors weigh heavily against extending exclusivity, the Court should deny the Exclusivity Motion.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, COTMF respectfully requests that the Court sustain COTMF's Objection and enter an order denying the Exclusivity Motion and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
      April 18, 2018        TROUTMAN SANDERS LLP

                              By: *s/ Jonathan D. Forstot*
                                  Jonathan D. Forstot
                                  David A. Pisciotta
                                  Alissa K. Piccione
                                  875 Third Avenue
                                  New York, New York 10022
                                  Tel: (212) 704-6000

                                  *Attorneys for Capital One Equipment Finance*
                                  *Corp., f/k/a All Points Capital Corp., d/b/a*
                                  *Capital One Taxi Medallion Finance*