UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In Re: | : |
| | : Chapter 11 |
| BRACHA CAB CORP., et al. | : |
| | : Case No. |
| | : 1-17-46613 (NHL) |
| | : |
| | : **RESPONSE AND** |
| | : **OBJECTIONS TO** |
| | : **NOTICE OF MOTION** |
| | : |
| | : Jointly Administered |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Brian Thomas McCarthy, an attorney duly admitted to practice law in this Court, hereby declares the following to be true and correct under the penalties of perjury:

      1.     I am an Associate with the law firm of Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, attorneys for Creditor, Co-Owner of Jarub Trans. Corp. ("Jarub") and nominated Co-Executor of the Estate of Jacob Elberg, Ruben Elberg, and, as such, I am fully familiar with the facts and circumstances set forth herein.

      2.     I make this Declaration in Response to and to Object to the Debtors' Notice of Motion to Increase Its Exclusive Period For Filing A Plan of Reorganization.

      3.     The Debtors have forum shopped and now attempt to utilize this Court, and the instant bankruptcy action, to circumvent the Surrogate's Court, Kings County, which has the primary duty and obligation to ensure that the lawful debts of the Estate of Jacob Elberg are paid by the fiduciaries of the estate from the assets of the estate.

      4.     With regard to the Estate of Jacob Elberg, an entity which was not even named as an interested party when this bankruptcy action was commenced and when the Meeting of

1

Creditors was held, this includes the right of the Surrogate's Court to claw back assets of the Estate (i.e., the taxi medallion companies and the taxi medallions these companies' own), which were previously distributed to Esma Elberg, the widow of Jacob Elberg. See Estate of Berg, 398 N.Y.S.2d 948, 952(Sur. Ct., N.Y. Cnty. 1977) (ordering the widow to "refund so much of the cash previously distributed to her as shall be needed by the estate for the payment of proper administration expenses and claims.").

5. Permitting this bankruptcy action to proceed would only serve to frustrate the orderly administration of the Estate of Jacob Elberg, which includes insuring the debts of the Estate, including the Capital One claim related to the financing of the taxi medallions, are paid, even if that requires clawing back the taxi medallion companies from Esma Elberg to ensure the Estate of Jacob Elberg has sufficient assets to pay the outstanding debts. See id.

6. As more fully discussed below, Debtors' own thirty-one taxi medallions, which are individually owned by fourteen companies that were previously owned, solely, by Jacob Elberg at the time he died and one company which was fifty (50%) percent owned by Jacob Elberg and fifty (50%) percent owned by Ruben Elberg.

7. Jacob Elberg's interest in these companies was transferred to his widow, Esma Elberg. However, these transfers occurred with full knowledge that the Surrogate's Court retains the authority to claw back these assets into Estate of Jacob Elberg to ensure that the lawful debts of the estate were paid.

8. However, the Debtors have sought to circumvent the orderly administration of the Estate of Jacob Elberg, by utilizing this Court to either discharge a substantial part of the debt owed to Capital One or to sell the Debtor's assets to preclude them from being clawed back by the Surrogate's Court.

9. In this regard, it was not an error or omission that the Estate of Jacob Elberg was not named as an interested party in this action when it was filed.

10. This was part of a pattern of deception that continues in the instant Motion.

11. In the Debtors' current Motion, the fifteen (15) Debtors corporations assert that they "own 35 tax medallions" and "each of the medallions is used by a New York City taxi cab and each generates income for the Debtors." See Docket Entry No. 51 at ¶ 2.

12. These statements are false.

13. This Response and Objection is being filed to object to this Motion as the Debtors have repeatedly lied to this Court regarding their ownership interest in the corporations that own the taxi medallions.

14. As stated in Ruben Elberg's Response to the Motion to Vacate the Automatic Stay, or Dismiss, see Docket Entry No. 40, the Debtors have repeatedly failed to identify Ruben Elberg as a person interested in this action, despite knowing that Ruben Elberg is a fifty (50%) percent Co-Owner of Debtor, Jarub, the sole owner of non-parties, Merill Transit Inc. ("Merill") and Spindle Cab Corp. ("Spindle"), and currently Capital One has a judgment against him, in excess of 4.8 million dollars, arising from an action commenced by Capital One Taxi Medallion Finance for personal guarantees signed by Ruben Elberg for debts owed by these three corporations (i.e., Debtor, Jarub and non-parties, Merill and Spindle). See Capital One Taxi Medallion Finance v. JEB Management Corp. and Ruben Elberg, Index No. 60814/2015 (Sup. Ct., Suffolk Cnty. 2015).

15. With regard to Ruben's ownership interests in Debtor, Jarub and non-parties, Spindle and Merill, attached herewith are true and accurate copies of records from the New York City Taxi and Limousine Commission ("TLC") that unequivocally establish that Ruben Elberg is

3

the sole registered owner of Merill and Spindle and that he is the fifty (50%) percent owner of Debtor, Jarub. See **Exhibit "1"**, TLC Records for Merill, Spindle and Debtor, Jarub.

