EXHIBIT A

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is entered into as of May 15, 2019 (the "Execution Date"), by and among Bracha Cab Corp., Dovber Cab Corp., Tamar Cab Corp., NY Genesis Taxi Corp., Dabri Trans Corp., Merab Cab Corp., Fit Taxi Corp., Somyash Taxi Corp., NY Tint Taxi Corp., NY Stance Taxi Corp., NY Canteen Taxi Corp., NY Energy Taxi Corp., Jackhel Cab Corp., Lechaim Cab Corp. (collectively, the "Debtor Borrowers"), JEB Management Corp. ("JEB"), SHEFA Funding LLC ("SHEFA"), Tamar Pewzner, solely in her capacity as co-executor of the Estate of Jacob Elberg and the Estate of Jacob Elberg (together with the Debtor Borrowers, JEB, SHEFA, and the Estate of Jacob Elberg, the "Elberg Settling Parties"), and Capital One Equipment Finance Corp. f/k/a All Points Capital Corp., d/b/a Capital One Taxi Medallion Finance ("COTMF"; together with the Elberg Settling Parties, the "Settling Parties").

## RECITALS

**WHEREAS,** the Debtor Borrowers collectively own 29 licenses to operate taxicabs within the City of New York (each a "Medallion" collectively, the "Medallions"), which are more specifically identified on **Schedule A** hereto;

**WHEREAS,** on or about August 1, 2012, COTMF made a loan to each of the Debtor Borrowers in the principal amounts set forth on **Schedule A** hereto and thereafter made certain additional loans to certain Debtor Borrowers as more fully identified on **Schedule A** (each a "Loan" collectively, the "Loans");

**WHEREAS,** each of the Debtor Borrowers granted to COTMF a security interest in the Medallions owned by such Debtor Borrower as security for the Loan to it;

**WHEREAS,** Jacob Elberg and JEB guaranteed all of the Loans;

**WHEREAS,** Jacob Elberg died on December 20, 2013;

**WHEREAS,** pursuant to the terms of Jacob Elberg's will, Tamar Pewzner and Ruben Elberg were appointed by Order of the Surrogate's Court of the State of New York, County of Kings (the "Surrogate's Court"), dated January 16, 2014, under File Number 2014-46, as the Co-Executors of the Estate of Jacob Elberg (the "Elberg Co-Executors");

**WHEREAS,** the Loans matured on January 1, 2015 (the "Maturity Date"), upon which all amounts due under the terms of each Loan became immediately due and payable;

**WHEREAS,** each of the Debtor Borrowers has failed to fully repay the Loan or Loans made to it;

**WHEREAS,** on or about June 9, 2015, COTMF presented a claim against the Estate of Jacob Elberg to the Executors in respect of Jacob Elberg's liability as a personal guarantor of the Loans in the amount of $23,140,074.86 (the "Estate Claim");

WHEREAS, on July 27, 2015, COTMF commenced an action against JEB and Ruben Elberg in the Supreme Court of New York, Suffolk County, bearing index number 608014/2015 (the "JEB Action");

WHEREAS, on November 4, 2015, COTMF commenced an action against Tamar Pewzner (named as Tamara) and Ruben Elberg, as executors of the Estate of Jacob Elberg in the Supreme Court of New York, Suffolk County, bearing index number 611751/2015 (the "Executor Action");

WHEREAS, on April 27, 2016, COTMF voluntarily discontinued the Executor Action in its entirety without prejudice;

WHEREAS, on April 27, 2016, COTMF voluntarily discontinued the JEB Action solely against JEB without prejudice;

WHEREAS, on November 22, 2016, a judgment was entered against Ruben Elberg, individually, in the JEB Action in the amount of $4,399,541.72 (the "Ruben Elberg Judgment");

WHEREAS, Ruben Elberg took an appeal of the judgment entered against him in the JEB Action to the Appellate Division, Second Department, which appeal is still pending (the "Ruben Judgment Appeal");

WHEREAS, on December 8, 2017 (the "Petition Date"), the Debtor Borrowers each commenced a case under title 11 of chapter 11 of the United States Code (as amended, the "Bankruptcy Code") before the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court"), which cases are jointly administered under Case No. 17-46613-nhl (the "Chapter 11 Cases");

WHEREAS, on or about February 13, 2018, COTMF filed a motion in the Debtor Borrowers' Chapter 11 Cases to vacate the automatic stay or, in the alternative, dismiss the Chapter 11 Cases, convert the Chapter 11 Cases to chapter 7 cases, or to appoint a chapter 11 trustee [ECF No. 23], which motion has been opposed by the Debtor Borrowers, and which has continued from time to time and remains pending before the Bankruptcy Court;

WHEREAS, on or about May 3, 2018, COTMF filed a proof of claim in each Debtor Borrower's Chapter 11 Case, for the amounts due and owing under the Loans to the Debtor Borrowers as of the Petition, which claims aggregated to $23,090,309.51;