16. It is indisputable that these three companies own six of the thirty-five taxi medallions that are referenced in the pending Motion by the Debtors.

17. Two of these companies, Merill and Spindle, are not parties to this bankruptcy action and their revenues should not be utilized to fund the Debtors.

18. In addition to the ownership records maintained by TLC, attached herewith are true and accurate copies of Stock Certificates for each of these three corporations, which confirm Ruben Elberg is fifty (50%) percent owner of Jarub and sole owner of Spindle and Merill. See **Exhibit "2"**, Stock Certificates for Merill, Spindle and Debtor, Jarub.

19. Similarly, the Debtors have failed to fully disclose to this Court that the assets they intend to rely on to repay Creditors are currently the subject of a dispute that is being litigated before Justice Ramos of the New York State Supreme Court, County of New York. See Elberg v. Crabapple Corp., Index Number 0653373/2016 (Sup. Ct., N.Y. Cnty. 2016); Crabapple Corp. v. Royal One Real Estate LLC, Index No. 650492/2015 (Sup. Ct., N.Y. Cnty. 2015).

20. In fact, there is an ongoing evidentiary hearing before Justice Ramos which is scheduled to resume on May 23, 2018 and continue on May 24, 2018.

21. Reference was made during the Creditors' Meeting that certain debts would be repaid from funds held by the Estate of Jacob Elberg. See Docket Entry No. 25, at Exhibit A, at p. 30 (attached herewith as **Exhibit "3"**) ("But there is a large amount of money sitting in an escrow account from the sale of the buildings that her husband owned in Queens. And that money is tied up in the litigation . . .").

22. At the time this representation was made, neither Ruben Elberg or the Estate of Jacob Elberg was named as an interested party in this bankruptcy action, despite the fact that the Debtors were indicating, through Esma Elberg, that it was their intention to pay some portion of the debts owed by the Debtors with funds that were being held by the Estate of Jacob Elberg. Id.

23. These funds came from the sale of interests in certain Limited Liability Corporations ("LLCs") and Limited Partnerships ("LPs"), which had ownership interests in a two-hotel development project in Long Island City, Queens, New York (the "Hotel Project").

24. This 27 million-dollar transaction provides the overwhelming source of assets for the Estate of Jacob Elberg, which the Debtors are asserting could be utilized to repay Capital One.

25. However, the Estate of Jacob Elberg is only entitled to sixty (60%) percent of the net proceeds[1] of this 27 million-dollar sale, with Ruben Elberg, individually, receiving forty (40%) percent of the net proceeds.[2]

26. While reference was made during the Creditors' Meeting to the ongoing disputes and litigations pending in the Surrogate's Court, Kings County and Supreme Court, New York County,[3] no reference was made to the fact that the, Appellate Division, First Judicial Department,

---

[1] It is respectfully submitted that one of the largest expenses to be paid from the gross proceeds of this is the repayment of $11,800,000.00 capital contribution, which was obtained from the corporations that owned thirty-five taxi medallions, thirty of which were owned by corporations that were owned, in whole or in part, by Jacob Elberg, and five of which that are owned by corporations that are owned, in whole or in part, Ruben Elberg. Accordingly, there is approximately $9,800,000.00 that should be repaid to the corporations that are debtors in this action, with the remaining approximately $2,000,000.00 repaid to the corporations that are owned by Ruben Elberg., for which he signed personal guarantees. See **Exhibit "4"**, Deposition of Ruben Elberg Transcript, at p. 114, 118 ("the yellow cabs [i.e., the Debtors, Merill and Spindle] that took the loans to RORE, capital contributions or loans to RORE, RORE and RREM are the sole owners of everything." "moneys were borrowed from taxi corporations. It was put in the capital contributions into these companies [i.e., the LLCs (RORE and RREM0], and it has to be paid back to these taxi corporations.").

[2] Counsel for Capital One Equipment Finance Corp. is aware of this forty (40%) percent interest, in the LLCs and Ruben Elberg's interest as a Class D shareholder in the two LPs that were sold, and had an opportunity to depose Ruben Elberg on this very topic during the June 22, 2017 deposition of Ruben Elberg as a Judgment Debtor of Capital One Equipment Finance Corp. See **Exhibit "4"**, Deposition of Ruben Elberg Transcript, at p. 112-114 (questioning Ruben Elberg on his forty (40%) percent interest in the LLCs and LPs that sold their interest in the Hotel Project pursuant to the Order of Justice Ramos, which was subsequently reversed by the Appellate Division, First Judicial Department).

[3] See **Exhibit "3"**, at p. 24-25, 30-32.

held that Ruben Elberg was a forty (40%) percent owner of the LLCs that received loans from the taxi medallion corporations (i.e., the Debtors, Spindle and Merill). See Crabapple Corp. v. Elberg, 153 A.D.3d 434 (1stDep't 2017) (holding, "[t]he record demonstrates that he was a 40% minority member [of the LLCs], . . .").