WHEREAS, on or about May 25, 2018, the Debtor Borrowers commenced an adversary proceeding (the "Adversary Proceeding") before the Bankruptcy Court identified as Adv. Pro. No. 1-18-01064-nhl, naming the Estate of Jacob Elberg and the Non-Borrower Companies as defendants, seeking to recover approximately $20,818,110.00 as the proceeds of allegedly unpaid shareholder loans made to Jacob Elberg prior to his death;

WHEREAS, on October 5, 2018, the Bankruptcy Court entered an order referring the Settling Parties to mediation and appointing Lori Lapin Jones, Esq. to serve as mediator;

**WHEREAS**, the Settling Parties attended mediation with Lori Lapin Jones, Esq. on November 28, 2018, at the conclusion of which, the Settling Parties agreed to resolve the disputes and claims among and between them as set forth in this Settlement Agreement;

**WHEREAS**, the Settling Parties desire to fully and finally resolve and settle all claims, counterclaims, and/or disputes between and among them; and

**WHEREAS**, as part of the global resolution contemplated by this Settlement Agreement, COTMF will accept the following: (i) a cash payment of $10,710,000.00; (ii) the placement of all taxi medallions owned by the Debtor Borrowers (the "Medallions") into storage with the New York Taxi and Limousine Commission (the "TLC") along with direction letters stating that the Medallions are not to be released except and at the direction of COTMF; (iii) payment of any outstanding Taxicab Improvement Fund ("TIF") surcharges and payment or clearing of any "open items" relating to the Medallions; (iv) the Debtor Borrowers and The Estate of Jacob Elberg as guarantor of the medallion loans executing strict foreclosure agreements and bills of sale, agreeing to COTMF's acceptance or transfer of the Medallions in partial satisfaction of the amounts due under the Loans; (v) a deposit in the amount of $200,000.00 in an escrow account, which COTMF may draw on to cover its fees and expenses in the event that Ruben Elberg or a related person or entity asserts any new claims against COTMF and related parties as a result of this settlement (the "Settlement Costs") (and to the extent that the escrow is not previously drawn upon, the funds will be released to the Elberg Settling Parties upon the earliest of the receipt by COTMF of a release of all claims by Ruben Elberg or the date that is 3 years after the escrow account is first funded); and (vi) the transfer of any funds on deposit with COTMF or any of its affiliates to another bank and to close any open accounts.

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Settling Parties, intending to be legally bound, hereby agree as follows:

1.      Settlement Effective Date. "Settlement Effective Date" means the first date upon which (i) the Agreement is fully executed by all parties; and (ii) subject to Section 7(d) of this Agreement, the Bankruptcy Court has entered an un-stayed order acceptable to COTMF in its sole reasonable discretion approving of entry into the settlement by the Debtor Borrowers, lifting the automatic stay with respect to the Medallions owned by the Debtor Borrowers, and authorizing the Debtor Borrowers pursuant to § 363 of the Bankruptcy Code, and any other applicable law, to transfer all of their right, title and interest in the Medallions owned by the Debtor Borrowers, free and clear of any liens, claims, interests or encumbrances to COTMF or an assignee or transferee of COTMF, and granting any other relief necessary to effectuate the settlement.

2.      Payment to COTMF. Within five (5) business days following the Settlement Effective Date, the Elberg Settling Parties, collectively, shall cause to be paid to COTMF a total of Ten Million Seven Hundred and Ten Thousand United States Dollars (USD $10,710,000.00) (the "Settlement Payment"). The Settlement Payment shall be made by electronic wire transfer pursuant to wiring instructions reflected on **Schedule B** hereto, and shall be effective upon COTMF's (or its designee's) receipt of the funds.

3.    **Elberg Settling Parties' Payment and Surrender Obligations.**  In addition to the Settlement Payment provided for in Section 2 of this Settlement Agreement, the Elberg Settling Parties shall do the following within five (5) business days of the Settlement Effective Date (the "Elberg Settling Parties' Payment and Surrender Obligations"):

(a)    The Debtor Borrowers shall place all Medallions in storage with the New York City Taxi & Limousine Commission along with direction letters stating that the Medallions are not to be released from storage except at the request and direction of COTMF.

(b)    Debtor Borrowers shall pay any outstanding TIF surcharges and pay or clear any "open items" (as such term is used in and Section 58-46(b) of the TLC Rules) relating to the Medallions.

(c)    Debtor Borrowers and The Estate of Jacob Elberg as guarantor shall execute a Strict Foreclosure Agreement substantially in the form attached hereto as **Exhibit A** (a "Strict Foreclosure Agreement") and, for each Medallion owned by such Debtor Borrower, the Debtor Borrower shall execute and deliver to COTMF a Bill of Sale substantially in the form attached to the Strict Foreclosure Agreement as "Exhibit 1" (each a "Bill of Sale").