27. Furthermore, the decision of the First Judicial Department also reversed an Order that provided the sole basis for the sale of the Hotel Projects by Tamara Pewzner ("Pewzner"), as Co-Executor of the Estate of Jacob Elberg. See Crabapple Corp. v. Elberg, 153 A.D.3d 434, 435 (1st Dep't 2017) ("Order, Supreme Court, New York County (Charles E. Ramos, J.S.C.), entered January 21, 2016, which, to the extent appealed from as limited by the briefs, granted defendants-respondents' (the LLCs) motion to remove defendant Ruben Elberg (Elberg) as their co-manager and fiduciary, unanimously reversed, without costs, the motion denied, and the matter remanded to Supreme Court for further proceedings in accordance with this decision.").

28. This was not disclosed at the Creditors' Meeting, concealing the impact the potential reversal of the sale would have on the Estate of Jacob Elberg and its ability to contribute any funds to pay the debts currently owned by the Debtors in this action.

29. The Appellate Division, First Judicial Department also recognized that the sole basis for Pewzner to claim any ability to act on behalf of the LLCs was the authority granted by this Court to the fiduciaries of the Estate of Jacob Elberg. Id. ("Thus, Jacob's controlling interest in the LLCs passed to his estate upon his death, and Elberg and Pewzner, the co-executors of the estate, had the authority to act as co-managers of the LLCs").

30. Despite this fact, the Estate of Jacob Elberg was not noticed when this action was commenced.

31. Following the First Department's decision, the action was remanded for an evidentiary hearing before Justice Ramos. Id.

32. This hearing commenced on February 20, 2018 and will continue on May 23, 2018 and May 24, 2018.

33. It cannot be disputed that given their involvement in the underlying litigation, both the Debtor and counsel for Capital One Equipment Finance Corp. proceeded in this bankruptcy action with full knowledge that Ruben Elberg had a forty (40%) percent interest in the LLCs and an ownership interests in the Class C and Class D of the Limited Partnerships.

34. These corporate entities (i.e., the LPs and LLCs) whose interests in the Hotel Projects were sold, pursuant to authority purportedly obtained from the now reversed Order of Justice Ramos, which the Debtor has alleged will provide the source of funds to repay, in part, the Creditors in this action.

35. However, both the Debtor and Capital One proceeded in this action without notice to Ruben Elberg and without him appearing in this bankruptcy action, despite knowing of his forty (40%) percent interest in the funds currently held by the Estate of Jacob Elberg, an interest that is in excess of 11.8 million dollars.

36. These are critical and material facts as these funds (i.e., the funds that are rightfully owned by Ruben Elberg), which are not owned by the Estate of Jacob Elberg, cannot be utilized to pay creditors of the Estate nor utilized to pay the creditors of the Debtor in this action, despite the claims of the Esma Elberg and Pewzner.

37. Furthermore, Ruben Elberg is a Creditor in this action as debts owned by Debtor, Jarub, and non-parties, Merill and Spindle, to Capital One Equipment Finance Corp. were personally guaranteed by Ruben Elberg.

38. This status was only asserted by the Notice of Appearance filed by Ruben Elberg's counsel, as he was not named as Creditor by the Debtor.

39. This is material to this action as Capital One eventually obtained a judgment against Ruben Elberg personally for an amount in excess of $4,804,628.68. See Capital One Taxi Medallion Finance v. JEB Management Corp. and Ruben Elberg, Index No. 608014/2015 (Sup. Ct. Suffolk Cnty. 2015).

40. Pursuant to the above-mentioned judgment, Capital One's counsel, the same counsel in this action, deposed Ruben Elberg. See **Exhibit "4"**.

41. Accordingly, Ruben Elberg is a Creditor of Debtor, Jarub, and non-parties, Merill and Spindle, as Capital One commenced an action solely against Ruben Elberg's personal guarantee for loans that were taken from Capital One by these corporations.

42. Ruben Elberg respectfully submits this response to provide the Court and the Trustee with relevant and material information, which will significantly impact this action.

43. Furthermore, Ruben Elberg respectfully requests that he be recognized as a Creditor in this action and he further be recognized as a fifty (50%) percent Owner of Debtor, Jarub, and the Court be made aware that he was not consulted regarding the decision to have Debtor Jarub file bankruptcy, nor did he consent to any such filing.

44.     Accordingly, we respectfully request this Court exercise its considerable equitable powers and deny the instant motion and grant Capital One's pending Motion in part, by either dismissing the instant bankruptcy proceeding, or appointing an independent bankruptcy Trustee.

Dated: April 19, 2018

                            Yours etc.,

                            ABRAMS, FENSTERMAN, FENSTERMAN,
                            EISMAN, FORMATO, FERRARA, WOLF &
                            CARONE, LLP
                            By:____s/Brian Thomas McCarthy_____

                              Brian Thomas McCarthy (BM-4808)
                            630 Third Avenue, Fifth Floor
                            New York, New York 10017
                            (212) 279-9200

                            bmccarthy@abramslaw.com
                            *Attorneys for Ruben Elberg*