(d)    Each Debtor Borrower who is a member of the Elberg Settling Parties agrees to COTMF's acceptance of the Medallions in partial satisfaction of such Debtor Borrower's obligation pursuant to Section 9-620 of the Uniform Commercial Code as codified in the state of New York (the "NY UCC").

(e)    This Settlement Agreement constitutes each Debtor Borrower's agreement to the terms of COTMF's acceptance of the Medallions in partial satisfaction of the Loans secured thereby in an authenticated record after default as provided in Section 9-620(c)(1) of the NY UCC.

(f)    This Settlement Agreement constitutes each the Elberg Settling Parties' acceptance of COTMF's proposal, described in Section 9-621(b) of the NY UCC, to accept the Medallions in partial satisfaction of the Loans.

(g)    The Elberg Settling Parties acknowledge that COTMF, or its assignee, may send notice of its proposal to accept the Medallions in partial satisfaction of the Loans to other parties described in Section 9-621 of the NY UCC.  Each of the Elberg Settling Parties acknowledges that COTMF may sell or transfer its rights with respect to the Medallions to a third party. Each of the Elberg Settling Parties further acknowledges that none of the Elberg Settling Parties or any other person or entity that is not a party to this Agreement has any claim or interest in any consideration received by COTMF as a result of the sale or transfer of its rights with respect to the Medallions.

(h)    Debtor Borrowers shall deposit the amount of $200,000.00 in an escrow account, which COTMF may draw on to cover its fees and expenses in the event that Ruben Elberg or a related person or entity asserts any new claims against COTMF and related parties as a result of this settlement (the "Settlement Costs").  The escrow amount is capped at $200,000.00.  If any amounts are needed in excess of $200,000.00, COTMF shall be responsible for such fees and expenses.  To the extent that the escrow is not previously drawn upon, the funds will be released to the Elberg Settling Parties upon the earliest of (i) the receipt by COTMF of a release of all claims by Ruben Elberg or (ii) the date that is 3 years after the escrow account is first funded.

(i)    Debtor Borrowers shall transfer any funds on deposit with COTMF or any of its affiliates to another bank and to close any open accounts.

4.    <u>COTMF's Assignment of Ruben Elberg Claims.</u>  Promptly upon satisfaction of the Elberg Settling Parties' Payment and Surrender Obligations, COTMF shall assign to the Estate of Jacob Elberg (i) COTMF's judgment against Ruben Elberg and (ii) all claims against Merill Transit Inc., Spindle Cab Corp. and Jarub Trans Corp. (collectively, the "<u>Non-Debtor Borrowers</u>").  COTMF agrees to provide reasonable cooperation and documentation, if requested by the Elberg Settling Parties, to allow the Elberg Settling Parties to pursue collection or other action against Ruben Elberg and/or the Non-Debtor Borrowers.  Notwithstanding the foregoing, COTMF shall continue to defend against the Ruben Judgment Appeal up through and including the oral argument to occur after the Settlement Effective Date, after which the Estate of Jacob Elberg shall have sole responsibility for any appeal or further proceedings with respect to COTMF's judgment against Ruben Elberg.  Up to the amount of $10,000 of COTMF's costs, including attorneys' fees and costs, incurred after the Settlement Effective Date in connection with the Ruben Judgment Appeal shall constitute Settlement Costs as provided in Section 3(h) of this Agreement.  COTMF makes no representations or warranties regarding the outcome of the Ruben Judgment Appeal or otherwise with respect to any other claims assigned by COTMF against or related to Ruben Elberg, including, without limitation, any representations or warranties concerning the standing of the Elberg Settling Parties or COTMF to pursue the Ruben Judgment Appeal or any other claims assigned by COTMF pursuant to this Agreement.  The Elberg Settling Parties assume all of the risks associated with the Ruben Judgment Appeal or any other claims against or related to Ruben Elberg.  The Elberg Settling Parties expressly acknowledge that the outcome of the Ruben Judgment Appeal is uncertain, and that the outcome shall not alter any of the covenants and agreements contained in this Agreement.  For the avoidance of doubt, nothing in this Agreement or in this Section 4 shall be construed to create an attorney-client relationship between counsel for COTMF and any of the Elberg Settling Parties or the Estate of Jacob Elberg.  It is hereby expressly acknowledged by the parties to this Agreement that no such attorney-client relationship has ever existed between counsel for COTMF and any of the Elberg Settling Parties or the Estate of Jacob Elberg.

5.    <u>Releases.</u>

(a)    Upon satisfaction of the Elberg Settlings Parties' Payment and Surrender Obligations and COTMF's assignment of the claims against Ruben Elberg and the Non-Debtor Borrowers to the Estate of Jacob Elberg, the Settling Parties shall be deemed to have exchanged releases (the "<u>Releases Effective Date</u>").

(b)    Effective as of the Releases Effective Date, COTMF hereby releases and forever discharges the Elberg Settling Parties and each of their respective predecessors, successors, parent companies, members, subsidiaries, affiliates, trusts, heirs, assigns, employees, attorneys, partners, principals, representatives, officers, and agents (collectively, the "<u>Elberg Releasees</u>") of and from any and all claims, counterclaims, demands, obligations, actions, or causes of action, rights, damages, costs, expenses, and compensation whatsoever arising out of or related to the Loans or any guarantees of the Loans, whether in law or in equity or otherwise, whether arising under contract, tort, statute or any other legal theory or basis of any nature whatsoever, which COTMF ever had, now has, or may have ever had against the Elberg Releasees or any of them, whether known or unknown, suspected or unsuspected, claimed or

concealed, contingent or non-contingent, asserted or not asserted relating in any manner to the Loans.

(c)    Effective as of the Releases Effective Date, each of the Elberg Settling Parties, on behalf of themselves and each of their respective current and former parent companies, subsidiaries, members, affiliates, predecessors, successors, insurers, reinsurers, trusts, heirs, beneficiaries, assigns, and any of their past or present officers directors, employees, executors, attorneys, members, shareholders, partners, principals, representatives, and agents and the Co-Executors (the "Elberg Releasing Parties") hereby release and forever discharge COTMF and each of its respective affiliates, predecessors, successors, parent companies, affiliates, members, trusts, heirs, assigns, employees, attorneys, partners, principals, officers, and agents (the "COTMF Releasees") of and from any and all claims, counterclaims, demands, obligations, actions, or causes of action, rights, damages, costs, expenses and compensation whatsoever, arising out of or related to the Loans, whether in law or in equity or otherwise, whether arising under contract, tort, statute or any other legal theory or basis of any nature whatsoever, which the Elberg Releasing Parties or any of them ever had, now have, or may have had against the COTMF Releasees or any of them, whether known or unknown, suspected or unsuspected, claimed or concealed, contingent or non-contingent, asserted or not asserted, relating in any manner to the Loans.

(d)    In furtherance of this Section 5, effective upon the Releases Effective Date, COTMF and the Elberg Releasing Parties each hereby expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, or international or foreign law, which would limit the scope of the releases provided above, including any provision which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. COTMF and the Elberg Releasing Parties each acknowledge that they may hereafter discover facts in addition to or different from those which they now know to be true with respect to the subject matters of the claims released herein, but hereby stipulate and agree that, upon the Releases Effective Date, they will fully, finally, and forever settle and release any and all such claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, concealed or hidden, which now exist or heretofore existed upon any theory of law or equity now existing or coming into existence in the future, without regard to the discovery or existence of such different or additional facts.

(e)    Effective as of the Release Effective Date, COTMF, the Elberg Settling Parties, the Debtor Borrowers, and the Estate of Jacob Elberg, as guarantor, shall have no further liability or obligations under the notes, loan agreements, security agreements, guaranties, or any other document executed in connection with the Loans (collectively, the "Loan Documents") except that the Loan Documents on the surrendered medallions shall remain in effect solely to the extent necessary for COTMF to effect a foreclosure or to otherwise transfer the Medallions in a manner that extinguishes any other liens or interests in the Medallions pursuant to the NY UCC and, upon the approval by the TLC of a transfer of all Medallions securing any Loan to COTMF or any transferee or assignee of COTMF's rights hereunder, the Loan Documents relating to such Loan shall automatically be released and terminated without any further action by COTMF. Notwithstanding the foregoing sentence, upon the Release Effective Date, COTMF shall not have any rights, remedies, or recourse under the Loan Documents except with respect to the Medallions.

(f)     Effective as of the Releases Effective Date, COTMF hereby releases and forever discharges the Elberg Releasees of and from any and all claims, demands, actions and liability whatsoever for and on account of the proceedings, acts or omissions of the Elberg Co-Executors and of and from all liability, responsibility or accountability for and on account of any matter growing out of or in any way connected to the Estate of Jacob Elberg or the administration thereof, which COTMF may now have or hereinafter may have with respect to the Estate Claim and/or any interest COTMF may have as creditor or otherwise in the Estate of Jacob Elberg.

(g)     This Agreement is being entered into by and among the Settling Parties to fully and finally resolve any and all claims, counterclaims, and/or disputes.

(h)     Notwithstanding anything to the contrary herein, the releases granted under this Section 5 shall have no effect upon or relieve any party of its existing obligations under any loan, transaction, document, agreement, mortgage loan, account agreement, or credit card agreement other than the Loans and the Loan Documents.

6.     Clawback Events.  Although the Settling Parties believe there would be no basis for (i) the Settlement Payment or (ii) the transfer by any Debtor Borrower of its interest in any Medallion ((i) and (ii) collectively, the "Settlement Consideration") to be avoided, rescinded, or otherwise clawed back for any reason, if nevertheless all or any portion of the Settlement Consideration is avoided, rescinded, or otherwise clawed back, then the releases set forth in Section 5 of this Agreement shall be automatically and without further act by any party be and void, and each of the Settling Parties shall have all of their respective claims preserved, provided, however, to the extent COTMF received and Settlement Consideration the transfer of which has not been avoided, rescinded or otherwise clawed back, then the obligations of the Elberg Settling Parties to COTMF that existed immediately prior to the execution of this Agreement shall be reduced by the value of the Settlement Consideration received by COTMF and not avoided and rescinded or otherwise clawed back. .

7.     Representations and Warranties.

(a)     Each of the Settling Parties represents and warrants that as of the Settlement Effective Date:

(i)     it is the current legal and beneficial owner of all claims released by it herein;

(ii)    it has not assigned, pledged, or contracted to assign or pledge any of the claims released by it herein;

(iii)   it possesses all requisite authority and power to enter into and comply with the terms of this Settlement Agreement and the transactions contemplated hereby;

(iv)    it has obtained all authorizations, consents, and approvals that are required with respect to performance and execution of this Settlement Agreement; and

(v)     no further action, other than as expressly provided in this Settlement Agreement, is necessary to make this Settlement Agreement a valid and binding obligation of each of the Settling Parties hereto.

(b)    Each individual signing this Settlement Agreement on behalf of any Settling Party hereto hereby represents and warrants that as of the Settlement Effective Date he or she has been duly authorized to sign this Settlement Agreement on behalf of the Settling Party for whom he or she is signing.

(c)    The Elberg Settling Parties each represent and warrant, as of the Settlement Effective Date, that the Debtor Borrowers have not granted any other lien, security interest, or encumbrance against the Medallions from the date on which each Debtor Borrower first granted a security interest in its Medallions to COTMF, and is unaware of any other lien, security interest, or encumbrance against the Medallions being claimed or asserted.

(d)    Tamara Pewzner, as Co-Executor of the Estate of Jacob Elberg, represents that, in the event the Bankruptcy Court requires it, she will diligently seek approval of this Settlement Agreement by petition to the Surrogate's Court, Kings County, in order to bind the Estate of Jacob Elberg to the terms of this Settlement Agreement. In the event that the Bankruptcy Court does not issue an order (i) authorizing the Estate of Jacob Elberg to pay such funds to this Settlement Agreement and permitting Tamara Pewzner to remit the $10,710,000.00 cash payment, and (ii) directing JP Morgan Chase to release any hold on such funds to this Settlement Agreement, then Tamara Pewzner, as Co-Executor of the Estate of Jacob Elberg, will seek an order directing a confirmation of this Settlement Agreement and the release of such funds from the Surrogate's Court, Kings County. In the event that the Surrogate's Court, Kings County, fails to confirm or approve this Settlement Agreement, it shall be null and void and may not be used for any purpose.

8.    Covenant Not to Encumber Medallions or Transfer. Each of the Elberg Settling Parties agrees and covenants that from and after the Execution Date it shall not grant or permit any additional lien, security interest, or encumbrance on the Medallions, nor transfer any interest in the Medallions other than to COTMF or COTMF's assign as provided under this Settlement Agreement.

9.    Covenant Not to Challenge Authority of Signatories. Each of the Elberg Settling Parties agrees and covenants not to challenge the authority of any individual signatory on behalf of a corporate Elberg Settling Party to bind such corporate Elberg Settling Party to the terms of this Settlement Agreement and affirmatively waives the right to challenge such authority in any proceeding relating to the terms of this Settlement Agreement or the implementation or enforcement of the settlement embodied by this Settlement Agreement.

10.    Obligation to Proceed in Good Faith and Further Assurances. Each of the Settling Parties agrees to take such commercially reasonable actions and to execute any and all further documents and instruments which may be required to effectuate the provisions of this Settlement Agreement including any documentation to be submitted to the TLC relating to an application to transfer any Medallion to COTMF or COTMF's assignee, designee, or transferee.

11.    Counterparts. This Settlement Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Settlement Agreement by telecopy or other electronic means shall be as effective as delivery of a manually executed counterpart of this Settlement Agreement.

8

12.    Entire Agreement.    The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement on the matters addressed herein and, except as set forth herein, supersedes all prior agreements or understandings between the Settling Parties, oral or written.

13.    Governing Law; Jurisdiction; Waiver of Jury Trial.    The governing law of this Settlement Agreement shall be the substantive and procedural law of the State of New York without regard to choice-of-law or conflicts-of-law principles.    Any action based on this Settlement Agreement or to enforce any of its terms shall be venued in the Bankruptcy Court, to the extent that Court retains jurisdiction with respect to this Settlement Agreement in any order approving it or in New York State Supreme Court, New York County, without regard to conflicts of laws. Each of the Settling Parties submits to the personal jurisdiction of the Bankruptcy Court, to the extent it retains jurisdiction over implementation and enforcement of this Settlement Agreement and to the New York State Supreme Court, New York County.    Each Settling Party hereby knowingly, voluntarily, and intentionally waives any right it may have to a trial by jury of any dispute arising under or relating to this Settlement Agreement and agrees that any such dispute shall be tried before a judge sitting without a jury.

14.    Construction.    This Settlement Agreement shall be construed as if the Settling Parties jointly prepared this Settlement Agreement, and any uncertainty or ambiguity shall not on that ground be interpreted against any one Settling Party.

15.    Amendment and Modification.    This Settlement Agreement cannot be amended, modified, or supplemented orally.    The Settling Parties may amend, modify, or supplement this Settlement Agreement only by a writing signed by each of the Settling Parties.

16.    Headings.    The section headings in this Settlement Agreement are for convenience only and may not be used in construing this Settlement Agreement.

17.    Successors and Assigns.    This Settlement Agreement and the rights of the Settling Parties hereunder may not be assigned by any Settling Party, except that COTMF may assign its rights provided hereunder to acquire the Medallions and may assign the Strict Foreclosure Agreement and Bill of Sale relating to each Medallion.    This Settlement Agreement and all action taken hereunder in accordance with its terms shall be binding upon and inure to the respective permitted successors of each of the Settling Parties.

18.    Waiver.    Waiver of any term or condition of this Settlement Agreement by any Settling Party shall not be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

[Signatures Pages Follow]

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the day and year first above written.

**CAPITAL ONE EQUIPMENT FINANCE CORP.:**

By:_____

Name:  Tarik Hussain

Title:   Vice President

**THE ESTATE OF JACOB ELBERG**
**by and through its co-executor,**
**Tamar Pewzner**

By: _____
Name: _Tamar Pewzner_
Title: _Co-Executer_

**JEB MANAGEMENT CORP.**

By: _____
Name: _Tamar Pewzner_
Title: _Co-executor_

**NON-BORROWER, NON-**
**GUARANTOR COMPANIES**

**SHEFA FUNDING LLC**

By: _____
Name: _Tamar Pewzner_
Title: _Co-Executor_

**BORROWERS**

**BRACHA CAB CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**DABRI TRANS CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**DOVBER CAB CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**FIT TAXI CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**JACKHEL CAB CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**MERAB CAB CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**LECHAIM CAB CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**N. Y. ENERGY TAXI CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**N.Y. CANTEEN TAXI CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**N. Y. GENESIS TAXI CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**N.Y. STANCE TAXI CORP.**

By: _Esmer Elberg_
Name: _Esma Elberg_
Title: _President_

**N.Y. TINT TAXI CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**SOMYASH TAXI CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

**TAMAR CAB CORP.**

By: _Esma Elberg_
Name: _Esma Elberg_
Title: _President_

## Schedule A
### Description of Loans and Medallion Collateral

| Borrower | Original Principal Balance | Medallion Nos. |
|---|---|---|
| BRACHA CAB CORP. | $1,210,000 | 2L35, 2L36 |
| BRACHA CAB CORP. | $250,000 | 2L35, 2L36 |
| DABRI TRANS CORP. | $1,210,000 | 5J10, 5J11 |
| DABRI TRANS CORP. | $250,000 | 5J10, 5J11 |
| DOVBER CAB CORP. | $1,210,000 | 2J71, 2J72 |
| DOVBER CAB CORP. | $250,000 | 2J71, 2J72 |
| FIT TAXI CORP. | $1,525,000 | 3M78, 3M79, 3M80 |
| JACKHEL CAB CORP. | $1,210,000 | 8M42, 8M43 |
| JACKHEL CAB CORP. | $250,000 | 8M42, 8M43 |
| LECHAIM CAB CORP. | $1,210,000 | 1K66, 1K67 |
| MERAB CAB CORP | $1,210,000 | 7J22, 7J25 |
| N. Y. ENERGY TAXI CORP. | $1,210,000 | 2Y39, 2Y43 |
| N.Y. CANTEEN TAXI CORP. | $1,210,000 | 2Y37, 2Y38 |
| N.Y. GENESIS TAXI CORP | $1,210,000 | 2Y44, 2Y45 |
| N.Y. STANCE TAXI CORP. | $1,210,000 | 5P15, 5P16 |
| NY TINT TAXI CORP. | $1,210,000 | 8M46, 8M47 |
| SOMYASH TAXI CORP. | $1,210,000 | 4J18, 4J19 |
| TAMAR CAB CORP. | $1,210,000 | 1H60, 1H78 |

## Schedule B

**Wiring Instructions for Settlement Payment**

Capital One Equipment Finance Corp.
ABA: 065000090
Account: 2082409974
Account Name: COEF Taxi Medallion Corp
Attn: Special Assets Taxi
Ref: Jacob Elberg

**EXHIBIT A TO SETTLEMENT AGREEMENT**

**STRICT FORECLOSURE AGREEMENT**

THIS STRICT FORECLOSURE AGREEMENT, dated as of December __, 2018 (this "Agreement"), by and among **[BORROWER NAME]** (the "Borrower"), a New York corporation having an address of _____, **[GUARANTOR NAME(S)]** (the "Guarantor(s)" and, together with the Borrower, the "Obligors"), an individual having an address of _____, and **CAPITAL ONE EQUIPMENT FINANCE CORP.** d/b/a Capital One Taxi Medallion Finance (the "Lender" and, together with the Obligors, the "Parties") having its principal office at 1680 Capital One Drive, McLean, Virginia 22102.

**Recitals:**

A.      The Lender is the holder of those certain loans to the Borrower identified on **Schedule 1** attached hereto (the "Loans"). Each of the Loans was absolutely and unconditionally guaranteed by the Guarantor(s). All documents, instruments and agreements executed and delivered in connection with the Loans, each as amended, restated, supplemented or otherwise modified from time to time, are collectively referred to herein as the "Loan Documents"). Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Loan Documents.

B.      Repayment of the Loans is secured by, among other things, valid, perfected, first-priority liens in the New York City Taxi Medallions (the "Medallions") identified on **Schedule 1** attached hereto.

C.      Simultaneously with the execution of this Agreement, the Parties entered into that certain Settlement Agreement, dated as of December [[__,]] 2018 (the "Settlement Agreement"), pursuant to which, among other things, Lender agreed to accept the Obligors' turnover, surrender, or assign the Medallions to Lender and a cash payment in satisfaction of the Loans.

D.      To permit Lender the option of proceeding to take title to the Medallions through a strict foreclosure of liens, the Parties have agreed to enter into this Agreement.

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and the Parties intending to be legally bound, agree as follows:

1.      Incorporation of Recitals. The Parties hereby acknowledge and agree that the foregoing Recitals are true and correct and are incorporated herein by reference.

2.      Agreement to Provide Information. Obligors agree to provide Lender with any documents and information in their possession, custody or control, or reasonably obtained by them relating to the Medallions, or relating to any liens, claims, interests, or encumbrances relating to the Medallions that is required by Lender.

3.   <u>Strict Foreclosure</u>.  Obligors agree that Lender may, without further notice to Obligors, proceed under Section 9-620 of the New York Uniform Commercial Code (the "<u>NY UCC</u>") by accepting all or some of the Medallions in partial satisfaction of the amounts due under the Loans ("<u>Strict Foreclosure</u>").  This Agreement is intended to establish a procedure by which Lender may take title to the Medallions and is not intended to modify the Settlement Agreement.  Obligors acknowledge and agree that by executing this Agreement, proper notice shall be deemed to have been given both under the Loan Documents and pursuant to Section 9-620 of the NY UCC.  The Obligors further acknowledge and agree that Lender's willingness to acquire the Medallions through Strict Foreclosure is done solely as an accommodation to the Borrower and is not an agreement by the Lender as to the value of a Medallion.  Borrower agrees that it will not, directly or indirectly, seek any form of relief from any court seeking to stay, impede, or otherwise delay the Lender's exercise of Strict Foreclosure.

4.   <u>Borrower's Acceptance of Lender's Proposal</u>.  This agreement constitutes Borrower's acceptance of Lender's proposal to accept the Medallions in partial satisfaction of the Loans secured thereby in an authenticated record after default as provided in Section 9-620(c)(1) of the NY UCC.

5.   <u>Guarantors' Acceptance of Lender's Proposal</u>.  This agreement constitutes each of the undersigned guarantor's acceptance of Lender's proposal, described in Section 9-621(b) of the NY UCC, to accept the Medallions in partial satisfaction of the Loans secured thereby.

6.   <u>Transfer to Third Parties</u>.  The Obligors acknowledge and agree that the Lender may transfer its rights to acquire any Medallion hereunder to such third party as designated by the Lender, in its sole discretion and that Lender may assign this Agreement and any Bill of Sale executed in connection with this Agreement in whole or in part to one or more assignees, designees, or transferees.

7.   <u>Effective Date, Bill of Sale</u>.  Concurrently with the execution of this agreement, the Borrower shall execute undated General Assignments and Bills of Sale in the form attached hereto as **Exhibit A** (each, a "<u>Bill of Sale</u>").  The Bill of Sale shall not be effective until a date is inserted by the Lender or its designee.  The Bill of Sale will be dated and the transfer of all right, title, and interest in the Medallions to Lender or its designee under this proposal shall be deemed consummated as of that date (the "<u>Effective Date</u>").  The Borrower expressly authorizes Lender or its designee to fill in the Effective Date and name of the applicable Borrower.

8.   <u>Notices of Strict Foreclosure to Third Parties.</u>  Obligors acknowledge that Lender may send notices to interested parties as required under Section 9-621 of the NY UCC.

*[Remainder of Page Intentionally Left Blank]*

**BORROWER**

**[BORROWER NAME]**

By:_____
    Name:
    Title

**GUARANTOR(S)**

**[GUARANTOR NAME(S)]**

_____

**LENDER**

**CAPITAL ONE EQUIPMENT FINANCE CORP.**

By:_____
    Name:
    Title:

Schedule 1

Description of Loans

**Exhibit 1 to Strict Foreclosure Agreement**

**Form of General Assignment and Bill of Sale**

# GENERAL ASSIGNMENT AND BILL OF SALE

This General Assignment and Bill of Sale is entered into _____, 2018 by _____ ("Seller") in favor of Capital One Equipment Finance Corp. d/b/a Capital One Taxi Medallion Finance ("Purchaser"):

WHEREAS, Purchaser and Seller are parties to that certain Strict Foreclosure Agreement, dated as of December __, 2018 (the "Strict Foreclosure Agreement"), pursuant to which Purchaser agreed to accept Seller's New York City Taxi Medallion in partial satisfaction of obligations owed by Seller to Purchaser, pursuant to Section 9-620 of the New York Uniform Commercial Code, and without limiting the terms of the Strict Foreclosure Agreement, this General Assignment and Bill of Sale further confirms the delivery of the Assigned Collateral (as defined below);

WHEREAS, Seller desires to transfer and assign to Purchaser the assets described below pursuant the Strict Foreclosure Agreement and Purchaser desires to accept the sale, transfer, conveyance, assignment, and delivery thereof;

WHEREAS, this General Assignment and Bill of Sale is delivered undated and shall not be effective until a date is inserted in the preamble by the Purchaser; and

WHEREAS, Seller and Purchaser have heretofore entered into: (i) a Note, made on _____ __, 201_, in the original principal amount of $_____ made by Seller and owned by Purchaser, evidencing and promising to repay Seller's indebtedness to Purchaser; and (ii) a Security Agreement, made on _____ __, 201_, by Seller in favor of the Purchaser (the "Security Agreement"), pursuant to which Seller, among other things, secured the Note and granted the Purchaser a first priority security interest in, a continuing lien upon, and a right of set-off against, certain collateral described therein, including, the New York City Taxi Medallions reflected on Schedule 1 hereto (the "Assigned Collateral").

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby irrevocably sells, transfers, conveys, assigns and delivers to Purchaser all of Seller's right, title and interest in, to and under the Assigned Collateral on Schedule 1 hereto.

TO HAVE AND TO HOLD the same unto Purchaser, its successors and assigns, forever.

Purchaser hereby accepts the sale, transfer, conveyance, assignment and delivery of the Assigned Collateral.

At any time or from time to time after the date hereof, at Purchaser's request and without further consideration, Seller shall execute and deliver to Purchaser such other instruments of sale, transfer, conveyance, assignment, and confirmation, provide such materials and information and take such other actions as Purchaser may reasonably deem necessary or desirable in order to

more effectively transfer, convey, and assign to Purchaser, and to confirm Purchaser's title to, all of the Assigned Collateral.

Seller hereby constitutes and appoints Purchaser the true and lawful attorney of Seller, with full power of substitution, in the name of Seller or Purchaser, but on behalf of and for the benefit of Purchaser: (i) to demand and receive from time to time any and all of the Assigned Collateral and to make endorsements and give receipts and releases for and in respect of the same and any part thereof; (ii) to institute, prosecute, compromise and settle any and all actions or proceedings that Purchaser may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Assigned Collateral; (iii) to defend or compromise any or all actions or proceedings in respect of any of the Assigned Collateral; and (iv) to do all such acts and things in relation to the matters set forth in the preceding clauses (i) through (iii) as Purchaser shall deem desirable.

This General Assignment and Bill of Sale may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

This General Assignment and Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York applicable to a contract executed and performed in such State without giving effect to the conflicts of laws principals thereof, except that if it is necessary in any other jurisdiction to have the law of such other jurisdiction govern this General Assignment and Bill of Sale in order for this General Assignment and Bill of Sale to be effective in any respect, then the laws of such other jurisdiction shall govern this General Assignment and Bill of Sale to such extent. For the avoidance of doubt, nothing contained in this General Assignment and Bill of Sale is intended to modify, limit, or reduce Purchaser's rights against the Seller, except as set forth in a fully-executed written agreement between Purchaser and Seller.

IN WITNESS WHEREOF, the undersigned have caused their duly authorized officers (or officers of their sole or managing agent) to execute this General Assignment and Bill of Sale on the day and year first above written.

**[SELLER NAME]**

By:_____

    Name:

    Title:

## Schedule 1

### Assigned Collateral

| Borrower/Seller | Assigned Collateral/Medallion Nos. |
|---|---|
| [Borrower Name] | [Medallion Number] |